IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARGUERITE HOFFMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:10-CV-0953-D |
| L&M ARTS, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT L&M ARTS'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**


**SHACKELFORD, MELTON & MCKINLEY LLP**
Bart Wulff
State Bar No. 22086100
3333 Lee Parkway, Tenth Floor
Dallas, TX  75219
BWULFF@shacklaw.net
Tel: (214) 780-1400
Fax: (214) 780-1401

OF COUNSEL
**WILLKIE FARR & GALLAGHER LLP**
Roger Netzer
Mary Eaton
787 Seventh Avenue
New York, NY  10019-6099
rnetzer@willkie.com
meaton@willkie.com
Tel: (212) 728-8000
Fax: (212) 728-8111

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 3

   I.   Defendants Move To Dismiss, Challenging The Confidentiality Provision As
Unenforceable. ............................................................................................................ 4

   II.   This Court Upholds The Enforceability Of The Confidentiality Provision, But Grants The
Motion To Dismiss In Part, Granting Plaintiff Leave To Replead Her Claims Against
L&M. ......................................................................................................................... 4

   III.   Studio Capital Attaches An Invoice To Its Answer To The Petition That Materially
Differs From The Confidentiality Provision Of The Letter Agreement. ........................... 6

   IV.   Plaintiff Files Her Second Amended Complaint, Particularizing Her Claims Against
L&M For Breach. ........................................................................................................ 7

   V.   L&M Has Not Yet Produced Any Documents. ............................................................. 10

ARGUMENT .......................................................................................................................... 10

   I.   The SAC States a Plausible Claim for Breach of Contract Against L&M. ...................... 10

      A.   L&M Misrepresented the Terms of the Confidentiality Provision to Its Undisclosed
Principals. .................................................................................................................. 11

      B.   L&M Breached the Letter Agreement in its Contacts with Sotheby's in 2010. ........... 14

   II.   Plaintiff Has Adequately Plead Causation ..................................................................... 17

CONCLUSION ....................................................................................................................... 18

## TABLE OF AUTHORITES

**CASES**                                                                     **Page(s)**

*A to Z Rental Ctr. v. Burris*,
   714 S.W.2d 433 (Tex. App.—Austin 1986, writ ref'd n.r.e.)................................................15

*Burch v. Hancock*,
   56 S.W.3d 257 (Tex. App.—Tyler 2001, no pet.) ...........................................................15, 16

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   No. MDL-1446, 2010 WL 5100809 (S.D. Tex. Dec. 8, 2010).........................................17, 18

*Federal Deposit Insurance Corp. v. Nathan*,
   804 F. Supp. 888 (S.D. Tex. 1992) .......................................................................................18

*Gutierrez v. Excel Corp.*,
   106 F.3d 683 (5th Cir. 1997) ................................................................................................17


## OTHER AUTHORITIES

RESTATEMENT (SECOND) OF AGENCY §321, Comment (a).....................................................15, 16

RESTATEMENT (SECOND) OF AGENCY §396 ................................................................................17

RESTATEMENT (THIRD) OF AGENCY §8.05 .................................................................................17

## PRELIMINARY STATEMENT

Plaintiff Marguerite Hoffman submits this memorandum in opposition to the motion of defendant L&M Arts ("L&M") to dismiss Plaintiff's Second Amended Complaint dated April 13, 2011 (the "SAC"). In its Motion, L&M does not dispute (1) that the agreement dated April 24, 2007 (the "Letter Agreement") governing L&M's purchase of a celebrated painting (the "Painting") from Plaintiff on behalf of one or more undisclosed principals constitutes a valid and binding contract, (2) that Plaintiff performed under the Letter Agreement, or (3) that Plaintiff suffered damages. The sole question raised by the Motion, therefore, is the SAC has sufficiently alleged that L&M breached the confidentiality provision of the Letter Agreement, which required the parties "to make maximum effort to keep all aspects of this transaction confidential indefinitely" (the "Confidentiality Provision"). Under this Court's construction of the Confidentiality Provision, the question the Motion poses therefore is: Do the facts alleged in the SAC plausibly establish that L&M "did not make every reasonable effort to keep all aspects of the 2007 transaction confidential, measured according to what an average, prudent, and comparable person (i.e., peers in the professional art buying community) would or would not have done, under the same or similar circumstances, to make every reasonable effort when exercising due diligence and in the absence of neglect"? (03/07/11 Mem. Op. and Order [Dkt. No. 57] at 20.) That they do.

The SAC alleges that L&M breached the Letter Agreement in at least two specific ways: (1) L&M misrepresented the terms of the Confidentiality Provision to its undisclosed principles, Studio Capital and/or Martinez, from the time the Letter Agreement was being negotiated up until the filing of this action; and (2) L&M failed to inform Sotheby's about the Confidentiality Provision despite speaking directly to Sotheby's about the Painting with full knowledge that

1

6643610.5

Sotheby's was planning to publicly auction it.  (04/13/11 SAC [Dkt. No. 64] ¶¶ 33, 34, 35, 37, 45, 48, 54.)

L&M argues, nevertheless, that the SAC fails to assert a claim for breach against it for three principal reasons.  First, according to L&M, the confidentiality provisions in the Invoice and the Letter Agreement are "consistent" because "there is no difference between keeping 'all aspects' of the transaction confidential versus keeping 'the terms . . . strictly confidential.'" (03/02/11 L&M Br. [Dkt. No. 65] at 4.)  Second, because the Invoice was issued after the Letter Agreement was executed, L&M says, it therefore "cannot support a claim for breach."  (*Id.* at 6.)  Third and finally, the SAC's allegations regarding L&M's contacts with Sotheby's prior to the sale are allegedly insufficient as well, because (i) the agency relationship between L&M and its undisclosed principal had supposedly terminated by the time of the Sotheby's sale, (ii) even if the agency relationship continued, L&M had a duty to maintain its principals' confidence, and (iii) in any event, the communications it did have with Sotheby's do not amount to breach.  (*Id.* at 7-9.)  None of that is correct.

L&M's argument that the confidentiality language of the Invoice is equivalent to the Confidentiality Provision is meritless and inconsistent with this Court's prior Opinion on what the words of that Provision mean.  The Invoice says that the parties agreed to keep "the terms" of the sale confidential, whereas under the Letter Agreement the parties agreed to keep "all aspects" of the transaction confidential.  That difference is material, as this Court has already recognized: "Martinez and Studio Capital's failure to keep the news of changed ownership secret contributed to an aspect of the 2007 transaction's being revealed to the public: the fact that such a sale had occurred."  (Mem. Op. and Order at 19.)

With respect to the timing of the Invoice, the sufficiency of the SAC's allegations do not

6643610.5

rise and fall with the legal significance of the Invoice's misrepresentation.  Rather, the Invoice simply provides supporting detail to the SAC's claim that L&M persistently misrepresented the terms of the Confidentiality Provision through the Spring of 2010.  (SAC ¶¶ 24-35, 37-40, 53.)  The SAC focuses on the Invoice only because it is the only indication that L&M made <u>any</u> effort to ensure Martinez/Studio Capital complied with the Confidentiality Provision and, as the terms of the Invoice indicate, L&M did not accurately transmit the terms of that Provision to its principals.  While there may be room for factual disputes (and even expert testimony) as to what "maximum effort" required in this context, it is premature, at least, to conclude that L&M satisfied the standards by inaccurately communicating to its principals what the Letter Agreement required of them.

Finally, as for L&M's conduct once it knew that Martinez/Studio Capital were contemplating a public sale, (i) the law is clear that L&M had a continuing contractual obligation as agent under the Letter Agreement at least until the identity of its principals was made known to Plaintiff (which still had not happened at the commencement of this case), (ii) it could have fulfilled that contractual obligation without violating any duty of confidence, and (iii) all of the evidence indicates that L&M made <u>no effort whatsoever</u> to secure compliance with the Letter Agreement.

In short, the SAC has plainly alleged facts sufficient to state a "plausible claim" that L&M failed to make every reasonable effort to keep all aspects of the 2007 transaction confidential, as it was contractually obliged to do.  The Motion should therefore be denied.

## BACKGROUND

Plaintiff originally commenced this action in Texas state court on May 5, 2010, filing her First Amended Petition on May 7, 2010 (the "Petition").  The Petition alleged that Defendant L&M and its undisclosed principal(s) breached a contract with Plaintiff embodied in a letter

- 3 -

agreement dated April 24, 2007 (the "Letter Agreement"). Pursuant to the Letter Agreement, the undisclosed principal(s) bought a painting by Mark Rothko (the "Painting") from Plaintiff for $17.6 million. At the time Plaintiff first brought suit, she did not know the identity of the undisclosed principals who had acquired the Painting. Based on media reports and other sources, Plaintiff believes the purchaser was David Martinez, a highly successful financier, and/or the Belize company that he controls for the purposes of making art acquisitions, Studio Capital.

I.      **Defendants Move To Dismiss, Challenging The Confidentiality Provision As Unenforceable.**

After removing this case to federal court, L&M, Martinez and Studio Capital moved to dismiss the Petition pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing both that that Plaintiff's breach-of-contract claims were barred by the "plain language" of the Letter Agreement and that Plaintiff's construction of the Confidentiality Provision rendered it unenforceable as an unreasonable restraint on alienation. (06/30/10 Martinez/SC Br. [Dkt. No. 23] at 2; 06/30/10 L&M Br. [Dkt. No. 24] at 2.) In making those motions, L&M, Martinez and Studio Capital acknowledged that Plaintiff did not know who the buyer was. (*See* Martinez/SC Br. at 3 n.2; L&M Br. at 2.)

II.     **This Court Upholds The Enforceability Of The Confidentiality Provision, But Grants The Motion To Dismiss In Part, Granting Plaintiff Leave To Replead Her Claims Against L&M.**

By order dated March 7, 2011, this Court disagreed with Defendants that the Petition failed to allege "a plausible breach of contract claim . . . " (Mem. Op. and Order at 20-21, 49.) Focusing on the "all-aspects-of-this-transaction" language of the Confidentiality Provision, the Court reasoned:

> The promise to "keep all aspects of th[e 2007] transaction confidential indefinitely" describes a clear, specific obligation that is not uncommonly the subject of a contract: the obligation to keep

6643610.5

> something secret. And the scope of the secret that must be kept is also clear: "all aspects" of the 2007 transaction.
>
> [T]he "all aspects of th[e 2007] transaction" language provides a clear indication of the subject matter that must be kept confidential, and the "best efforts" standard provides an objective measure of whether a party has breached its contractual obligation to keep all aspects of the transaction confidential. The court therefore concludes that the "maximum effort" confidentiality provision provides a sufficiently definite goal or guideline to meet the standard for enforceability.

(*Id.* at 17.)

The Court also determined that, measured against this standard, the Petition stated a claim for breach of contract against Martinez and Studio Capital:

> Combined with the information that was already public — that the painting had been displayed as recently as April 2007 in the Dallas Museum of Art as a part of either the Hoffman, Rose, or Rachofsky collection — Martinez and Studio Capital's failure to keep the news of changed ownership secret contributed to an aspect of the 2007 transaction's being revealed to the public: the fact that such a sale had occurred. It is also plausible that, in causing the Rothko painting to become newsworthy by conducting a large publicity campaign or by choosing to sell by public auction, Martinez and/or Studio Capital helped disseminate details that would make it more probable that a well-informed member of the art community would be able to deduce from easily-available public information that Hoffman had sold the painting sometime after when it was displayed at the Dallas Art Museum.

(*Id.* at 19-20) (citations omitted).

With respect to the claims asserted against L&M, however, the Court held that the Petition failed to state a cause of action for breach against it:

> Hoffman alleges no specific act or omission of L&M that failed to comply with its obligations under the Letter Agreement. Mnuchin's expressions of regret and sympathy regarding Hoffman's circumstances do not amount to an admission of participation in any wrongdoing. The assertion that "L&M had itself committed to use maximum effort to maintain confidentiality" relates to the nature of the agreement, not of the breach.

6643610.5

> Hoffman also alleges that "L&M claimed it would have preferred the Painting be sold privately." But she does not plead how L&M breached the Letter Agreement by not preventing the sale at Sotheby's. Moreover, under the court's decision today, she must plead a plausible claim that L&M failed to make every reasonable effort to keep all aspects of the 2007 transaction confidential, measured according to what an average, prudent, and comparable person would or would not have done, under the same or similar circumstances, when making every reasonable effort and when exercising due diligence and in the absence of neglect. She has therefore failed to state a breach of contract claim against L&M on which relief can be granted.

(*Id.* at 19-20) (citations omitted). In dismissing, the Court granted Plaintiff leave to amend, "[b]ecause there is no indication that Hoffman cannot, or is unwilling to, cure the defects that the court has identified . . . ." (*Id.* at 45.)

### III.    Studio Capital Attaches An Invoice To Its Answer To The Petition That Materially Differs From The Confidentiality Provision Of The Letter Agreement.

Following the Court's denial of their motion to dismiss, Martinez and Studio Capital each filed an Answer to the Petition. In his Answer, Martinez denied buying the Painting, averring that Studio Capital was the true purchaser. (03/28/11 Martinez Answer to Petition [Dkt. No. 60] ¶ 7.) In its Answer, Studio Capital denied that Martinez bought the Painting, averring instead that it was the purchaser. (03/28/11 Studio Capital Answer to Petition [Dkt. No.59] ¶ 7.) In addition, Studio Capital attached to its pleading an invoice (the "Invoice"), purportedly evidencing that fact. (*Id.* at Ex. A.)

The Invoice, which Plaintiff had never seen before, purports to evidence a transaction between DL Fine Art SA, L&M, and Studio Capital, dated April 18, 2007, concerning the Painting. Significantly, the "Confidentiality Clause" referenced in the Invoice does not accurately describe the confidentiality provision referenced in the Letter Agreement. Whereas the Confidentiality Provision of the Letter Agreement requires the parties to "keep all aspects of th[e 2007] transaction confidential indefinitely," the Confidentiality Clause of the Invoice merely

6643610.5

provides that the "parties are committed to keeping the terms of [the] transaction strictly confidential."

## IV.   Plaintiff Files Her Second Amended Complaint, Particularizing Her Claims Against L&M For Breach.

On April 13, 2011, Plaintiff filed an amended complaint, refining her allegations in light of the information contained in the Invoice that had only then come to her attention.  The salient allegations of the SAC are summarized below.

L&M, who had helped Hoffman acquire major contemporary art works in the past, acted as agent for an undisclosed buyer.  (SAC ¶ 19.)

Hoffman informed L&M that preservation of confidentiality was a critical component of any sale.  (SAC ¶ 20.)  Before the sale was finalized, however, L&M's principal, Robert Mnuchin ("Mnuchin"), admitted that L&M's undisclosed principal had told a third party about Plaintiff's interest in selling the Painting.  (SAC ¶ 24.)  As a result, Plaintiff canceled the sale. (SAC ¶ 25.)  L&M necessarily understood, therefore, that it was not the disclosure of the "terms of the sale" that had alarmed Plaintiff, since no terms had been disclosed.  Rather, what disturbed Plaintiff was the disclosure that she would be selling the Painting at all, irrespective of the sale's "terms."  (SAC ¶ 24.)

L&M (through Mnuchin) manifested its appreciation for this when it "expressly promised Hoffman that the Rothko painting would 'disappear' into his undisclosed buyer's 'very private' European collection."  (SAC ¶ 27.)  Even then, Hoffman remained unwilling to sell unless and until L&M agreed to a contract with a new confidentiality provision that was both broader and more stringent.  (SAC ¶ 28.)  The Letter Agreement was the new contract, and it required that all parties agree to "make maximum effort to keep all aspects of this transaction confidential indefinitely."  (*Id.*)

- 7 -

6643610.5

But L&M began breaching the Letter Agreement immediately.  (SAC ¶ 33.)  The Invoice that L&M sent to Studio Capital materially distorted the Confidentiality Provision.  (SAC ¶ 34.) In the Invoice, L&M failed to disclose the Letter Agreement's express requirement that the parties make maximum effort to keep <u>all aspects</u> of the transaction confidential indefinitely. (SAC ¶ 35.)  Instead, L&M affirmatively misrepresented the terms of the Letter Agreement, describing a significantly weaker confidentiality clause, and stating merely that "the terms" of the transaction were confidential.  (*Id.*)

Plaintiff has not yet obtained access to Defendants' internal documents, so she cannot know at present whether L&M's material misstatement of the Confidentiality Provision was a misrepresentation made to L&M's principals, or whether Defendants had already determined among themselves to misstate the terms of their obligations.  (SAC ¶ 36.)  Regardless of whether L&M's inaccurate statement and misleading omission were deliberately false, reckless or merely negligent, they breached L&M's obligation to make every reasonable effort to keep all aspects of the transaction confidential, measured according to what an average, prudent, and comparable person would or would not have done, under the same or similar circumstances, when exercising due diligence and in the absence of neglect.  (SAC ¶ 40.)

L&M's breaches of its duties under the Confidentiality Provision did not stop there. L&M persisted for almost three years in misstating the terms of the Letter Agreement, insisting that it did not require Defendants to keep all aspects of the transaction confidential indefinitely. (SAC ¶ 37.)

In 2010, without Plaintiff's knowledge and before Plaintiff had any awareness that Sotheby's was considering auctioning the Painting, L&M contacted Sotheby's and discussed the Painting's provenance.  In doing so, L&M confirmed to Sotheby's that Plaintiff had sold the

6643610.5

Painting.  (SAC ¶ 45.)  For reasons it still has failed to explain, L&M withheld from Sotheby's the fact that L&M, Martinez and Studio Capital had agreed to make maximum effort to keep  all aspects of the transaction confidential indefinitely.  (SAC ¶ 48.)  This meant, of course, that L&M failed to provide Sotheby's with a copy of the Letter Agreement.  (*Id.*)

Plaintiff first learned on March 15, 2010 that the undisclosed buyer(s) intended to sell the Painting through Sotheby's at a public auction.  (SAC ¶ 49.)  At that time, Sotheby's had yet to issue a press release about the sale.  (*Id.*)  Plaintiff immediately took steps to attempt to prevent L&M, Martinez and Studio Capital from publicizing the sale and (further) breaching the Letter Agreement, to no avail.  (SAC ¶ 50.)

L&M contacted Plaintiff, and Mnuchin (again) professed embarrassment and concern, just as he had done when Martinez and/or Studio Capital breached their confidentiality obligation under the predecessor contract.  (SAC ¶ 50.)  "I feel simply terrible about the way events have evolved," Mnuchin stated to Plaintiff on March 17, 2010, admitting that the transaction "required a special degree of confidentiality."  "I regret the work is now publicly displayed to the world," Mnuchin said.  (*Id.*) Then, parroting the inaccurate words of the Invoice that L&M had prepared three years earlier, and once again misrepresenting the Letter Agreement, Mnuchin claimed that the terms of the Confidentiality Provision were merely "that all parties are committed to keep the terms of this transaction strictly confidential."  (SAC ¶ 53.)

Despite Mnuchin's expressions of sympathy and regret, L&M had already breached its obligation under the Letter Agreement:  first, by misstating and/or failing to inform Martinez and/or Studio Capital of the full extent of their confidentiality obligations; and second, by failing to notify Sotheby's that "all aspects" of the transaction were to be kept confidential indefinitely. (SAC ¶ 54.)

6643610.5

As a result of Defendants' failure to perform their obligations under the Letter Agreement, Sotheby's embarked on the marketing blitz that, as the Court has recognized, plausibly made "it more probable that a well-informed member of the art community would be able to deduce from easily-available public information that Hoffman had sold the painting sometime after when it was displayed at the Dallas Art Museum." (Mem. Op. and Order at 19-20.)

## V.        L&M Has Not Yet Produced Any Documents.

At the request of all Defendants, including L&M, discovery was stayed from July 21, 2010 until March 28, 2011.  Plaintiff served L&M with a First Document Request on March 30, 2011.  Plaintiff also served non-party subpoenas on L&M, Mnuchin, and Levy on April 4, 2011. L&M, Mnuchin, and Levy responded and objected to the subpoenas on April 18, 2011.  L&M responded and objected to Plaintiff's First Document Request on May 2, 2011.

Fourteen months after this case commenced, L&M has yet to produce a single document.

## ARGUMENT

## I.        The SAC States a Plausible Claim for Breach of Contract Against L&M.

The legal standard for the present Motion is stated in the Opinion.  L&M's Motion should be denied if the SAC pleads "a plausible claim that L&M failed to make every reasonable effort to keep all aspects of the 2007 transaction confidential . . . ."  (Mem. Op. and Order at 22.)  As L&M's Motion acknowledges, the SAC alleges that L&M violated the Confidentiality Provision including by misrepresenting the terms of the Confidentiality Provision to its undisclosed principals Studio Capital and/or Martinez, and by failing to inform Sotheby's about the Confidentiality Provision.  Nevertheless, L&M contends that these allegations are insufficient to plead a breach of contract, because they are supposedly too "conclusory."  L&M is mistaken.

- 10 -

6643610.5

A.   L&M Misrepresented the Terms of the Confidentiality Provision to Its Undisclosed Principals.

The SAC alleges that L&M breached the Letter Agreement by misrepresenting the terms of the Confidentiality Provision to its undisclosed principals, which occurred from the time the sale was being negotiated up until the commencement of this action.  (SAC ¶¶ 33, 34, 37.)

As one example of L&M's continuous misrepresentation, the SAC alleges that L&M distorted the terms of the Confidentiality Provision in the Invoice it apparently mailed to one of its undisclosed principals on April 18, 2007.  The Invoice describes a significantly weaker confidentiality agreement than that contained in the Letter Agreement.  Specifically, the Invoice states merely that "the terms" of the transaction were to remain confidential, whereas the parties in fact agreed to keep "all aspects" of the transaction confidential.  (SAC ¶ 35.)  The SAC further alleges that L&M's misrepresentation in the Invoice satisfies the standard this Court articulated to establish breach of the Letter Agreement.  (SAC ¶ 41.)

L&M argues that the SAC fails adequately to allege that L&M misrepresented the terms of the Confidentiality Provision to Martinez and/or Studio Capital for three reasons.  According to L&M, "there is no inconsistently between the confidentiality language of the Invoice and the confidentiality provision of the Letter Agreement as interpreted by the Court."  (05/02/11 L&M Br. [Dkt. 65] at 4.)  In any event, L&M continues, because the Invoice is dated six days before the parties signed the Letter Agreement, it cannot support a claim for breach.  (*Id.* at 6.)  Indeed, L&M says, the Invoice accurately reflected the confidentiality provision found in the prior sales agreement, dated February 27, 2007 (the "February Agreement"), and later superseded, which was the only agreement that existed at the time the Invoice was issued.  (*Id.*)  All of these arguments lack merit and should be rejected.

6643610.5

First, L&M's efforts to justify the misstatement in the Invoice are misplaced, since the sufficiency of the SAC's allegations is not solely based on the legal significance of the Invoice's misrepresentation. Rather, the Invoice provides supporting detail for the SAC's claim that L&M persistently misrepresented the terms of the Confidential Provision to Martinez and/or Studio Capital from the time the sale was being negotiated until March 2010. (SAC ¶ 37.) Plaintiff is not required at this stage to plead every aspect of her case with particularity or offer every instance in which L&M misrepresented the Letter Agreement to Martinez and/or Studio Capital. Indeed, how could she, absent the benefit of discovery, which L&M has thus far refused to provide.

Furthermore, the SAC focuses on the Invoice because it is the only indication that L&M made any effort whatsoever to ensure its undisclosed principals complied with the Letter Agreement, and that effort was plainly insufficient under the standard this Court has articulated for breach. In any event, this is not a motion for summary judgment. Consequently, Plaintiff is not required at this stage to prove that the Invoice in fact constituted a breach of the Letter Agreement (although it surely did). Rather, Plaintiff only needs to "plead enough facts 'to state a claim to relief that is plausible on its face,'" and Plaintiff has satisfied that standard. (Mem. Op. and Order at 8.)

Second, L&M's argument that the confidentiality language of the Invoice is equivalent to the Confidentiality Provision is meritless and inconsistent with the Opinion. The Invoice says that the parties agreed to keep "the terms" of the sale confidential, whereas under the Letter Agreement the parties agreed to keep "all aspects" of the transaction confidential. That difference is material as this Court has recognized: "Martinez and Studio Capital's failure to keep the news of changed ownership secret contributed to an aspect of the 2007 transaction's

6643610.5

being revealed to the public: <u>the fact that such a sale had occurred</u>."  (Mem. Op. and Order at 19 (emphasis added).)

Indeed, contrary to its newly minted "equivalence" argument, it was this very distinction that L&M claimed justified its failure to prevent public disclosure of the transaction.  In 2010, L&M incorrectly claimed that only the transaction's <u>terms</u> were confidential:

> Parroting the inaccurate words of the Invoice that L&M had prepared three years earlier, and once again misrepresenting the text of the Contract, Mnuchin claimed that the terms of the Contract were merely "that all parties are committed to keep the terms of this transaction strictly confidential."

(SAC ¶ 53.)

<u>Third</u>, L&M's argument that the Invoice's characterization of the Confidentiality Provision "accurately tracked the confidentiality provision found in the previous sales agreement, dated February 27, 2007" fails for the same reason.  As its Motion acknowledges, the confidentiality provision in the February Agreement says that "[i]t is the specified wish of the seller that <u>the sale</u> and terms of the sale remain confidential" (emphasis added).  But the Invoice makes no mention of the parties' agreement to keep "the sale" confidential.  Rather, the Invoice merely states that the parties are committed to keeping "the terms" of the sale confidential, not the sale itself.  This distinction matters.  Indeed, this whole dispute is about Defendants' failure to keep the fact of the sale confidential, despite knowing that it was the fact of the sale—not merely its terms—that Plaintiff wanted to keep private, so much so that she agreed to sell the Painting for millions less than she would have received in a public auction.

<u>Fourth</u>, L&M's suggestion that it was unaware of the terms of the Letter Agreement when it drafted the Invoice is absurd because it relies on the inference that, while L&M was in the midst of negotiating the contract of sale, it was unaware of the substance of the negotiations for the contract of sale.  In any event, the SAC alleges that L&M's characterization of the

- 13 -

6643610.5

Confidentiality Provision persisted until 2010.  (SAC ¶ 41.)  To the extent L&M is suggesting to the Court that it sent a new and accurate invoice after the Letter Agreement was finalized, that is an issue to be addressed in discovery.

L&M was acutely aware that maintaining secrecy was of paramount importance to Plaintiff, so much so that she canceled a previous sale of the Painting <u>with L&M</u> upon learning that the sale's confidentiality had been jeopardized.  Nevertheless, when sending the Invoice to its undisclosed principals, L&M failed to accurately convey one of the Letter Agreement's most important provisions.  As this Court stated, to maintain a claim against L&M, Plaintiff must "plead a plausible claim that L&M failed to make <u>every reasonable effort</u> to keep all aspects of the 2007 transaction confidential, measured according to what an average, prudent, and comparable person would or would not have done, <u>under the same or similar circumstances</u>, when making every reasonable effort and when exercising due diligence and in the absence of neglect."  (Mem. Op. and Order at 22) (emphasis added).  The SAC's allegation that L&M transmitted an invoice that materially misrepresented the terms of the parties' Agreement and then repeated that same misrepresentation when the breach became known surely meets that standard.  The SAC therefore sufficiently alleges a claim for breach.

> B.  <u>L&M Breached the Letter Agreement in its Contacts with Sotheby's in 2010.</u>

The SAC also alleges that L&M breached the Letter Agreement by failing to tell Sotheby's about the Confidentiality Provision.  Specifically, the SAC alleges that L&M, through Mnuchin, spoke to Sotheby's in early 2010 about the Painting's provenance and yet failed to inform Sotheby's that its provenance was to remain confidential.  (SAC ¶ 54.)  This material omission clearly satisfies this Court's test for breach: a prudent person in those circumstances making every reasonable effort to keep all aspects of the sale confidential would have informed Sotheby's about the Confidentiality Provision.  But the Court need not decide that issue today.

6643610.5

All that the Court must decide is whether Plaintiff's allegation regarding L&M's material omission "states a claim to relief that is plausible on its face." (Mem. Op. and Order at 8.)

Rather than explain how this allegation fails to state a claim that is plausible on its face, L&M argues instead that the allegation is "meaningless" because L&M did not represent Martinez or Studio Capital in connection with the Sotheby's auction and thus anything it said or failed to say is neither here nor there. (L&M Br. [Dkt. 65] at 7.) L&M also argues that it was not required to inform Sotheby's about the Confidentiality Provision in any event because such "concealment . . . is consistent with the obligations of an agent to its principal after the termination of the principal/agent relationship." (L&M Br. [Dkt. 65] at 8.) Both of these arguments are wholly without merit and should be rejected.

<u>First</u>, because L&M had yet to disclose the identity of its undisclosed principals to Plaintiff, L&M remained bound by the Letter Agreement at the time Sotheby's launched its publicity campaign, regardless of whether its agency relationship was continuing at that time. "The inference that the agent is a party to the contract exists until the agent gives such complete information concerning the principal's identity that the principal can be readily distinguished." *Burch v. Hancock*, 56 S.W.3d 257, 261 (Tex. App.—Tyler 2001, no pet.). *See also A to Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 435 (Tex. App.—Austin 1986, writ ref'd n.r.e.) ("The inference that the agent is a party to the contract exists until the agent gives such complete information concerning the principal's identity that the principal can be readily distinguished; if the other party has no reasonable means of ascertaining the principal, the inference prevails unless the parties have agreed otherwise."); RESTATEMENT (SECOND) OF AGENCY §321, Comment (a) ("The inference of an understanding that the agent is a party to the contract exists unless the agent gives such complete information concerning his principal's identity that he can be readily

- 15 -

6643610.5

distinguished.").   Therefore, when L&M, through Mnuchin, spoke to Sotheby's prior to the auction about the Painting's provenance, L&M had a duty under the Letter Agreement to make every effort to keep the sale confidential.   L&M's failure to tell Sotheby's about the Confidentiality Provision violated that duty.   As a result of L&M's breach, Sotheby's publicized the Painting's availability without ever being aware of the Confidentiality Provision, and L&M is liable for the consequences of its breach.   *Burch*, 56 S.W.3d at 262 ("Knowledge of the real position of affairs acquired after a cause of action has accrued cannot affect the right to recover from the agent personally on a contract.")

Second, L&M's claim that it was not acting as Martinez's and/or Studio Capital's agent at the time of the auction is not Plaintiff's position as reflected in the SAC.   On the contrary, if L&M was not acting on behalf of Martinez and/or Studio Capital, it is hard to understand for what purpose L&M was talking to Sotheby's about the Painting in early 2010.   In any event, L&M is entitled to try to establish that there was no longer an agency relationship at the time Sotheby's initiated its publicity campaign at the appropriate time.   What it is not entitled to is that inference now, prior to discovery and prior to answering, based on nothing more than its mere say-so in its motion to dismiss.

Third, all the evidence indicates that L&M made no effort whatsoever to secure compliance with the Confidentiality Provision once it knew Martinez and/or Studio Capital were contemplating a public sale.   A stiff letter to those undisclosed principals and/or Sotheby's might or might not have been enough.   However, failure to even raise the issue was a clear violation of L&M's obligation under the Letter Agreement.

Finally, L&M's argument that its confidentiality obligations to Martinez and/or Studio Capital trump its obligation under the Letter Agreement is misplaced.   First, there is no basis on

6643610.5

which to infer that Martinez and/or Studio Capital had not authorized L&M to tell Sotheby's about the Confidentiality Provision. Second, irrespective of what improper instructions L&M may have received from its undisclosed principals, to discuss the Painting's provenance with Sotheby's without endeavoring to halt the imminent publicity blitz was a breach of L&M's contractual obligation to Plaintiff. Third, whatever obligations L&M may or may not have had to its undisclosed principals do not relieve L&M from its obligation to Plaintiff, and L&M has cited no authority otherwise.[1]

## II.    Plaintiff Has Adequately Plead Causation

L&M's argument that the SAC is defective because it fails to allege causation is meritless. L&M, a party to the Letter Agreement, failed to make every reasonable effort to ensure that the sale remained confidential. Had they done so, Martinez and/or Studio Capital or Sotheby's might not have gone through with the sale. In any event, these proximate cause questions are premature given that discovery has not even occurred. Indeed "[c]ausation is a question of fact for the jury, and the jury has broad latitude to infer proximate cause from the evidence and circumstances surrounding an event." *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997). *See also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. MDL-1446, 2010 WL 5100809, at *20 (S.D. Tex. Dec. 8, 2010) ("Whether something constitutes a proximate cause of an event is a question of fact particularly within the province of a jury.")

---

[1]    L&M's citation to the Second and Third Restatement of Agency do not support its position. The Second Restatement of Agency says than an agent should not disclose a principal's confidential information to a third party that is "in competition with the principal." Restatement (Second) of Agency § 396 (1958). Sotheby's was never "in competition" with Martinez and/or Studio Capital, so this provision of the Second Restatement does not apply. Similarly, the Third Restatement of Agency, the relevant provision of which, to Plaintiff's knowledge, has never been cited by a Texas state of federal court, says that an agent should not disclose a principal's confidential information "for the agent's own purposes or those of a third party." Restatement (Third) of Agency § 8.05 (2006). Had L&M told Sotheby's about the Confidentiality Provision, it would not have been doing so exclusively for its own purposes, but it also would have been protecting its principals from liability for breaching the Letter Agreement.

6643610.5

(citation and quotation omitted); *FDIC v. Nathan*, 804 F. Supp. 888, 896 (S.D. Tex. 1992) (Although plaintiff "will ultimately, after discovery, have to prove causation and damages, questions of fact, [she] does not have to do so in the context of a motion to dismiss.").

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendant L&M Arts' motion to dismiss her Second Amended Complaint.

Dated:  May 31, 2011                         Respectfully submitted,

                         WILLKIE FARR & GALLAGHER LLP

                         By:  _/s/Roger Netzer_____
                              Roger Netzer
                              Mary Eaton
                              787 Seventh Avenue
                              New York, NY  10019-6099
                              meaton@willkie.com
                              Tel: (212) 728-8000
                              Fax: (212) 728-8111

                         SHACKELFORD, MELTON & MCKINLEY LLP
                              Bart Wulff
                              State Bar No. 22086100
                              3333 Lee Parkway, Tenth Floor
                              Dallas, TX  75219
                              BWULFF@shacklaw.net
                              Tel: (214) 780-1400
                              Fax: (214) 780-1401

                         *Attorneys for Plaintiff*

- 18 -

6643610.5

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true copy of the foregoing is being served electronically via ECF on all counsel of record on the 31 day of May 2011.


_____/s/Andrew Spital_____
Andrew Spital