IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARGUERITE HOFFMAN,           §
                              §
               Plaintiff,     §
                              §  Civil Action No. 3:10-CV-0953-D
VS.                           §
                              §
L&M ARTS, et al.,             §
                              §
               Defendants.    §

MEMORANDUM OPINION
AND ORDER

        Following the filing of plaintiff's second amended complaint, the court revisits this

action to decide in the context of motions to dismiss and for judgment on the pleadings

whether plaintiff has stated claims on which relief can be granted.  Concluding that she has,

the court denies the motions.

I

A

        Because this case is the subject of a prior opinion, *Hoffman v. L&M Arts*, ___

F.Supp.2d ___, 2011 WL 778592 (N.D. Tex. Mar. 7, 2011) (Fitzwater, C.J.) ("*Hoffman I*"),

the court need not recount the background facts at length.  Plaintiff Marguerite Hoffman

("Hoffman") once owned Mark Rothko's 1961 oil painting, Untitled ("the Rothko painting").

She decided to sell the Rothko painting in early 2007, but opted for a private, confidential

sale.  Hoffman worked through intermediaries to arrange a confidential sale that would

protect her privacy, and she was eventually able to interest an undisclosed buyer.  Hoffman

hired Greenberg Van Doren Gallery as her agent, and defendant L&M Arts ("L&M") acted as the undisclosed buyer's agent.  Hoffman communicated to L&M that the preservation of confidentiality would be a critical component of any sale, and L&M assured Hoffman that her privacy would be protected.  Hoffman and the undisclosed buyer, working through their intermediaries, made a written and binding purchase agreement ("Letter Agreement") on April 24,2007 that required the parties to "make maximum effort to keep all aspects of this transaction confidential indefinitely," and for the buyer "not to hang or display the work for six months following receipt of the painting."  2d Am. Compl. Ex. A.

An initial agreement of sale between Hoffman and the undisclosed buyer ("February Agreement"), dated February 27, 2007, expressly provided:

> It is the specified wish of the seller that the sale and terms of the
> sale remain confidential.  Any breach in confidentiality prior to
> payment in full will be considered by the seller grounds for
> terminating this agreement. It is requested that confidentiality be
> maintained indefinitely.

*Id.* ¶ 22.   Before the sale could be consummated, however, a non-party art-world professional heard that Hoffman was selling the Rothko painting and contacted her.  The fact that Hoffman was selling the painting was exactly what she did not want publicly disclosed. She asked Robert Mnuchin ("Mnuchin"), a principal of L&M, what had gone wrong. Mnuchin admitted that his undisclosed buyer had contacted a third party about the Rothko painting.  Because of this communication, Hoffman decided not to proceed with the sale.

After this first attempt fell through, L&M and the undisclosed buyer made a second attempt to negotiate a purchase of the Rothko painting.  Hoffman agreed to the sale, however,

only on the condition of a promise to "make maximum effort to keep all aspects of this transaction confidential indefinitely."  2d Am. Compl. ¶¶ 28-29, 31.  On April 18, 2007, unbeknownst to Hoffman, L&M sent an invoice to the buyer describing some of the terms of the proposed agreement.  The invoice failed to mention any obligation to "make maximum effort to keep *all aspects* of this transaction confidential indefinitely."  *Id.* ¶ 35.  Rather, it reflected some of the weaker confidentiality language from the February Agreement and only mentioned a requirement to keep the "terms" of the transaction confidential.  *Id*.  Without knowledge of the contents of the invoice, Hoffman entered into the Letter Agreement with the undisclosed buyer.  Hoffman later discovered that the undisclosed buyer was either defendant David Martinez ("Martinez") or defendant Studio Capital, Inc. ("Studio Capital"), a Belize company that Hoffman alleges is controlled by Martinez for purposes of maintaining the secrecy of his art transactions.

In 2010 Martinez (or Studio Capital, acting under Martinez's direction) consigned the Rothko painting to public auction at Sotheby's, Inc. ("Sotheby's").  L&M's Mnuchin spoke to Sotheby's about the provenance of the painting, but failed to mention to Sotheby's the defendants' confidentiality obligations under the Letter Agreement.  Hoffman alleges that L&M represented to others that the Letter Agreement did not require the parties to the transaction to keep all aspects of the transaction confidential indefinitely.  She avers that defendants concealed their obligations from Sotheby's in order to avoid the possibility that, had Sotheby's known, it would not have cooperated in the public auction.  Hoffman alleges that L&M, in failing to communicate accurately to its principal and to Sotheby's the

confidentiality obligations under the Letter Agreement, breached the provision of the Letter Agreement that required "maximum effort to keep all aspects of this transaction confidential indefinitely." *Id.* Ex. A.

The auction was highly publicized, attracting the attention of numerous media sources, including one source who speculated that "[i]f Martinez, or a related holding company, is the owner, it has been a hasty marriage," since the Rothko painting had been displayed in 2007 at the Dallas Museum of Art as part of an exhibition that included the Hoffman, Rose, and Rachofsky collections. *Id.* at ¶ 61. Hoffman alleges that, based on such public information, the art community would have been able to deduce that she had sold the Rothko painting in a recent transaction. She avers that Martinez, Studio Capital, and L&M, in deliberately publicizing the sale, breached the Letter Agreement's provision that required "maximum effort to keep all aspects of this transaction confidential indefinitely." *Id.* at Ex. A. Hoffman asserts that Martinez was able to purchase the Rothko painting at a discount in exchange for assuming the burden of the confidentiality provision in the Letter Agreement. She characterizes the alleged breach of contract by Martinez and Studio Capital in publicizing the painting's availability for purchase as "pocket[ing] the premium that [she] had forgone to protect her privacy." *Id.* ¶ 17.

B

Hoffman initially filed suit in Texas state court against Martinez and Studio Capital for breach of contract.  She filed an amended petition that added a claim against L&M for breach of contract, a claim against Sotheby's and Tobias Meyer ("Meyer"), the Worldwide Head of Contemporary Art and Principal Auctioneer for contemporary art at Sotheby's, for tortious interference with contract, a claim against Sotheby's for unjust enrichment, and a request for a permanent injunction preventing Martinez, Studio Capital, and L&M from referring to the 2007 sale in public.  The case was then removed to this court.  On Meyer's motion, the court dismissed the action against him for lack of personal jurisdiction. Hoffman dropped her request for injunctive relief as moot.  And the court dismissed the claims against Sotheby's and L&M under Rule 12(b)(6) for failure to state a claim.  The court declined to dismiss the actions against Martinez and Studio Capital.  *Hoffman I*, 2011 WL 778592 at *1 n.1, *18.  With leave to replead, Hoffman filed a second amended complaint reasserting the breach of contract claim against Martinez and Studio Capital and asserting a revised breach of contract claim against L&M.[1]  Martinez filed an answer that attached as an exhibit the

---

[1]Although not pleaded as a separate cause of action, Hoffman includes in her breach of contract claim the allegation that defendants L&M, Martinez, and/or Studio Capital "continue to breach material express provisions of the Contract as well as the covenant of good faith and fair dealing implied in the Contract." 2d Am. Compl. ¶ 69.  In explaining the meaning of the same provision in an earlier version of her pleadings, *see* P. Resp. to L&M Mot. to Dis. 18; *compare* 1st Am. Pet. ¶ 64 *with* 2d Am. Compl. ¶ 69, Hoffman clarifies that she does not intend to assert an independent claim for breach of the covenant of good faith and fair dealing, but that she is presenting this as another basis for the breach of contract claim that she has pleaded.

invoice that L&M sent to Studio Capital, outlining the terms of payment for the Rothko painting.

Martinez moves under Rule 12(c) for judgment on the pleadings, contending that the exhibit to his answer controverts Hoffman's allegation that Martinez was a party to the Letter Agreement. Martinez maintains that, because the address on top of the invoice is Studio Capital's, not Martinez's, the reference to "you" in the invoice (i.e., "[t]itle to the property shall pass to you") must refer to Studio Capital, *see* Martinez Ans. Ex. 1, and that, by inference, Studio Capital, not Martinez, must be the undisclosed buyer under the Letter Agreement. Citing Belize law, Martinez also argues that he cannot be held liable for Studio Capital's actions under an alter ego theory.

Hoffman opposes the motion, arguing that Martinez's exhibit is insufficient to defeat the allegations in her second amended complaint against Martinez and that, in any event, Martinez should remain a party because he can potentially be held liable for Studio Capital's actions under an alter ego theory.

L&M moves to dismiss under Rule 12(b)(6), contending that it did not breach its obligation to "make maximum effort to keep all aspects of [the Rothko painting] transaction confidential indefinitely." L&M maintains that Hoffman has failed to state a plausible claim because the L&M invoice did not misrepresent the Letter Agreement, L&M did not have an obligation to inform Sotheby's about the Letter Agreement, and that Hoffman has not sufficiently pleaded causation.

Hoffman opposes L&M's motion, contending that L&M has misrepresented the Letter Agreement, that L&M was required to inform Sotheby's about the confidentiality obligations under the Letter Agreement, and that causation need not be addressed at the pleadings stage.

## II

In deciding L&M's Rule 12(b)(6) motion, the court evaluates the sufficiency of Hoffman's amended petition by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive the motion, Hoffman must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (alteration omitted) (quoting Rule

8(a)(2)).

The standard for deciding Martinez's motion under Rule 12(c) is the same as the one for deciding L&M's motion to dismiss under Rule 12(b)(6). *See, e.g., Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). In evaluating a Rule 12(c) motion, the court recounts the facts favorably to Hoffman as the nonmovant. *See, e.g., Castro v. Collecto, Inc.*, 634 F.3d 779, 783 (5th Cir. 2011) ("For both [Rule 12(b)(6) and Rule 12(c)] motions . . . the well-pleaded facts are viewed in the light most favorable to the plaintiff." (quoting *Turbomeca, S.A. v. Era Helicopters, LLC*, 536 F.3d 351, 354) (internal quotation marks omitted)).

III

L&M moves to dismiss Hoffman's claim for breach of contract.[2]

A

The court begins by determining whether Hoffman has pleaded a plausible claim that L&M's acts or omissions breached the Letter Agreement. As noted, under the Letter Agreement, "All parties agree to make maximum effort to keep all aspects of this transaction confidential indefinitely." 2d Am. Compl. Ex. A. In *Hoffman I* the court held that whether a defendant's conduct qualified as maximum effort or "best efforts" to keep all aspects of

---

[2]A breach of contract claim requires proof of four elements: (1) the existence of a valid contract, (2) plaintiff's performance of duties under the contract, (3) defendant's breach of contract, and (4) damages to the plaintiff resulting from the breach. *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003) (Texas law) (citing *Palmer v. Espey Huston & Assocs.*, 84 S.W.3d 345, 353 (Tex. App. 2002, pet. denied)). The parties only dispute the third and fourth elements.

the transaction confidential indefinitely could be determined by assessing "whether the defendant made every reasonable effort to reach the identified end, measured according to what an average, prudent, and comparable person would or would not have done, under the same or similar circumstances, to make every reasonable effort when exercising due diligence and in the absence of neglect." *Hoffman I*, 2011 WL 778592, at *5; *see CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 809 S.W.2d 577, 582 (Tex. App. 1991, writ denied) (determining breach of "best efforts" provision by comparing efforts to that of an "average, prudent, comparable" person).  Hoffman maintains that L&M breached the Letter Agreement[3] by failing to meet the "maximum effort" obligation by misrepresenting or failing to mention the nature of the confidentiality obligations in the Letter Agreement to others in a position to break confidentiality.  L&M contends that it is entitled to dismissal on two grounds: first, that its alleged actions would not have constituted a breach even if it were bound by the Letter Agreement; and, second, that it is not bound by the Letter Agreement because its agency relationship had concluded in 2007.

---

[3]L&M signed the Letter Agreement as agent on behalf of an undisclosed buyer (now alleged to be Martinez and/or Studio Capital).  The parties do not dispute Hoffman's contention that L&M was a party to the Letter Agreement at the time it was signed.  Hoffman's arguments against L&M, both in the response to the instant motion to dismiss and the previous motion to dismiss, are based on L&M's alleged communications with Martinez, Studio Capital, Sotheby's, and Meyer, and L&M's failure to intervene, which she maintains violated L&M's confidentiality obligations as a party to the Letter Agreement.  Because no other theories of liability have been raised, the court addresses at this time whether L&M can be held liable for the acts or omissions of Martinez or Studio Capital.

- 9 -

B

Hoffman alleges that L&M violated the "maximum effort" provision by misinforming those in a position to conform to the Letter Agreement's confidentiality provision about the true nature of those obligations.[4]  Specifically, she asserts that L&M sent Martinez and/or Studio Capital a misleading invoice that represented that the parties were only obligated to keep the "terms" of the transaction confidential and did not mention that their obligations would apply indefinitely.  *See* Studio Capital 3-8-11 Ans. Ex. A ("All parties are committed to keeping the terms of this transaction strictly confidential.").[5]  L&M disputes that the invoice was misleading, contending that an average person would perceive no difference between keeping "all aspects" of a transaction confidential "indefinitely" and keeping the "terms" of a transaction confidential, such that Hoffman cannot plausibly allege that L&M thereby failed to exercise reasonable "maximum effort."  L&M also argues that any invoice that predates the Letter Agreement cannot serve as a basis for a breach of contract claim.

―――――――――――――

[4]Hoffman also alleges as an alternate ground that L&M breached the confidentiality provision by discussing the Rothko painting's provenance with Sotheby's without also informing Sotheby's about the confidentiality provision.  The court need not reach this issue because the court is concluding that Hoffman has pleaded plausible breach of contract claim based on an alleged breach of the Letter Agreement's "maximum effort" confidentiality obligation.

[5]Although the court is citing Studio Capital's March 28, 2011 answer, it notes that Hoffman quotes the invoice in her second amended complaint and relies on it to support her claims.  "[M]atters incorporated by reference or integral to the claim . . . may be considered by the district judge without converting the [12(b)(6)] motion into one for summary judgment."  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 376 (3d ed. 2004).

The court agrees with L&M that an invoice that predates the Letter Agreement cannot of itself serve as a basis for a breach of contract claim based on the Letter Agreement. The invoice is dated April 18, 2007, and the Letter Agreement is dated April 24, 2007. But Hoffman clarifies in her response brief that she is not referring to the invoice alone as evidence of breach of contract. Instead, she is relying on the invoice to illustrate what she alleges is L&M's misleading characterization of the parties' confidentiality obligations, which she says L&M has maintained since before the Letter Agreement was signed until the instant motion to dismiss was filed. Hoffman points to L&M's representation of this allegedly misleading interpretation to others as constituting a breach of the Letter Agreement.

To determine whether Hoffman has plausibly pleaded that L&M breached the "maximum effort" requirement by misrepresenting the confidentiality obligations of the Letter Agreement, the court must first understand what Hoffman alleges that L&M represented its confidentiality obligations to be. Hoffman asserts that L&M's position did not change from the one expressed in its invoice to Martinez and/or Studio Capital, even though the Letter Agreement altered L&M's obligations, i.e., even though the invoice itself *predates* the Letter Agreement, it reflects how L&M continued to conduct itself *after* the Letter Agreement was signed. The court therefore examines the invoice in order to ascertain how L&M characterized its confidentiality obligations, even though the invoice predates the Letter Agreement.

- 11 -

The invoice characterizes the parties' confidentiality obligations as extending only to the "terms of the transaction," whereas the later Letter Agreement requires all parties to keep "all aspects" of a transaction confidential "indefinitely." L&M contends that, to an average person, there is no difference between keeping "all aspects" of a transaction confidential "indefinitely" and keeping the "terms" of a transaction confidential. The court disagrees. In *Hoffman I* the court determined the meaning of the maximum effort clause of the Letter Agreement by applying the principle that "[l]anguage should be given its plain and grammatical meaning unless it definitely appears that the parties' intentions would thereby be defeated." *Hoffman I*, 2011 WL 778592, at *4 (citing *Bank One, Tex., N.A. v. FDIC*, 16 F.Supp.2d 698, 707 (N.D. Tex. 1998) (Fitzwater, J.)). Mindful of the requirement to give contractual provisions their plain and ordinary meaning, as an average comparable person might read them, the court concluded in *Hoffman I* that the very fact that a sale occurred in 2007 between Hoffman and Martinez and/or Studio Capital could have been one "aspect" of the transaction that required secrecy under the confidentiality clause of the Letter Agreement. *Id*. at *7. The fact that a sale occurred might not be a "term" of the sale transaction, but might nevertheless be considered an "aspect" of the sale by an average person. To illustrate, assume that Seller sells a painting to Buyer for $500,000, to be delivered in one year. Under the restrictions of the invoice language, neither party could disclose the terms of the transaction, but they *could* disclose that the transaction had occurred. But under the Letter Agreement, they could not even disclose that the transaction

itself had occurred.

And this is precisely what Hoffman alleges she negotiated for. According to Hoffman, L&M had tried before to negotiate a sale with her on behalf of Martinez and/or Studio Capital. Hoffman had attempted under the February Agreement to require that "*the sale and* terms of the sale remain confidential." 2d Am. Compl. ¶ 22 (emphasis added), suggesting that she intended that not only the terms of the sale but the fact of the sale itself remain confidential. She avers that when word got out to another art professional that she was selling, she deemed this disclosure to be a breach of the confidentiality agreement and declined to consummate the sale. Hoffman alleges in her second amended complaint that she only agreed to the April sale after L&M and the then-undisclosed buyer agreed to a stronger, more unequivocal promise, as stated in the Letter Agreement. *See id.* ¶ 28. An average comparable person—i.e., an art agent who knew why the prior attempted sale failed—would have understood that the Letter Agreement required keeping the existence of the sale itself confidential.

Hoffman has therefore plausibly pleaded that, if L&M continued to represent a narrow understanding of the confidentiality obligations even after the Letter Agreement was signed, it did not accurately communicate the confidentiality obligations that the Letter Agreement imposed. She has alleged facts that support the plausible inference that an average, prudent, and comparable art agent, faced with the same negotiating history, Letter Agreement, and obligation to exert "maximum effort" to preserve confidentiality, would

have ensured that it represented to its principal and to others in a position to compromise this confidentiality that the parties' confidentiality obligations applied to the existence of the transaction as well as to its terms.  Furthermore, such a person would have understood that the obligation to "make maximum effort" might require more than merely keeping the contents of the secret confidential.  For example, a person who hides the contents of a secret but discloses that the secret exists could fail to fulfill the requirement to make "maximum effort" to preserve the confidentiality of "all aspects" of the secret.  Therefore, if L&M engaged in acts or omissions after April 24, 2007 that advised others of their obligations using the paraphrase found in the April 18, 2007 invoice, it can be plausibly inferred that L&M breached the "maximum effort" clause of the Letter Agreement.

L&M argues that, even if the position taken in the invoice would be a misrepresentation of the obligations under the Letter Agreement, Hoffman has not plausibly shown that any misrepresentations were made to anyone after the date of the Letter Agreement.  L&M contends that, even if it had a mistaken understanding of the parties' confidentiality obligations, it cannot have breached the Letter Agreement unless it communicated this mistaken understanding to someone else.  Hoffman responds that she is not obligated to plead all of the occasions that L&M may have misrepresented the confidentiality obligations.

The test for whether Hoffman is required to plead specific instances of conduct is whether such specificity is necessary to plead a plausible claim, that is, to permit the court

to infer more than the mere possibility of misconduct.  In her second amended complaint, she asserts in only general terms that "until the commencement of this action, including in 2010, L&M continued to insist that the [Letter Agreement] did not require Defendants to keep all aspects of the Transaction confidential indefinitely," 2d Am. Compl. ¶ 37; that "until the commencement of this action L&M falsely asserted—to Sotheby's and Meyer, among others—that the Defendants had no obligation to keep all aspects of the Transaction confidential indefinitely," *id.* ¶ 38; and that "at all times until the commencement of this action L&M omitted to disclose—to Sotheby's and Meyer, among others—that the Defendants were required to keep all aspects of the Transaction confidential indefinitely," *id.* ¶ 39.  When taken as true, however, these allegations are sufficient to permit the court to infer more than the mere possibility that L&M breached the Letter Agreement.  Although Hoffman has not specified particular acts or omissions committed in relation to Martinez, Studio Capital, or others, she has pleaded more than mere conclusory allegations.  She has not, for example, merely alleged the legal conclusion that L&M "misrepresented" the Letter Agreement; she has pleaded facts that indicate how L&M misrepresented the obligations of the Letter Agreement, i.e., sometime after the Letter Agreement took effect, L&M represented to "Sotheby's and Meyer, among others," *id.* ¶ 38, that the parties did not have an obligation to keep all aspects of the transaction confidential indefinitely, and L&M never corrected this misrepresentation.  These allegations identify the contents of the statements and the persons to whom they were made.  Hoffman has done more than plead what L&M describes as "an allegation regarding L&M's own internal alleged interpretation of the

confidentiality provision." *See* L&M Reply 2 (noting that ¶ 37 of second amended complaint only alleges the opinion that L&M held, internally, rather than alleging any miscommunication or other act that could constitute a breach). She specifically alleges that L&M represented to Sotheby's,[6] Meyer, and others that there was no obligation to keep all aspects of the transaction confidential indefinitely, and that L&M never corrected this communication. *See* Compl. ¶¶ 38-39.[7]

Therefore, Hoffman has pleaded a plausible claim against L&M for breaching the "maximum effort" confidentiality provision of the Letter Agreement.[8]

_____

[6]To the extent that L&M contends that some other duty of confidentiality, *owed to Martinez and/or Studio Capital, rather than to Hoffman*, would be breached if it disclosed the confidentiality provision to Sotheby's, *see* Restatement (Third) of Agency § 8.05(2) (2006) ("[An agent has a duty] not to use or communicate confidential information of the principal for the agent's own purposes or those of a third party."), the court defers consideration of such fact-specific rebuttals until later, if necessary. When evaluating a Rule 12(b)(6) motion, the court is limited in what it can consider without converting the motion to a summary judgment motion. Hoffman's second amended complaint does not allege any facts suggesting that L&M contacted Sotheby's for its own purposes or for the benefit of a third party.

[7]The plausibility of Hoffman's factual allegations is corroborated to an extent by the fact that L&M continues to take the erroneous position that there is no difference between the obligation to "make maximum effort to keep all aspects of this transaction confidential indefinitely," 2d Am. Compl. ¶¶ 28-29, and the obligation to "keep[] the terms of this transaction strictly confidential," Studio Capital 3-28-11 Ans. Ex. A, which L&M has repeated in the instant motion to dismiss. *See* L&M Mot. to Dismiss 4 ("There is no difference between keeping 'all aspects' of the transaction confidential versus keeping 'the terms . . . strictly confidential.'").

[8]L&M asserts that its failure to inform Sotheby's about the confidentiality obligations under the Letter Agreement or to provide a copy of the Letter Agreement is not a breach because the act of informing a third party such as Sotheby's or giving it a copy of the Letter Agreement would itself be a breach of the Letter Agreement. The court cannot determine on the basis of the limited Rule 12(b)(6) record whether an average, prudent, and comparable art agent would have determined that reasonable best efforts to maintain confidentiality of all aspects of the transaction, when facing such circumstances, would require disclosing the

- 16 -

C

L&M also moves for dismissal on the basis that it was not bound by the terms of the Letter Agreement at the time of the actions on which Hoffman relies to establish a breach.

Although the parties do not dispute that L&M was a party to the Letter Agreement at the time it was signed, L&M argues that it was no longer bound by the Letter Agreement's terms because its agency relationship with respect to facilitating the 2007 Rothko painting transaction had concluded. It contends that it had no obligation in 2010, three years after the transaction, to inform Sotheby's or Meyer about the true nature of the Letter Agreement's confidentiality provision, and that it could not have disclosed the contents of the Letter Agreement because, following the termination of the agency, an agent has an ongoing duty to the principal "not to use or disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, . . . confidential matters given to him only for the principal's use." L&M Mot. to Dismiss 8 (quoting Restatement (Second) of Agency § 396(b) (1958) (internal quotation marks omitted)). Hoffman opposes this argument, contending that L&M's agency obligations as a party to the Letter Agreement continued at the time of the alleged breaches because it had not yet disclosed to her the identity of its principal. She maintains that L&M must have been acting as an agent for Martinez and/or Studio Capital at the time it spoke with Sotheby's about the Rothko painting's provenance because L&M would otherwise have had no reason to discuss the

confidentiality provision (or at least a more accurate paraphrase) to Sotheby's.

- 17 -

painting's provenance with Sotheby's.  Hoffman posits that L&M could have disclosed the confidentiality obligations to Sotheby's without violating its principal's confidence.

The court is unable to conclude on the Rule 12(b)(6) record that L&M is entitled to dismissal on this basis.  Although in Texas an agency relationship "terminates upon the accomplishment of the purpose for which it was created," *Jones v. Allen*, 294 S.W.2d 259, 262 (Tex. App. 1956, writ ref'd n.r.e.), "[t]he inference that the agent is a party to the contract exists until the agent gives such complete information concerning the principal's identity that the principal can be readily distinguished." *Burch v. Hancock*, 56 S.W.3d 257, 261 (Tex. App. 2001, no pet.).  If L&M had not disclosed the identity of its principal by the time Martinez and/or Studio Capital decided to dispose of the Rothko painting at public auction, L&M can still be held liable for violating the Letter Agreement.  Because L&M has failed to establish that it cannot be held personally liable for breaching the Letter Agreement as a party, the court need not consider whether L&M was speaking to Sotheby's as an agent on behalf of Martinez and/or Studio Capital.

D

L&M contends that Hoffman has failed to properly plead the causation element of her breach of contract claim.  It maintains that Hoffman's damages result from the publicity surrounding the Sotheby's auction and posits that Hoffman has failed to plead how any of L&M's acts caused the auction or the publicity attendant to it.  L&M cites the court's conclusion in *Hoffman I* that Hoffman's first amended petition failed to plead how L&M breached the Letter Agreement by not preventing the sale at Sotheby's, *see Hoffman I*, 2011

WL 778592, at *8, and it contends that her second amended complaint is similarly flawed. L&M argues that Hoffman has failed to plead that Martinez or Studio Capital engaged L&M in any capacity concerning the Sotheby's auction, has failed to plead how L&M was at all connected with the auction, and there can be no reasonable inference that L&M was in any position to influence the auction. L&M does not contend that Hoffman has failed to plead that the auction and publicity caused her to suffer damages; it argues that she has not adequately pleaded how L&M's actions or failure to act caused the auction and attendant publicity to occur.

The court concludes that Hoffman has adequately pleaded the causation element of her contract claim. Unlike the first amended petition, the second amended complaint pleads facts that enable the court to infer a connection between L&M's conduct and the Sotheby's auction. Although the first amended petition did not mention L&M's alleged involvement after the 2007 transaction (as though L&M was just as surprised as was Hoffman at the turn of events in 2010), the second amended complaint avers that, prior to the auction, L&M spoke with Sotheby's about the Rothko painting and its provenance. This raises the plausible inference that, as a result of this conversation, L&M knew or had reason to know that Sotheby's and the new owner of the Rothko painting were contemplating a sale at public auction. It is reasonable to infer that an average, prudent, and comparable art dealer making maximum effort to preserve the confidentiality of Hoffman's earlier sale would have realized that when a well-known *auction house* inquires about a painting's provenance, it is likely

contemplating a sale at *public auction*.  Given this likelihood, it is plausible to infer that

L&M's failure to undertake efforts to prevent the public sale breached the maximum effort

provision, and that this failure caused Hoffman to suffer damages as a result of Sotheby's

public auction.  The court therefore holds that Hoffman has adequately pleaded causation.[9]

IV

The court now considers Martinez's motion for judgment on the pleadings.  Martinez

maintains that the exhibit attached to his answer shows that he is not party to the Letter

Agreement and therefore cannot be liable for breach of contract.[10]

A

In deciding Martinez's earlier-filed Rule 12(b)(6) motion, the court accepted as true

Hoffman's allegation that Martinez was the undisclosed buyer of the Rothko painting and

a party to the Letter Agreement.  *See Hoffman I*, 2011 WL 778592, at *3 n.5.  In deciding

Martinez's Rule 12(c) motion, he urges the court to consider the invoice that he has attached

to his answer and excerpts from Hoffman's second amended complaint to conclude that

Studio Capital, not Martinez, was the purchaser under the Letter Agreement.  Martinez

---

[9]Because Hoffman is not asserting an independent claim for breach of implied covenant of good faith and fair dealing, the court need not decide whether she has pleaded such a claim on which relief can be granted.

[10]Martinez also contends that he cannot be held liable for Studio Capital's actions because Belize law does not permit liability under an alter ego theory to extend this far. Because the court is concluding that Martinez can be held liable as a party to the Letter Agreement, it need not address whether Martinez can be held liable based on an alter ego theory for any actions taken through Studio Capital.

contends that, for the purposes of his Rule 12(c) motion, the court need no longer accept Hoffman's allegations of his involvement as true, because the invoice and other parts of the second amended complaint directly controvert the assertions about his involvement.  He maintains that he is entitled to judgment on the pleadings on the ground that he was not a party to the Letter Agreement and therefore cannot have breached it.

Hoffman responds by disputing the contention that the invoice and her second amended complaint contradict her allegations that Martinez may be the buyer, and she submits a letter from the buyer's agent, quoted in part in her second amended complaint, in which the agent represented to Hoffman that the buyer was an "individual," not a corporation.  P. App. 2.[11]

B

When deciding a Rule 12(c) motion, the court accepts as true all well-pleaded facts in the complaint and views them in the light most favorable to the plaintiff.  *See, e.g., Gentilello*, 627 F.3d at 543-44; *Katrina Canal Breaches Litig.*, 495 F.3d at 205.[12]  Martinez

_____

[11]The court need not rely on the exhibit because it can decide Martinez's motion based on the part of the letter quoted in Hoffman's second amended complaint.

[12]Martinez cites to *Sheppard v. Texas Department of Transportation*, 158 F.R.D. 592, 595 (E.D. Tex. 1994), for the proposition that a dismissal is appropriate "[u]nless the pleadings on *their face* reveal beyond doubt that the plaintiff[] can prove no set of facts that would entitle them to relief."  *Sheppard* predates *Twombly*, however, and is not binding on this court.  As noted in *Katrina Canal Breaches Litigation*, the language that the *Sheppard* court quoted is found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The Supreme Court held in *Twombly* that "the *Conley* rule is not 'the minimum standard of adequate pleading to govern a complaint's survival.'"  *Katrina Canal Breaches Litig.*, 495 F.3d at 205 n.10 (quoting *Twombly*, 550 U.S. at 463).

maintains that allegations in the complaint should not be accepted as true if an exhibit attached to the pleading directly refutes the complaint's assertions. *See Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."). Hoffman does not contest the proposition that a conflict between the allegations of the complaint and an exhibit attached to the answer may require the court to accept the exhibit as controlling.   She argues that the court should accept the factual allegations in the complaint unless the complaint and the exhibit are *unequivocally* contradictory. *See, e.g.*, *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206-07 (5th Cir. 1975) (vacating default judgment against appellant because pleadings did not support finding of liability for breach where exhibit indicated that appellant only signed contract as agent); *Simmons*, 113 F.2d at 813 (affirming dismissal of case where complaint stated that letter correspondence constituted contract, but letter attached as exhibit to complaint demonstrated as a matter of law that no contract existed); *Sheppard v. Tex. Dep't of Transp.*, 158 F.R.D. 592, 597 (E.D. Tex. 1994) (contrasting earlier case that did not consider references to documents that "did not even completely refute the assertions made in the plaintiff's complaint" with case where document "directly refutes the complaint's assertions"). In sum, the parties do not quarrel about *Simmons*' instruction that a genuine conflict between the complaint and a pleading exhibit requires that the court accept the exhibit rather than the factual allegations as true.   The parties do contest, however, the extent to which an exhibit

- 22 -

must weigh against the allegations of the complaint for the court to consider the two documents to conflict.

The court need not resolve this procedural question because Hoffman's breach of contract claim is plausibly pleaded even when the invoice exhibit is deemed controlling. The invoice is dated April 18, 2007, six days before the date of the Letter Agreement.  The invoice specifies the item to be sold, the purchase price, the transaction terms, and the payment instructions.  The invoice states that "Title to [the Rothko painting] shall pass to you when you have made payment in full, in good cleared funds." Martinez Ans. Ex. A. The address block at the top of the invoice letter states, "Studio Capital Inc. / 35A Regent Street / Belize City, Belize."  *Id.*  But the fact that the letter was sent to Studio Capital does not necessarily mean that the "you" or the "purchaser" specified in the letter is Studio Capital. It is plausible, especially considering the allegations that Mnuchin, L&M's principal, consistently referred to the buyer as an "individual" who was "extremely private," 2d Am. Compl. ¶ 20, that the terms "you" and "purchaser" referred to a particular individual who wished to remain unnamed and who received correspondence through Studio Capital, rather than to Studio Capital itself.  The letter heading alone, or the fact that the letter was sent to Studio Capital's address, does not make implausible the proposition that Martinez, as an individual, was the title holder and purchaser contemplated in the invoice, especially when considering that the transaction was structured with the intent of preserving the anonymity of the real parties involved.  It is plausible that an individual who desired privacy would

- 23 -

direct his agent to send all correspondence intended for him to his corporate address and to omit any mention of his name in the invoice.  Considering the alleged circumstances of this case, it is not implausible to infer that a letter addressed and sent to Studio Capital, *see* Martinez Ans. Ex. A, was not intended for Studio Capital itself.[13]  *See Inter-Continental Promotions, Inc. v. MacDonald*, 367 F.2d 293, 302 (5th Cir. 1966) (distinguishing between cases such as *Simmons* and the case before it by noting that, in the former, the complaint was in "direct conflict" with the documents and in the latter the complaint "in no way conflict[ed]" with the terms of the agreement because the agreement was silent on issue); *cf. Union Pac. R.R. Co. v. Innovative Logistics Servs.*, 2005 WL 2897379, at *4 (S.D. Tex. Nov. 3, 2005) (determining that genuine issue of material fact existed regarding identity of contracting parties, where invoices indicated services rendered to defendants' customers but were silent on whether defendants had arranged those services on customers' behalf, and assuming facts in favor of nonmovants to deny summary judgment).[14]  Even assuming that the foregoing explanation is not the most *probable*, the test at this stage of the case is

---

[13]Therefore, it is not implausible to infer that when "L&M sent [the invoice] to Studio Capital," 2d Am. Compl. ¶ 34, "L&M transmitt[ed] . . . [the] invoice to the buyer," *id.* ¶ 41, who was not Studio Capital itself.

[14]As in *Inter-Continental Promotions*, the document provided in this case is silent on the issue of fact being asserted and does not directly contradict the second amended complaint.  Moreover, Martinez mischaracterizes the reasoning in *Union Pacific*; the central question of fact before that court was, in that court's own words, "the identity of the contracting parties," and not whether or not a contract existed.  *Union Pac.*, 2005 WL 2897379, at *4 (weighing possibility of contract with *defendants* against possibility of contract with *defendants' customers*).

*plausibility*, not *probability*.

Accordingly, Martinez's motion for judgment on the pleadings must be denied.

\*   \*   \*

Accordingly, for the reasons explained, the court denies L&M's May 2, 2011 motion to dismiss under Rule 12(b)(6) and denies Martinez's May 2, 2011 motion for judgment on the pleadings.

**SO ORDERED**.

August 15, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE