In The United States District Court
For The Northern District Of Texas
Dallas Division

| | |
|---|---|
| Marguerite Hoffman, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:10-cv-0953-D |
| § | |
| L&M Arts, David Martinez and § | |
| Studio Capital, Inc., § | |
| § | |
| Defendants. § | |

**REPLY BRIEF IN FURTHER SUPPORT OF FIRST MOTION TO COMPEL OF
<u>DEFENDANTS STUDIO CAPITAL, INC. AND DAVID MARTINEZ</u>**

Gordon M. Shapiro
Kurt Schwarz
Stephanie C. Sparks
JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

Jonathan I. Blackman (pro hac vice)
Howard S. Zelbo (pro hac vice)
Melissa K. Marler (pro hac vice)
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

Defendants Studio Capital, Inc. and David Martinez submit this Reply Brief in Further Support of their Motion to Compel Discovery Responses (the "Motion").

## PRELIMINARY STATEMENT

This Motion addresses Plaintiff's refusal to provide discovery about her sales of works of art other than the Painting since the announcement of the Bequest of her collection to the Dallas Museum of Art.[1] In her opposition, Plaintiff conflates *discoverability* with *admissibility*. But it is of course black-letter law that information need not be admissible to be discoverable. Plaintiff does not cite a single case suggesting that the documents and information requested by Defendants are not discoverable; every one of her cases addresses only admissibility. And although beside the point, the cases Plaintiff cites do not come close to establishing that the information sought would not ultimately be admissible at trial.

Plaintiff in fact agrees that documents and information regarding her other art sales are relevant, but only if, in Plaintiff's view, the sales were part of a "well-publicized wholesale selloff of her collection." This makes no sense for several reasons. *First*, even if Plaintiff only sold a few other works during the relevant period – or even if she only sold one other work – and this was known to other people than Plaintiff or the buyer, this would unquestionably cut against her argument that the alleged disclosure of her sale of the one Painting at issue in this action caused her great "embarrassment" as she alleges in her complaint. If, during the relevant period, Plaintiff was able to sell other works, or even one work, without suffering embarrassment then

---

[1] At the time Defendants filed this Motion, they believed, because of Plaintiff's promises to provide various other discovery that she had previously resisted, that this was the only remaining discovery dispute and that this would therefore be the only motion to compel that Defendants would need to file. Unfortunately, since the Motion was filed, Plaintiff has failed to deliver on her promises and has engaged in a deliberate attempt to delay the discovery process in the face of a tight schedule, and Defendants have since had to file two additional motions to compel discovery (Dkt. Nos. 89 and 97). Plaintiff's statement that "[a]fter numerous meet-and-confers and concessions by Plaintiff, the only dispute that remained outstanding was the one that is the subject of this Motion" (Pl. Opp. at 3) is therefore entirely inaccurate.

she could hardly contend that she suffered damages as a result of alleged embarrassment from the disclosure of the sale of the one Painting at issue in this case. At a minimum, Defendants are entitled to discovery to explore this issue. *Second*, if Plaintiff was selling other works, this would be a link in the evidentiary chain towards showing that people knew she was generally buying and selling art (even if not a "wholesale selloff"), which again would be inconsistent with her argument that she somehow suffered great embarrassment from the sale of this one Painting. *Third*, the other sales are directly relevant to liability. If Plaintiff sold other works with contracts containing confidentiality provisions, the manner in which she treated those confidentiality provisions would certainly be relevant to her interpretation of the confidentiality provision at issue here and, at a minimum, would be information calculated to lead to the discovery of admissible evidence. And, if she sold them without confidentiality provisions, this would show that confidentiality was not a serious concern for Plaintiff. *Fourth*, even under Plaintiff's crabbed view of discoverability, Defendants are entitled to this discovery to test *whether* Plaintiff had engaged in a "wholesale selloff" of her works of art; certainly Defendants are entitled to probe this issue through discovery and should not have to accept Plaintiff's bald and unsupported statement that there was no "wholesale selloff," particularly since Plaintiff does not even define what she means by this phrase.

      Plaintiff has not argued that providing the discovery would be burdensome, and it would appear to be a fairly simple matter for her to compile and produce it. Her objections based on privacy and security are not well-founded in light of the Stipulated Protective Order in this case, which permits her to designate any material she believes contains proprietary information as Attorney's Eyes Only. Thus, she should be compelled to provide the information requested by Document Request No. 10 and Interrogatory No. 13 regarding her sales of other works of art.

Finally, Plaintiff should be required to pay Defendants' expenses, including attorneys' fees, incurred in bringing this Motion.

## ARGUMENT

### I

### PLAINTIFF ERRONEOUSLY CONFLATES DISCOVERABILITY WITH ADMISSIBILITY

Plaintiff argues that "'it is well-settled in Texas that transactions of a party to a lawsuit with persons who are not parties to the same lawsuit are inadmissible, as they are irrelevant, immaterial and highly prejudicial.'"  Pl. Opp. at 4 (quoting State v. Buckner Const. Co., 704 S.W.2d 837, 848 (Tex. App. – Houston [14th Dist.] 1985, writ ref'd n.r.e.)).  But discovery is not limited to matters that would be admissible at trial.  Rule 26(b)(1) expressly provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense" and that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  The Supreme Court has underscored that this Rule should be accorded broad and liberal treatment.  See, e.g., Hickman v. Taylor, 329 U.S. 495, 506 (1947).  The Fifth Circuit and courts in this District have consistently allowed discovery of relevant information, even if it might not be admissible at trial.  See, e.g., Crosby v. Louisiana Health Service and Indem. Co., No. 10–30043, 2011 WL 2811532, at *2 (5th Cir. July 19, 2011) (vacating a magistrate judge's denial of a motion to compel excluding discovery of relevant information because it would be inadmissible, finding that this denial prejudiced the party, and remanding for further discovery); Nickell v. Flight Options, LLC, No. 3-10-CV-1323-D, 2010 WL 3784497, at *2 (N.D.Tex. Sept. 27, 2010) (finding that information pertaining to other fractional owners of an aircraft was reasonably calculated to lead to the discovery of admissible evidence and that

opposing party had "failed to adequately explain, much less prove, how this information and any related documents are confidential and proprietary."); Spiegelberg Mfg., Inc. v. Hancock, No. 3-07-CV-1314-G, 2007 WL 4258246, at *2 (N.D.Tex. Dec. 3, 2007) (granting in part a motion to compel discovery of issues that were "clearly relevant" to plaintiff's claims and defendants' counterclaims).

The cases Plaintiff cites all go to *admissibility*, not *discoverability*. See State v. Buckner Const. Co., 704 S.W.2d at 848 (cited in Pl. Opp. at 2, 4) (affirming trial court's judgment that certain deposition testimony regarding contracts entered into by parties in other states was not admissible); University City, Mo. v. Home Fire & Marine Ins. Co., 114 F.2d 288, 294 (8th Cir. 1940) (cited in Pl. Opp. at 4) (holding that evidence regarding expired insurance contracts with other companies was not admissible because it would not aid in interpreting the insurance contract at issue). In one of the cases Plaintiff cites, indeed, the court actually found that the information *was* admissible. In Davidson Oil Country Supply Co. v. Knockner, Inc., 908 F.2d 1238, 1244 (5th Cir. 1990) (cited in Pl. Opp. at 4), the Fifth Circuit overturned the district court's ruling excluding evidence of other product failures in a latent product defect case and ordered a new trial. Plaintiff cites a footnote quoting the defendant's motion *in limine* in that case (see Pl. Opp., citing 908 F.2d at 1241 n.5), but the actual holding is that the evidence is admissible.[2] In any event, the holding, like those in the other cases Plaintiff cites, has nothing to do with discoverability.

Moreover, Plaintiff's cases do not establish even that the information sought by Document Request No. 10 and Interrogatory No. 13 *would* be inadmissible, much less that it is

---

[2] The quotation in Plaintiff's brief is actually from a parenthetical within the Court's quotation of the motion *in limine* citing to Texas Farm Bureau Mut. Ins. Co. v. Baker, 596 S.W.2d 639, 642 (Tex. Civ. App. – Tyler 1980, writ ref'd n.r.e.). That case held that evidence regarding plaintiff's previous fire loss was not admissible in an action in which an insurer alleged arson.

4

not discoverable. For example, in University City, the court reversed a judgment because the trial court had improperly admitted exhibits consisting of expired insurance contracts with other companies that purported to insure a number of buildings separately, instead of as a single structure. The Eighth Circuit held that the policies "could have been admissible" if they either "were relevant to the issue and would aid the court in construing the language of the policies" or "because the policies in suit are ambiguous as a matter of law making the exhibits competent as evidence of the intent of the parties." 114 F.2d at 293-94. The court held that the policies were not admissible because, among other things, "there is no similarity between the description [of the insured property] in the policies in suit and the descriptions in the exhibits to support the contention that the defendants understood that they were replacing insurance upon only one section of the structure, or that the policies were issued to replace other insurance at all." Id. at 294. Thus, the case does not stand for the proposition that information regarding contracts with other parties is always inadmissible, and certainly does not support an argument that such information is not even discoverable.

  Further, while the Buckner case states the general rule that "[t]he doctrine of 're inter alios acted' says that each act or transaction must be established by its own particular facts and circumstances," 704 S.W. 2d at 848, there are exceptions to this doctrine where other acts or transactions establish a pattern of conduct. See Texas Farm Bureau Mut. Ins. Co. v. Baker, 596 S.W.2d 639, 642 (Tex. Civ. App. – Tyler 1980, writ ref'd n.r.e.) (cited in Buckner and holding that previous fire loss was not admissible where it was "a single isolated event rather than one of several in a continuing design, system, or scheme," but noting that evidence of other acts or transactions could be admissible where "they are so connected with the transaction under consideration in point of time that they may all be regarded as parts of a system, scheme or

plan"). Thus, Plaintiff has not even established that the information at issue here would be inadmissible, and certainly has not established that is not discoverable, which is the only relevant issue at this point under Rule 26(b)(1).

## II

### THE INFORMATION IS CLEARLY RELEVANT AND AT A MINIMUM REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

Plaintiff claims that her other sales of art would be relevant only in the event "of some well-publicized wholesale selloff of her collection." Pl. Opp. at 5; see also July 6 Letter (Appendix, Ex. H, p. 65) (stating Plaintiff's belief that other sales would be relevant only "if it were publicly known that Plaintiff were selling off her art collection," because "then someone might have inferred that the Painting was for sale"). Thus, she admits the information would be relevant if she sold enough works but argues that relevance somehow depends on how many works she sold. She then sets the cutoff at a "wholesale" selloff of her collection. Defendants are not sure what Plaintiff means by "wholesale" and should not be forced to accept her word that her other sales are not significant enough to be relevant to this case. More important, as Defendants showed in their opening brief on this Motion (Opening Br. at 6-7), it is simply not correct that Plaintiff's other sales would be relevant only in the event of a "selloff" of her collection. Even a few other sales – or even one other sale – would clearly be relevant.

First, other sales are relevant to liability. Plaintiff has alleged that a confidentiality provision that required the parties to keep "all aspects" of the transaction confidential, and did not mention resale, nonetheless served to prohibit Defendants from reselling the Painting at auction. Other sales by Plaintiff involving similar confidentiality provisions, and what later happened to those works, certainly bear on the issue of what Plaintiff intended with respect to the confidentiality provision at issue here and how that provision should be interpreted. If, for

6

example, she sold another work with a similar or identical confidentiality provision and that work was later auctioned by the buyer, and Plaintiff did not complain, that would suggest that Plaintiff did not believe the confidentiality provision prevented resale by auction. And if other sales from the same time period did not have confidentiality provisions, that would suggest that confidentiality was not as important as Plaintiff now claims. These are arguments Defendants would be entitled to make to a jury, and they are certainly entitled to inquire into the facts to determine if there is a basis for these or other arguments.

Second, other sales are obviously relevant to damages. Plaintiff asserts she was damaged in part because of the "embarrassment" she allegedly suffered when people within the art community found out about the sale. See Second Amended Complaint ¶ 60. Even if she only sold a few works, if those sales were widely known within the art community, and she was not embarrassed by them, it is less likely that she would be embarrassed by the sale of this particular Painting.[3] Indeed, even if she sold just one other work, and that sale was known to others or Plaintiff did not include a confidentiality agreement in the sale contract for it, this would undercut Plaintiff's argument that she somehow was harmed by the sale of this particular Painting but not the sale of another work at around the same time.

Thus, the information Defendants seek is highly relevant both to liability and to Plaintiff's alleged damages, and Plaintiff should be ordered to provide the requested discovery.

---

[3] Plaintiff argues that Defendants, as "highly sophisticated art collectors," should "be able to point to some other sale by Plaintiff that was well known within the art community." Pl. Opp. at 5-6. But the fact that a sale is known within the art community certainly does not mean that all collectors know the details of all sales by other collectors. Defendants are not required to come up with evidence regarding the number of others sales that Plaintiff has made in order to be entitled to discovery of this information from Plaintiff, who has this information at her fingertips, and Plaintiff has cited no authority for the suggestion that they are. There is of course no rule that a party must first present evidence obtained on its own to be entitled to discovery from its adversary.

## III

## THE DISCOVERY IS NOT BURDENSOME, AND PLAINTIFF'S CONFIDENTIALITY CONCERNS ARE UNFOUNDED IN LIGHT OF THE PROTECTIVE ORDER

Plaintiff has not even suggested that providing this discovery would present an undue burden or expense (see Fed. R. Civ. P. 26(b)(2)(C)), nor could she. It would be a straightforward exercise for Plaintiff to gather the information she has in her possession, custody, or control relating to other sales of art since the Bequest was announced.

Plaintiff also claims that the information "constitutes proprietary business information that Plaintiff should not be required to disclose," because "art collectors and dealers, such as Plaintiff and Defendants, compete with one another," and the information "would disclose to Defendants the nature and scope of both Plaintiff's collection itself and her collection strategy." Pl. Opp. at 6-7. She further argues that disclosure of the information "could pose a potential security risk" because most of her collection is housed in her home. Id. at 7. These objections are meritless makeweights.

The Stipulated Protective Order in this case explicitly provides for "Attorney's Eyes Only" protection for highly confidential materials. See Stipulated Protective Order, dated July 15, 2011, Dkt. No. 88, at ¶ 7.3, pp. 9-10. Thus, if Plaintiff's concern is that Defendants will discover details about her collection, or that the security of her home will be at risk if the information is widely disseminated, she can designate the information Attorney's Eyes Only, and, absent her agreement or a court order, Defendants themselves and members of the general public will not be permitted to view it. Given these protections, her objections based on confidentiality and security are unfounded.[4]

---

[4] In addition, these objections should have been resolved by Defendants' offer, in their June 21 Letter (see Appendix, Ex. F, p. 55), to accept a list of Plaintiff's sales that omitted the title and artist, but Plaintiff did not accept this offer either.

8

Notably, the fact that Plaintiff even raises these issues strongly indicates that she *did* sell other works during the period in question (if she did not, she would not have any responsive documents and confidentiality would not be a concern). For the reasons set forth above, these other sales are highly relevant to both liability and damages, and information about them, protected if necessary by the "Attorney's Eyes Only" designation, should be produced without further delay.

## IV

## EXPENSES AND ATTORNEYS' FEES

Plaintiff claims that she should not be required to pay Defendants' expenses if this Motion is granted because, "[c]onsidering the highly personal and proprietary nature of the requested information, her objection was certainly substantially justified." Pl. Opp. at 8. But, while the Protective Order had not yet been entered when Defendants filed this motion, the Parties were negotiating it, and Plaintiff was at that time producing documents in the interim "on an attorney's-eyes-only basis." See June 20 Letter, Appendix, Ex. E, p. 43 (at 1). Thus, the confidentiality and security objections were not substantially justified at the time the Motion was made, and are even less so now that the Protective Order is in place.

Plaintiff's assertion that Defendants should be required to pay her fees in opposing the Motion if it is denied is even less well-founded. Pl. Opp. at 7. Rule 37 provides that expenses should not be awarded if the motion was "substantially justified." Fed. R. Civ. P. 37(a)(5)(B). Here, the Motion was more than substantially justified, because Plaintiff has put her other sales of art squarely at issue by arguing that she was "embarrassed" when people found out she had sold the Painting. Defendants made a reasonable effort to resolve the dispute by offering a

9

compromise, which Plaintiff rejected. See June 21 letter, Appendix, Ex. F, p. 55.[5] Thus, the Motion was, at a minimum, substantially justified within the meaning of Rule 37(a)(5)(B), and if it is denied, Defendants should not be required to pay Plaintiff's expenses.

---

[5] Plaintiff states that she "offered to compromise by demonstrating that she continued to refine and enhance rather than diminish her collection in 2007 and thereafter," Pl. Opp. at 3-4, 7. This only establishes Defendants' point. The use of the word "refine" makes it clear that Plaintiff did sell works during this period, which is precisely the subject about which Defendants are entitled to discovery. Plaintiff's compromise offer was in any case wholly inadequate because it would not have informed Defendants of the prices, public or private nature, and confidentiality status of any sales.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that the Court grant their Motion to Compel, overrule the objections asserted by Plaintiff and compel her to produce the responsive information and documents, order payment of Defendants' expenses, including attorneys' fees, incurred in making this motion, and grant such other and further relief to which Defendants may be justly and equitably entitled.

Dated: August 23, 2011

Respectfully submitted

JACKSON WALKER L.L.P.

/s/ Kurt Schwarz
Gordon M. Shapiro
Texas Bar No. 18110600
Kurt Schwarz
Texas Bar No. 17871550
Stephanie C. Sparks
Texas Bar No. 24042900
901 Main Street, Suite 6000
Dallas, Texas  75202
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Jonathan I. Blackman (pro hac vice)
Howard S. Zelbo (pro hac vice)
Melissa K. Marler (pro hac vice)
One Liberty Plaza
New York, New York  10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

ATTORNEYS FOR DEFENDANTS
STUDIO CAPITAL, INC. AND DAVID MARTINEZ

## CERTIFICATE OF SERVICE

      The undersigned certifies that copies of the foregoing Reply Brief were served on the attorneys of record for all parties via the Court's ECF system.

                                        /s/ Kurt Schwarz
                                        Kurt Schwarz