IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARGUERITE HOFFMAN, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. 3:10-CV-0953-D |
| § | |
| L&M ARTS, DAVID MARTINEZ § | |
| and STUDIO CAPITAL, INC., § | |
| § | |
| § | |
| § | |
| Defendants. § | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THIRD MOTION TO COMPEL OF DEFENDANTS STUDIO CAPITAL, INC. AND DAVID MARTINEZ**

Plaintiff Marguerite Hoffman submits this memorandum in opposition to the Third Motion to Compel of Defendants Studio Capital, Inc. and David Martinez, dated August 17, 2011 (the "Motion").

**PRELIMINARY STATEMENT**

This is an action for breach of the confidentiality provision in a contract for the sale of a painting by Mark Rothko (the "Painting") that Defendants agreed to buy from Plaintiff on April 24, 2007. In the one-page purchase contract (the "Letter Agreement"), Defendants committed to Plaintiff, a major collector of contemporary art and current Trustee and former Chair of the Dallas Museum of Art, "to make maximum effort to keep all aspects of this transaction confidential indefinitely." Defendants breached the Letter Agreement when the Painting was resold through a highly publicized auction in 2010.

The present motion seeks to compel Plaintiff to produce confidential and privileged communications with her agents Greenberg Van Doren Gallery (the "Gallery") and John Van

Doren, one of the Gallery's proprietors. The Letter Agreement that Defendants breached is on the letterhead of the Gallery. The first words of the Letter Agreement read: "This Letter will serve as an agreement between Greenberg Van Doren Gallery on behalf of the seller and L&M Arts on behalf of the buyer . . . ." Van Doren signed the Letter Agreement.

Defendants acknowledge that the Gallery and Van Doren have been Plaintiff's agents at all pertinent times. The Gallery "acted as Plaintiff's agent in connection with [the Letter Agreement]." (Mot. at 3.) Indeed, it was the Gallery and Van Doren that Defendant L&M's principal Robert Mnuchin first contacted – before contacting Plaintiff herself – to break the news that that the Painting was about to be sold publicly at auction. Van Doren relayed the news to Plaintiff: "I received a call from Mnuchin this afternoon with the unwelcome news that the owner of your Rothko is sending the work to auction at Sotheby's in May. I have been debating all evening whether to send you this message but as awful as I feel reporting it I did not want you to hear it from anybody else." (03/16/10 Email from J. Van Doren to M. Hoffman, Appendix, Ex. A, p. 2 (PL000303).)

Mnuchin then followed up with Plaintiff directly acknowledging Van Doren's role: "As you no doubt know, I have spoken to John Van Doren . . . over the past 48 hours. I feel simply terrible about the way events have evolved . . . . I completely understood that this transaction required a special degree of confidentiality." (03/18/10 Letter from R. Mnuchin to M. Hoffman, Appendix, Ex. B, pp. 4-5 (PL000299-300).)

It was therefore Defendants' intention from the get-go that the Gallery and Van Doren should deliver to Plaintiff the news of Defendants' imminent breach of the Letter Agreement. In response, Plaintiff immediately consulted Van Doren about her selection of litigation counsel. Once counsel was selected on March 17, 2010, Van Doren continued to consult with Plaintiff

6961408.6

and her counsel concerning Defendants' breach of the Agreement and the developing legal strategy to address the breach.  Since they had acted and were continuing to act as Plaintiff's agents, Van Doren and the Gallery engaged her counsel to represent them for that purpose.

None of the confidential communications the present motion seeks to have produced occurred at the time of the Letter Agreement in 2007, nor did they occur in 2008 or 2009.  All of the communications occurred *after* the present dispute arose – that is, after L&M contacted Van Doren and the Gallery on March 15.  All the communications were for the purpose of furthering Plaintiff's retention of litigation counsel and, once counsel had been retained, of assisting Plaintiff's counsel in the preparation of the present case.  All the communications are covered by the attorney-client privilege (both Plaintiff's and that of the Gallery and Van Doren) and the work-product doctrine.

## **PROCEDURAL BACKGROUND**

On April 6, 2011, Defendants Studio Capital and Martinez served their initial document requests on Plaintiff.  On May 31, 2011, Defendants served a non-party subpoena on the Gallery.  By agreement of the parties, Plaintiff responded to the document requests on May 20, 2011, and the Gallery responded to the subpoena on June 29, 2011.  Plaintiff has made four document productions and served her privilege log on August 31, 2011.  The Gallery made two document productions, and served a privilege log on Defendants on August 8, 2011.  Both privilege logs consistently assert privilege over communications between Plaintiff and Van Doren concerning the retention of counsel in this matter, as well as communications for the purpose of developing legal strategy and or securing legal advice from counsel.  (*See* Pl.'s Privilege Log, Appendix, Ex. C, pp. 7-13; Greenberg Van Doren Gallery Privilege Log, Appendix, Ex. D, pp. 15-17.)

Defendants filed this Motion on August 17, 2011 before Plaintiff had served her privilege log on Defendants.  Although the Motion could not and does not directly address the specific

6961408.6

documents raised in Plaintiff's privilege log, Plaintiff believes it is appropriate and efficient to address the issues concerning all of her communications with Van Doren in this present Opposition.

Simultaneously with this Opposition, Plaintiff is submitting for *in camera* review the confidential communications of Van Doren that are itemized on the attached privilege log.

## ARGUMENT

### I. THE COMMUNICATIONS BETWEEN PLAINTIFF AND VAN DOREN AT ISSUE ARE PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE.

Pursuant to Texas Rule of Evidence 503, confidential communications made for the purpose of facilitating the rendition of professional legal services between or among the client, her lawyer, and her representatives are privileged. Tex. R. Evid. 503; *see also Seibu Corp. v. KPMG LLP*, No. 3-00-CV-1639-X, 2002 WL 87461, at *1 (N.D. Tex. Jan. 18, 2002). "A 'representative' is any person: (1) who has authority to obtain professional legal services on behalf of the client; (2) who has authority to act on legal advice rendered to the client; or (3) who makes or receives a confidential communication while acting within the scope of the client's employment for the purpose of effectuating legal representation of the client." *Seibu Corp*, 2002 WL 87461, at *2; Tex. R. Evid. 503.

"Texas law does not require that a lawyer be the author or recipient of a communication in order for it to be privileged." *Seibu Corp.*, 2002 WL 87461, at *2. Van Doren was, and continues to be, Plaintiff's agent in connection with the Letter Agreement. Because the scope of Van Doren's agency permitted him to engage in confidential communications for the purpose of effectuating legal representation of Plaintiff, communications made for that purpose are protected from discovery. In particular, the scope of Van Doren's agency in connection with the Letter Agreement includes acting as Plaintiff's agent in connection with litigating or otherwise

- 4 -

6961408.6

resolving the dispute that arose from Defendants' breach of the agreement. *See United States v. Gissel*, 353 F. Supp. 768, 779 (S.D. Tex. 1973) ("The scope of an agency relationship is determined by the agreement between the parties and the particular circumstances under consideration."); *Ross v. Texas One P'ship*, 796 S.W.2d 206, 210 (Tex. App.–Dallas 1990, writ denied) (Relevant evidence probative of the existence of an agency relationship includes "the agreement between, and the words and conduct of, the parties."). The communications at issue in the Motion establish that Van Doren's role as agent included assisting Plaintiff with the selection and retention of legal counsel and the selection of the appropriate legal strategy. (*See* Pl.'s Privilege Log, Appendix, Ex. C, pp. 7-13.)

Furthermore, Van Doren's ongoing role as Plaintiff's agent concerning all matters related to the Letter Agreement was certainly known to L&M at the time of the 2010 auction at which Defendants sold the Painting. Robert Mnuchin, L&M's principal, sought to alert Plaintiff that Martinez and/or Studio Capital had consigned the Painting for auction at Sotheby's, and he relayed this communication to Plaintiff through her agent Van Doren. (03/16/10 Email from J. Van Doren to M. Hoffman, Appendix, Ex. A, p. 2 (PL000303).) Three days later Mnuchin finally sought to contact Plaintiff directly. (03/18/10 Email from J. Van Doren to M. Hoffman, Appendix, Ex. E, p. 15 (PL000229); 03/18/10 Letter from R. Mnuchin to M. Hoffman, Appendix, Ex. B, pp. 4-5 (PL000299-300).) The privileged communications and the communications between Van Doren and Mnuchin establish that Van Doren acted as Plaintiff's agent in connection with the dispute between the Parties.

The communications sought by Defendants regarding the selection and retention of counsel and regarding the formulation of a legal strategy in response to Defendants' breach of the Letter Agreement are privileged communications between Plaintiff and her representative

made for the purpose of facilitating the rendition of professional legal services. Tex. R. Evid. 503(b)(1)(A) ("A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client between the client or a representative of the client[.]"); *Benedict v. Amaducci*, No. 92 CIV. 5239, 1995 WL 23555, at *1 (S.D.N.Y. Jan. 20, 2005) (finding that communications between plaintiff and her representative, "if made for the purpose of assisting [plaintiff] . . . in retaining suitable attorneys for plaintiff or in consulting with such attorneys with respect to this litigation" were protected by attorney-client privilege). The communications between Van Doren and Plaintiff were made for this purpose – to assist Plaintiff in retaining attorneys and to assist her in consultations with counsel.

Defendants' argument that Plaintiff waived privilege by discussing legal advice from her counsel with Van Doren does not hold up to scrutiny. Plaintiff communicated with Van Doren to assist her in choosing and retaining an attorney and to help her devise her litigation strategy. Therefore, the fact that Plaintiff discussed the legal advice she received from counsel with Van Doren does not waive the privilege. *See Benedict*, 1995 WL 23555, at *1 (disclosure to plaintiff's representative of any communication between plaintiff and her attorneys does not waive the attorney-client privilege, if representative was acting as plaintiff's representative with respect to the litigation at the time of the disclosure).

## II. THE EMAILS BETWEEN PLAINTIFF AND VAN DOREN ARE PROTECTED FROM DISCLOSURE BY THE WORK-PRODUCT PRIVILEGE.

Plaintiff's emails with Van Doren are also protected by the work product doctrine. "A party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3); *see also*

*Benedict*, 1995 WL 23555, at *2 (work-product protection was not waived by showing protected materials to plaintiffs' representative even if he was not acting as their representative at the time because such disclosure was "not inconsistent with maintaining secrecy against opponents.") The communications involving Van Doren as to which Plaintiff claims a privilege were prepared in anticipation of litigation. They all occurred after Plaintiff learned that Defendants had breached the Letter Agreement and they all concerned some aspect of the litigation process – the selection of counsel, discussion of various legal strategies or details of the anticipated litigation process, or attempts to resolve the litigation prior to the filing of the complaint.

Significantly, many of the communications at issue were made after Van Doren retained Willkie Farr & Gallagher LLP to represent him concerning Defendants' breach of the Letter Agreement and to assist with the development of Plaintiff's legal strategy. In such a situation, the communications between Plaintiff, her agent, and their joint counsel are privileged and protected from discovery. *See* Fed. R. Civ. P. 26(b)(3).

Finally, the Federal Rules specifically contemplate that documents protected by the work product privilege can be prepared by a party or her agent. As established above, Van Doren was Plaintiff's agent for all matters concerning the Letter Agreement and its breach.

## **ATTORNEY'S FEES**

If the Court denies the Motion, it should award Plaintiff her attorney's fees in opposing the Motion. Under Rule 37 of the Federal Rule of Civil Procedure, when a motion to compel is denied the court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

6961408.6

Here, the communications Defendants seek are privileged.  Therefore, Defendants' motion was not "substantially justified," no other circumstances make an award of expenses unjust, and the Court should order Defendants or their counsel to pay Plaintiff's reasonable expenses incurred in making this motion, including attorney's fees.  *See De Angelis v. City of El Paso*, 265 F. App'x 390, 398, (5th Cir. Feb. 18, 2008) (affirming award of attorney's fees where motion to compel was not substantially justified).

In the unlikely event that the Court grants Defendants the relief they seek, it should deny Defendants' request for payment of expenses incurred in making this Motion.  Considering her privilege claim, Plaintiff's refusal to produce these documents was certainly substantially justified.  Fed. R. Civ. P. 37(a)(5)(A) ("[T]he court must not order [payment of expenses] if the opposing party's nondisclosure, response, or objection was substantially justified."); *see also Sanimax AGS, Inc. v. Gulf Hydrocarbon, Inc.*, No. 1:09-cv-37-SEB-TAB, 2010 WL 2560032, at *6 (S.D. Ind. June 23, 2010) (denying request for attorney's fees where objection to information sought in motion to compel was substantially justified).

## **DEMAND FOR RELIEF**

Plaintiff respectfully requests that the Motion be denied in its entirety.

6961408.6

| | |
|---|---|
| Dated: September 7, 2011 | Respectfully submitted, |
| | WILLKIE FARR & GALLAGHER LLP |
| | By: _/s/Roger Netzer_____ |
| | Roger Netzer |
| | Mary Eaton |
| | 787 Seventh Avenue |
| | New York, NY 10019-6099 |
| | rnetzer@willkie.com |
| | Tel: (212) 728-8000 |
| | Fax: (212) 728-8111 |
| | |
| | SHACKELFORD, MELTON & MCKINLEY LLP |
| | Bart Wulff |
| | State Bar No. 22086100 |
| | 3333 Lee Parkway, Tenth Floor |
| | Dallas, TX 75219 |
| | BWULFF@shacklaw.net |
| | Tel: (214) 780-1400 |
| | Fax: (214) 780-1401 |
| | |
| | *Attorneys for Plaintiff* |

6961408.6

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true copy of the foregoing is being served electronically via ECF on all counsel of record on the 7th day of September 2011.

                                                      /s/Ian Christy
                                                      Ian Christy