In The United States District Court
For The Northern District Of Texas
Dallas Division

| | | |
|---|---|---|
| Marguerite Hoffman, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-cv-0953-D |
| | § | |
| L&M Arts, David Martinez and | § | |
| Studio Capital, Inc., | § | |
| | § | |
| Defendants. | § | |

## FOURTH MOTION TO COMPEL AND BRIEF IN SUPPORT OF DEFENDANTS STUDIO CAPITAL, INC. AND DAVID MARTINEZ

Gordon M. Shapiro
Kurt Schwarz
Stephanie C. Sparks
JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

*Counsel to Studio Capital, Inc. and David Martinez*

Jonathan I. Blackman (pro hac vice)
Howard S. Zelbo (pro hac vice)
Melissa K. Marler (pro hac vice)
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION AND SUMMARY OF ARGUMENT | 1 |
| PROCEDURAL BACKGROUND AND SUMMARY OF DISCOVERY SOUGHT | 2 |
| ARGUMENT | 5 |
| I. PLAINTIFF SHOULD BE COMPELLED TO PRODUCE CORRESPONDENCE WITH ROLAND AUGUSTINE | 5 |
| II. PLAINTIFF SHOULD BE COMPELLED TO PRODUCE UNREDACTED CORRESPONDENCE WITH INDIVIDUALS FROM THE DALLAS MUSEUM OF ART | 6 |
| III. DEFENDANTS ARE ENTITLED TO PAYMENT OF EXPENSES INCURRED IN MAKING THIS MOTION | 13 |
| PRAYER | 15 |

# TABLE OF AUTHORITIES

**Page**

**Rules and Statutes**

Fed. R. Civ. P. 26(b)(3).................................................................................................. 6

Fed. R. Civ. P. 37(a)(5).................................................................................................. 13

**Cases**

Benedict v. Amaducci, No. 92 CIV. 5239 (KMW), 1995 WL 23555 (S.D.N.Y. Jan. 20, 1995)................................................................................................................ 5, 6

Brown v. Adams (In re Fort Worth Osteopathic Hospital), No.07-04015-DML, 2008 WL 2095601 (N.D. Tex. May 15, 2008) ...................................................................... 12

Cellco P'ship v. Nextel Commc'n, Inc., No. 03-725-KAJ, 2004 WL 1542259 (S.D.N.Y. July 9, 2004) ................................................................................................ 12

Federal Trade Commission v. Think All Publishing, L.L.C., No. 4:07-cv-011, 2008 WL 687456 (E.D. Tex. March 11, 2008)............................................................... 7, 8, 9, 10

Ferko v. Nat'l Assoc. For Stock Car Auto Racing, 219 F.R.D. 396 (E.D. Tex. 2003) ...7, 9, 10, 11

GAF Corp. v. Eastman Kodak Co., 85 F.R.D. 46 (S.D.N.Y. 1979) ............................... 12

Mims v. Dallas County, 230 F.R.D. 479 (N.D. Tex. 2005)............................................ 7, 8

Mondis Tech., Ltd. V. LG Electronics, Inc, et al., 2:08-CV-478-TJW, 2008 WL 1714304 (E.D. Tex. May 4, 2011) .................................................................................. 13

In re Santa Fe Int'l Corp., 272 F.3d 705 (5th Cir. 2001) ................................................ 7, 8, 9, 10

Tex. Molecular Ltd. P'ship v. American Int'l Specialty Lines Ins. Co., No. C-08-07, 2008 WL 2965993 (S.D. Tex. July 31, 2008)................................................................. 7

T-M Vacuum Prods., Inc. v. Taisc, Inc., No. Civ. A. H-07-4108, 2008 WL 5082413 (S.D. Tex. Nov. 25, 2008)............................................................................................... 14

U.S. v. El Paso Co., 682 F.2d 530 (5th Cir. 1982)......................................................... 6

COME NOW, Defendants Studio Capital, Inc. ("Studio Capital") and David Martinez ("Martinez," and, collectively with Studio Capital, "Defendants"), and, pursuant to Federal Rule of Civil Procedure 37(a), file this Motion to Compel Discovery Reponses, and in support thereof respectfully show the Court as follows:

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants have been forced to file this fourth Motion to Compel after Plaintiff Marguerite Hoffman raised new privilege assertions in a redaction log and amended privilege log served after Defendants filed their third motion to compel. Plaintiff's new privilege assertions are even more untenable than the privilege assertions that are the subject of that earlier motion.

First, Plaintiff has withheld numerous communications with Roland Augustine, a non-party in this litigation, on the basis of the same alleged privilege covering "principal agent discussion[s] regarding legal strategy" that she relied on to withhold numerous communications with Greenberg Van Doren Gallery (the "Gallery"), her agent in the 2007 Sale of the Painting. Def.'s Third Motion to Compel. Plaintiff claims that these communications are privileged because Mr. Augustine assisted her "in obtaining legal counsel to represent her concerning this matter" and the communications are "concerning the advice she received from her counsel." Email from Eaton to Rietema, dated September 30, 2011, Appendix, Ex. A, p. 1. But Plaintiff has not even suggested that Mr. Augustine ever acted as her agent; thus, it is entirely unclear how this alleged privilege, even if it existed, would apply to these communications. Indeed, it appears that Plaintiff is in effect claiming that any discussions with any of her friends regarding legal strategy or picking a lawyer should be protected by the attorney-client privilege simply because she does not wish to disclose them to Defendants.

Second, Plaintiff has now revealed that she redacted communications with trustees and a former director of the Dallas Museum of Art (the "Museum") on the basis of alleged common interest and work product privileges, also claiming there is no waiver of the work product doctrine if work product is disclosed to third parties with whom she allegedly shared a common interest. Plaintiff seems to suggest that this purported privilege would extend to anyone "not adverse" to her interests. But the material over which she claims work product protection does not qualify as work product in the first place, and the "common interest" privilege covers only communications with parties with shared litigation interests, not communications with anyone in the world who is not adverse to Plaintiff.

## PROCEDURAL BACKGROUND AND SUMMARY OF DISCOVERY SOUGHT

Throughout the discovery process, Plaintiff has delayed discovery and refused to provide a privilege log, and when she finally provided a privilege log in the face of a motion to compel production of one, she made untenable privilege assertions. In fact, even before Plaintiff ever provided a privilege log – despite several requests by Defendants that she do so – it became clear that Plaintiff was withholding communications with the Gallery based on the *Gallery*'s privilege log, provided in response to a third-party subpoena. However, the Gallery admitted that the purported privilege belonged to Plaintiff, and Defendants therefore filed a motion to compel Plaintiff to produce such documents on August 17, 2011. Def.'s Third Motion to Compel, Dkt. No. 97.

On September 1, the due date for Defendants' Reply in support of their motion to compel Plaintiff's log (among other overdue discovery, some of which still has not been provided), Plaintiff finally provided Defendants with her long overdue privilege log. Pl.'s Privilege Log, Appendix, Ex. B, p. 7. On September 14, Defendants asked that Plaintiff clarify

2

several questionable entries on her log, including emails to or from Roland Augustine, a non-party in the litigation who was identified as a person with knowledge of Plaintiff's sale of the Painting in her interrogatory responses. Email from Rietema to Eaton, dated September 14, 2011, Appendix, Ex. C, p. 15 (referring to entries 2, 3, 8, 9, 11, 12, 13, 21, 32, 33, 34, 49, 54, 56, and 58); Pl.'s Supp. Resps. and Objs. to Defendant Studio Capital's First Set Of Interrogatories, Nos. 9, 14, Appendix, Ex. D, p. 18. As is apparently Plaintiff's usual practice, this inquiry went unanswered for over two weeks, when Defendants finally reminded Plaintiff of their outstanding request. Email from Rietema to Eaton, dated September 28, 2011, Appendix, Ex. E, p. 44. Plaintiff finally responded on September 30. Email from Eaton to Rietema, dated September 30, 2011, Appendix, Ex. A, p. 1.

Plaintiff claimed that Mr. Augustine assisted Plaintiff "in obtaining legal counsel to represent her concerning this matter. Mr. Augustine provided this assistance confidentially, communicated with Plaintiff's counsel confidentially concerning this matter, and communicated with Plaintiff confidentially concerning the advice she received from her counsel." Id. Plaintiff also stated that "Mr. Augustine is a client of Willkie Farr who shares a common interest with Ms. Hoffman with respect to this matter such that the disclosure of any communications to him would not constitute a waiver of any privileges or protections that would otherwise apply." Id. However, Plaintiff did not indicate why Mr. Augustine's assistance in obtaining counsel was necessary in any way, or that he otherwise acted as an agent on her behalf. Nor did she assert the common interest doctrine as a basis for withholding these communications on her privilege log. Plaintiff's redaction log nevertheless indicated redactions of communications between Mr. Augustine and Plaintiff's counsel made on the purported basis of attorney-client privilege and the work-product doctrine.

On October 5, Plaintiff sent Defendants a Redaction Log and Amended Privilege Log. Email from Scott to Counsel, dated October 5, 2011, Appendix, Ex. F, p. 48; Pl.'s Redaction Log, Appendix, Ex. G, p. 50; Pl.'s Amended Privilege Log, Appendix, Ex. H, p. 53. The redaction log indicated additional redactions in emails between Plaintiff and Deedie Rose, Cindy Rachofsky, Bonnie Pitman, and John Eagle (together, the "Museum Third Parties"), asserting the privilege basis to be "WP/CI." See Pl.'s Redaction Log, Appendix, Ex. G, p. 50 (PL000452, 453, 455-456, 608-609, 612-613).[1] Three of the redaction log entries are simply communications between Plaintiff and the Museum Third Parties on which no lawyers are copied. Pl.'s Redaction Log, Appendix, Ex. G, p. 50 (PL000452, PL000453, and PL000455-PL000456). Two of the redaction log entries are communications that originally took place between Plaintiff, her counsel, and the Gallery, which Plaintiff then forwarded to and apparently discussed with certain of the Museum Third Parties. Pl.'s Redaction Log, Appendix, Ex. G, p. 50 (PL000608-PL000609 and PL000612-PL000613). In each instance Plaintiff has redacted significant portions of the communications between herself and the Museum Third Parties, and also portions of her communications with counsel and the Gallery despite the fact that she disclosed those communications to the Museum Third Parties. See Plaintiff's Redaction Log, Appendix, Ex. G, p. 50 (PL000452, PL000453, PL000455-PL000456, PL000608-PL000609, and PL000612-PL000613).

Defendants wrote Plaintiff's counsel immediately asking to meet and confer regarding these latest privilege assertions at their earliest convenience. Email from Rietema to Plaintiff's Counsel, dated October 5, 2011, Appendix, Ex. I, p. 63. The parties held a meet and confer on October 11. Plaintiff stated that all of the Museum Third Parties are current or former

---

[1] These redacted documents were produced on September 29, 2011. Defendants will readily file these documents under seal if the Court wishes to review them.

4

trustees of the Museum, with the exception of Bonnie Pitman who is a former director of the Museum. Plaintiff claims that a common interest privilege exists between Plaintiff and Museum Third Parties and that there is no waiver of the work product doctrine if communications are disclosed to "non-adverse" third parties with whom there is an alleged common interest. Plaintiff refused to indicate whether she has entered into a common interest agreement with the Museum Third Parties.[2] Defendants requested that Plaintiff provide authority for her position, and she provided two cases from another circuit "by way of example only" that patently do not apply to the factual scenario she presented. See Email from Eaton to Rietema, dated October 13, 2011, Appendix, Ex. K, p. 71. On October 19, Defendants informed Plaintiff that they did not believe the authority she cited supported her position and that they would therefore move to compel. Email from Rietema to Plaintiff's Counsel, dated October 19, 2011, Appendix, Ex. L, p. 78.

## ARGUMENT

### I

### PLAINTIFF SHOULD BE COMPELLED TO PRODUCE CORRESPONDENCE WITH ROLAND AUGUSTINE

Plaintiff cites the same authority to claim attorney-client privilege and work product protection over communications between her, her counsel, and Roland Augustine as she previously did to claim a similar privilege over communications with the Gallery: Benedict v. Amaducci, No. 92 CIV. 5239 (KMW), 1995 WL 23555 (S.D.N.Y. Jan. 20, 1995). See Email from Eaton to Rietema, dated September 30, 2011, Appendix, Ex. A, p. 1. For the reasons set forth in Defendants' Third Motion to Compel and Reply Brief In Further Support Thereof,

---

[2] This is in stark contrast to Plaintiff's similar inquiry of Defendants, to which Defendants confirmed that a common interest agreement was entered into among Studio Capital, David Martinez, Sotheby's, Tobias Meyer and L&M Arts after the commencement of the litigation. Letter from Zelbo to Eaton, dated July 20, 2011, Appendix, Ex. J, p. 66, at ¶ 6.

5

Plaintiff's communications with a friend that were in no way necessary to help her select and retain legal counsel, prepare a litigation strategy, or otherwise be rendered legal services are not protected by the attorney-client privilege or work product doctrine.

Plaintiff's privilege assertion is even more untenable as to Augustine than it is regarding the Gallery. Even if Plaintiff were to prevail on her indefensible argument that Benedict creates a new privilege over "principal agent discussion[s] regarding legal strategy," such a privilege could not extend to an individual who has absolutely no connection to the 2007 Sale or the 2010 Auction, and with whom Plaintiff has never even suggested she had an agency relationship. The mere fact that a friend or other third party to a lawsuit may have provided assistance in finding legal counsel or had discussions with Plaintiff regarding the underlying facts of the lawsuit is not sufficient to cloak those conversations in privilege.[3]

## II

**PLAINTIFF SHOULD BE COMPELLED TO PRODUCE UNREDACTED CORRESPONDENCE WITH INDIVIDUALS FROM THE DALLAS MUSEUM OF ART**

Plaintiff claims that portions of her communications with the Museum Third Parties are protected under both the common interest and work product doctrines.

The work product doctrine only protects documents produced by or for an attorney preparing for litigation. U.S. v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982); Fed. R.

---

[3] To the extent Plaintiff claims that communications between herself and Mr. Augustine, or between herself, her counsel, and Mr. Augustine, are protected from disclosure on the ground that Mr. Augustine is also a client of Plaintiff's counsel, Willkie Farr & Gallgher LLP ("Willkie Farr"), see Email from Eaton to Rietema, dated September 30, 2011, Appendix, Ex. A, p. 1, Plaintiff cannot have Mr. Augustine retain Willkie Farr as counsel as a way of shrouding in secrecy otherwise non-privileged communications. If Mr. Augustine retained Willkie Farr solely for purposes of assisting Ms. Hoffman in bringing her claims, as Plaintiff argued Mr. Van Doren did, Pl.'s Opp. To Third Mot. to Compel, Dkt. No. 118, at 7 ("Van Doren retained Willkie Farr & Gallagher LLP to represent him concerning Defendants' breach of the Letter Agreement and to assist with the development of Plaintiff's legal strategy."), then these communications are not privileged; otherwise a party to a lawsuit could simply have her friends and fact witnesses retain the party's counsel and then claim privilege over all her own communications with those people. The possibility for thereby blocking discovery of relevant facts would be virtually limitless. Moreover, at least absent a legally cognizable common interest, the fact that two clients of the same law firm chose to discuss with each other the legal advice they may have respectively received does not somehow extend the privilege to these discussions.

Civ. P. 26(b)(3). The purpose of the work product doctrine is "to protect the mental process of an attorney from inquiry by [the] opposing party." Tex. Molecular Ltd. P'ship v. American Int'l Specialty Lines Ins. Co., No. C-08-07, 2008 WL 2965993, at *1 (S.D. Tex. July 31, 2008); see also Mims v. Dallas County, 230 F.R.D. 479, 483 (N.D. Tex. 2005). Further, "the primary motivating purpose behind the creation of the document [at issue] must be to aid in possible future litigation." Mims, 230 F.R.D. at 483 (internal quotations omitted). The fact that a document "would not have been prepared 'but for' this litigation does not, in itself, make it work product. The [Plaintiff] still must establish that the 'primary motivating purpose' behind the creation of the [document] was to aid in the lawsuit." Id. at 484 (emphasis supplied). The party asserting work product protection has the burden of showing that the documents at issue "were prepared by its representative in anticipation of litigation or for trial." Id.

The common interest, or joint defense, doctrine, on the other hand, "is neither common nor a privilege." Ferko v. Nat'l Ass'n For Stock Car Auto Racing, 219 F.R.D. 396, 401 (E.D. Tex. 2003). Rather, it "extends certain privileges, typically the attorney-client and work product privileges, to documents that are prepared by parties sharing a common litigation interest that would otherwise not enjoy such privilege." Fed. Trade Comm'n v. Think All Publ'g, L.L.C., No. 4:07-cv-011, 2008 WL 687456, at *1 (E.D. Tex. March 11, 2008) (emphasis supplied); see also Ferko, 219 F.R.D. at 401. The two types of communications protected by the common interest doctrine in the Fifth Circuit are: "(1) communications between co-defendants in actual litigation and their counsel; and (2) communications between potential co-defendants and their counsel." In re Santa Fe Int'l Corp., 272 F.3d 705, 710 (5th Cir. 2001) (emphasis and internal citations omitted); see also Ferko, 219 F.R.D. at 402; Think All Publ'g, L.L.C., 2008 WL 687456, at *1. For communications to qualify for protection under this standard, "there

must be a palpable threat of litigation at the time of the communication, rather than a mere awareness that one's questionable conduct might some day result in litigation, before communications between one possible future co-defendant and another . . . could qualify for protection." In re Santa Fe Int'l Corp., 272 F.3d at 711; Think All Publ'g, L.L.C., 2008 WL 687456, at *1. "[B]ecause the privilege is 'an obstacle to truthseeking,' it must 'be construed narrowly to effectuate necessary consultation between legal advisers and clients.'" In re Santa Fe Int'l Corp., 272 F.3d at 710.

The redactions over which Plaintiff asserts common interest and work product protection fall into two categories. The first category consists of email communications exchanged only between Plaintiff and certain of the Museum Third Parties on which no lawyer was ever copied. Pl.'s Redaction Log, Appendix, Ex. G, p. 50 (PL000452, PL000453, and PL000455-PL000456). Although Plaintiff makes a blanket assertion of the work product privilege over these communications, there is absolutely no ground for applying work product protection here. First, it is obvious that these communications were *not* prepared by or for an attorney, and that no attorney caused them to be created. Therefore, they simply are not attorney work product and cannot be protected from disclosure. Second, although litigation may have been anticipated at the time the communications occurred, Plaintiff cannot plausibly claim that the "primary motivating purpose" behind the communications was to <u>aid</u> in the lawsuit. The actual motivating purpose behind these communications appears to be Plaintiff's desire to discuss her case with friends or social acquaintances (some of whom may also be fact witnesses in the case). Plaintiff cannot bear her burden of proving that these communications "were prepared by [her] representative in anticipation of litigation or for trial." Mims, 230 F.R.D. at 484. Thus, no work product protection applies to this first category of communications.

8

Plaintiff further contends these communications are protected under the common interest doctrine to the extent they concern matters of purported common interest, which, according to Plaintiff, are: (1) correspondence with the Museum concerning settlement discussions to which the Museum could have been a beneficiary, and (2) discussions concerning allegations about the Bequest and whether its terms were violated. It seems that Plaintiff wishes to suggest that the common interest privilege extends to any third party that is "not adverse" to Plaintiff's interest, even if there is no actual or potential common litigation by or against such parties. Plaintiff has not provided any authority for her position that the common interest doctrine applies here – because there is *none*.

As a preliminary matter, because the common interest doctrine is not itself a privilege, but rather is the extension of a privilege such as the work product doctrine, there must be an underlying privilege that gives rise to the common interest doctrine. Ferko, 219 F.R.D. at 402 ("Plaintiffs have not, however, proved an underlying privilege that would give rise to the common interest doctrine."); see also Think All Publ'g, L.L.C., 2008 WL 687456, at *1. Because these communications are not work product, they therefore cannot be protected by the common interest doctrine. Moreover, for the common interest doctrine to apply, at the time of the communication there has to be "a palpable threat of litigation," meaning an actual or potential – and not purely speculative and theoretical – claim by or against the two parties claiming a common interest. See In re Santa Fe Int'l Corp., 272 F.3d at 710; Think All Publi'g, L.L.C., 2008 WL 687456, at *1. Although there may have been a palpable threat that Plaintiff might pursue litigation against Defendants, there was *never* a threat of any litigation by or against the Museum, much less at the time the communications were made. Further, the common interest doctrine does not extend to third party fact witnesses with whom Plaintiff

9

discussed the lawsuit and her legal advice from counsel but who are not actual or potential parties to the lawsuit. Rather, the Fifth Circuit has recognized two categories of communications which limit protection under the common interest doctrine to communications between actual or potential co-defendants and their counsel. See In re Santa Fe Int'l Corp., 272 F.3d at 710; Think All Publ'g, L.L.C., 2008 WL 687456, at *1. At absolutely no time were the Museum or the Museum Third Parties actual or potential co-defendants. Nor has Plaintiff ever suggested that in the context of Plaintiff's filing this lawsuit she and the Museum consulted Willkie Farr *together* regarding possible *joint* representation. Therefore, the communications at issue do not fall into either of the two types of communication that are protected by the common interest doctrine in the Fifth Circuit, so there is no legally recognized common interest that merits protection. See In re Santa Fe Int'l Corp., 272 F.3d at 710; Think All Publ'g, L.L.C., 2008 WL 687456, at *1.

Plaintiff maintains that these communications are protected because Plaintiff and the Museum had a common interest in settlement discussions to which the Museum could potentially have been a beneficiary. This is plainly insufficient. The common interest must be a common litigation interest, not any common interest whatsoever. See Ferko, 219 F.R.D. at 402 n. 4 (common interest doctrine does not apply to communications between a plaintiff and a nominal defendant because they "do not share a common legal interest," despite the fact that "both . . . would benefit if [the plaintiff] won this lawsuit" because then both would recover money).

The second category of documents over which Plaintiff asserts common interest and work product protection consists of communications that originally took place between Plaintiff, her counsel, and Mr. Van Doren of the Gallery, which Plaintiff then forwarded to and discussed with one or more of the Museum Third Parties. Pl.'s Redaction Log, Appendix, Ex. G,

10

p. 50 (PL000608-PL000609 and PL000612-PL000613). Plaintiff redacted significant portions of these communications between herself and the Museum Third Parties as well as portions of her communications with counsel and the Gallery. Pl.'s Redaction Log, Appendix, Ex. G, p. 50 (PL000452, PL000453, PL000455-PL000456, PL000608-PL000609, and PL000612-PL000613).

For the reasons explained above, neither the work product nor common interest doctrines apply to protect the portions of these communications that are between Plaintiff and the Museum Third Parties. Whether the portion of these communications between Plaintiff, her counsel, and Mr. Van Doren are protected by the work product doctrine is the subject of Defendants' currently pending third motion to compel. If the Court finds that communications between Plaintiff, her counsel and Mr. Van Doren are not protected by the work product doctrine, then this portion of these communications must be disclosed regardless of the present motion. However, even if the Court were to find that the original communications are somehow protected, then Plaintiff waived any applicable protection by forwarding them to the Museum Third Parties. Although work product protection is not automatically waived by disclosure to a third party, this cannot mean that parties are free to share work product with anyone in the world other than their adversary in litigation and not waive protection. See Ferko, 219 F.R.D. at 402 ("Because the common interest doctrine does not apply here, Plaintiffs have waived work-product protection by communicating with" counsel for the nominal defendant, whom the defendant previously sought to have realigned as a plaintiff and who would also benefit financially if the plaintiff wins the lawsuit). Indeed, to the extent these communications concerned disagreement between Plaintiff and the Museum over whether the Bequest was violated, as she suggests, see supra at p. 9, Plaintiff and the Museum actually would be *adverse* on this issue, and so work product would again be waived.

The cases Plaintiff cites from another circuit in support of her position that she did not waive work product protection are inapposite. In <u>GAF Corp. v. Eastman Kodak Co.</u>, 85 F.R.D. 46 (S.D.N.Y. 1979), the court held that the plaintiff's future disclosure of work product to the government pursuant to two Civil Investigative Demands served by the government would not waive work product protection. The government was conducting its own investigation against the defendant, and sought a memorandum from the plaintiff's counsel summarizing and analyzing documents produced by the defendant. The plaintiff initially refused to make this disclosure. The government brought a separate action against the plaintiff compelling disclosure, and the Second Circuit determined that the plaintiff must comply with the Civil Investigative Demands. Because the party to whom the disclosure was made (the government) was adverse to the party moving to compel (the defendant) in light of the government's investigation of the defendant, the court found that disclosure to the government would not substantially increase the probability of the defendant obtaining knowledge of the memorandum. In <u>Cellco P'ship v. Nextel Commc'n, Inc.</u>, No. 03-725-KAJ, 2004 WL 1542259 (S.D.N.Y. July 9, 2004), the court held that communications from an employee of the defendant to a third party reflecting legal advice of the defendant's counsel given in anticipation of litigation did not waive work product protection because the third party shared a business interest and was "<u>contractually obligated</u> not to disclose business information – including legal advice – concerning" the defendant to other third parties. <u>Id.</u> at *1 (emphasis supplied).

Here, there is no evidence of a common interest agreement, or any other contractual obligation, requiring the Museum Third Parties to keep these communications confidential. <u>See</u> <u>Brown v. Adams (In re Fort Worth Osteopathic Hosp.)</u>, No. 07-04015-DML, 2008 WL 2095601, at *2 (N.D. Tex. May 15, 2008) (stating that "in order to retain the protection

of the attorney-client or work product privilege when sharing documents with another party, there must at least be an agreement among the parties . . . [that documents] are being shared in the expectation that the privilege is not being waived by the sharing and that each party will protect the documents from disclosure or loss of the privilege" and holding no work product protection applied because, *inter alia*, there was no agreement between the party holding the documents and the third party); Mondis Tech., Ltd. v. LG Elec., Inc, et al., 2:08-CV-478-TJW, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) (holding that work product protection was not waived as to documents disclosed to third parties "because they were disclosed subject to non disclosure agreements and thus did not substantially increase the likelihood that an adversary would come into possession of the materials."). Thus, even if the communications with Van Doren and Willkie Farr that Plaintiff forwarded to the Museum Third Parties were work product, which they were not, she waived work product protection when she forwarded them.

## III

### DEFENDANTS ARE ENTITLED TO PAYMENT OF EXPENSES INCURRED IN MAKING THIS MOTION

Under Rule 37, when a court grants a motion to compel or the discovery is provided after the motion was filed, the court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the motion was filed before a good faith attempt to obtain the discovery without court action, the objection was substantially justified, or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5).

Here, as outlined above, Defendants have plainly made a good faith effort to obtain the discovery without this Court's intervention. Plaintiff's basis for withholding and

redacting these communications is utterly without merit and is part of a pattern of obstructive behavior in the discovery process in this case. Thus, the Court should order Plaintiff or her counsel to pay Defendants' reasonable expenses, including attorneys' fees, incurred in making this motion. See, e.g., T-M Vacuum Prods., Inc. v. Taisc, Inc., No. Civ. A. H-07-4108, 2008 WL 5082413, at *5 (S.D. Tex. Nov. 25, 2008) (ordering party against whom motion to compel was granted to show cause why it should not be required to pay prevailing party's attorneys' fees).

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that the Court grant their Motion to Compel, compel Plaintiff to produce unredacted copies of the documents listed on her privilege log and any other responsive communications between Plaintiff and Roland Augustine and any other trustees or employees of the Dallas Museum of Art, and order payment of expenses, including attorneys' fees, incurred in making this motion, and grant such other and further relief to which Defendants may be justly and equitably entitled.

Dated: October 19, 2011

Respectfully submitted

JACKSON WALKER L.L.P.

_____
Gordon M. Shapiro
Texas Bar No. 18110600
Kurt Schwarz
Texas Bar No. 17871550
Stephanie C. Sparks
Texas Bar No. 24042900
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Jonathan I. Blackman (pro hac vice)
Howard S. Zelbo (pro hac vice)
Melissa K. Marler (pro hac vice)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

ATTORNEYS FOR DEFENDANTS
STUDIO CAPITAL, INC. AND DAVID MARTINEZ

## CERTIFICATE OF CONFERENCE

Defendants' counsel conferred with Plaintiff's counsel in an attempt to resolve all pending discovery disputes. With respect to the particular dispute set forth in this Motion, the parties met and conferred by telephone on October 11, 2011 in addition to exchanging emails. During the meet and confer, Defendants asked Plaintiff for authority supporting her redactions and privilege assertions. Plaintiff provided some purported support on October 13, 2011. As Defendants did not believe Plaintiff's authority supported her privilege assertions, Defendants informed Plaintiff of their disagreement on October 19, 2011. Thus, as the parties were unable to agree on the grounds for Plaintiff's privilege assertions, the issues contained in this motion were not resolved and are presented for determination by the Court.

_____
Kurt Schwarz

## CERTIFICATE OF SERVICE

The undersigned certifies that copies of the foregoing Motion to Compel and the Appendix thereto were served on the attorneys of record for all parties via the Court's ECF system.

_____
Kurt Schwarz

17