In The United States District Court
For The Northern District Of Texas
Dallas Division

| | |
|---|---|
| Marguerite Hoffman, § § Plaintiff, § § v. § § L&M Arts, David Martinez and § Studio Capital, Inc., § § Defendants. § | Civil Action No. 3:10-cv-0953-D |

# DEFENDANT STUDIO CAPITAL INC.'S
# MOTION FOR PROTECTIVE ORDER

Gordon M. Shapiro
Kurt Schwarz
Stephanie C. Sparks
JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

*Counsel to Studio Capital, Inc.*

Jonathan I. Blackman (*pro hac vice*)
Howard S. Zelbo (*pro hac vice*)
David H. Herrington (*pro hac vice*)
Melissa K. Marler (*pro hac vice*)
Jamie L. Rietema (*pro hac vice*)
Esti T. Tambay (*pro hac vice*)
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ......................................................................................................................... 2

ARGUMENT ............................................................................................................................... 7

    I.     Defendant Studio Capital Is Entitled To A Protective Order Limiting The Scope Of Plaintiff's 30(b)(6) Deposition ............................................................. 7

    II.    The Court Should Order That The Deposition Of Studio Capital's 30(b)(6) Witness Take Place In London ........................................................................... 10

    III.   Plaintiff Should Be Ordered To Pay Studio Capital's Costs In Bringing This Motion ........................................................................................................ 12

CONCLUSION ......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

Fed. R. Civ. P. 26(c)(1) .................................................................................................. 7

Fed. R. Civ. P. 26(c)(1)(B) ........................................................................................... 10

Fed. R. Civ. P. 26(c)(1)(D) ............................................................................................ 7

Fed. R. Civ. P. 30(b)(6) ................................................................................................. 8

**Cases**

Brazos River Auth. v. GE Ionics, Inc.,
469 F.3d 416 (5th Cir. 2006) .................................................................................... 7-8

Dondi Properties Corporation v. Commerce Savings And Loan Association,
121 F.R.D. 284 (N.D. Tex. 1988) (en banc) ............................................................... 12

Function Media L.L.C. v. Google Inc.,
No. 2:07-CV-279-CE, 2010 WL 276093 (E.D. Tex. Jan. 15, 2010) ............................ 8

Gulf Prod. Co., Inc. v. Hoover Oilfield Supply, Inc.,
Civ. A. Nos. 08-5016, 09-2779, 09-0104, 2011 WL 2669294 (E.D. La. July 7, 2011) ..... 8

In re Katrina Canal Breaches Consol. Litig.,
Civ. A. No. 05-4182, 2008 WL 4936734 (E.D. La. Aug. 11, 2008) ......................... 8-9

Prewitt v. Miss. State Univ.,
No. 06 CV 338, 2008 WL 4224919 (N.D. Miss. Sept. 11, 2008) ................................ 7

Salter v. Upjohn Co.,
593 F.2d 649 (5th Cir. 1979) ................................................................................ 10-11

Tailift USA, Inc. v. Tailift Co., Ltd.,
No. 03-CV-0196-M, 2004 WL 722244 (N.D. Tex. March 26, 2004) ........................ 11

Defendant Studio Capital, Inc. ("Studio Capital") respectfully submits this motion for an order protecting it from Plaintiff's unreasonable notice of deposition, specifically: (1) limiting the topics on which Plaintiff Marguerite Hoffman may depose Studio Capital pursuant to her Amended Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) (the "Notice"), served on March 16, 2012 and (2) ordering that the deposition of Studio Capital take place in London, England.[1]

## PRELIMINARY STATEMENT

This motion concerns Plaintiff's unreasonable and egregiously overbroad 30(b)(6) deposition notice to Studio Capital. Plaintiff's 30(b)(6) Notice, amazingly, purports to cover *83* separate topics (not counting subparts, of which there are many) spanning 16 pages, but the issues relevant to this case, as regards Studio Capital, could and should have been set forth in a single sentence: Studio Capital's 2007 purchase of the Painting[2] from Plaintiff, the 2010 auction of the Painting, all communications anyone at Studio Capital had about the Painting, and all attempts by Studio Capital to sell the Painting. Studio Capital has agreed to provide a witness to testify about all of these topics, which will, of course, cover any communications with the parties to this action and any witness identified by any party or anyone else regarding the Painting (as well as other topics that may be of marginal relevance to this case, such as the prices at which it purchased or sold other Rothko works between 2006 and 2010). Studio Capital is not, however, obligated to prepare a witness to testify about topics that have no possible relevance to this case, including Studio Capital's ongoing and potential future relationships in general with 20

---

[1] On April 20, 2012, Plaintiff served an Amended Notice that changed the proposed deposition date to May 1, 2012, but which was otherwise unchanged from its predecessor. App., Ex. N, p. 67.

[2] The Painting is, of course, the 1961 Untitled "Red Rothko" that Studio Capital purchased from Plaintiff in 2007, the resale of which at auction is the sole basis for Plaintiff's claim of breach of the confidentiality provision of the 2007 sale contract.

individuals and entities (including its own lawyers) unrelated to the Painting, as Plaintiff insists.[3] Studio Capital is also willing to provide a witness to testify about its document retention and collection efforts in this case (information that Studio Capital has already provided in a sworn declaration), but Plaintiff's *54* separate ESI-related topics are again far beyond the bounds of reason in this case, and Plaintiff's request that Studio Capital prepare a witness on all of these topics is pure harassment.

Additionally, although Switzerland is Studio Capital's principal place of business (its place of incorporation is Belize), Plaintiff noticed the 30(b)(6) deposition for New York. There is no reason for this. Studio Capital has sought to accommodate Plaintiff's asserted (but unfounded) concerns about taking a deposition in Switzerland, the logical place, by suggesting that the deposition take place in London, but Plaintiff has rejected that compromise as well, although she herself has filed motions for international judicial assistance seeking to take depositions of non-parties in both Switzerland and London, making it clear that she is more than able to conduct depositions there.

Studio Capital therefore requests that this Court issue an order narrowing the scope of Plaintiff's unreasonable deposition notice and providing that the deposition be taken in London, Studio Capital's suggested compromise location.

## BACKGROUND

On March 16, 2012, Plaintiff served an Amended Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) on Studio Capital. See Amended Notice of Deposition Pursuant to Fed. R.

---

[3] Plaintiff's Notice requests testimony about Studio Capital's present and anticipated future relationships with 27 individuals or entities, including its lawyers Cleary Gottlieb Steen & Hamilton LLP and Ralph Lerner. Notice, App., Ex. A, p. 1, Topics 12, 25. After the parties' meet and confer, Plaintiff continues to insist on testimony about Studio Capital's relationships with 20 of these individuals and entities. Email from M. Eaton to D. Herrington, dated April 12, 2012, App., Ex. B, p. 21.

2

Civ. P. 30(b)(6) (the "Notice"), App., Ex. A, p. 1.[4] The Notice listed an extremely broad range of 83 topics in 29 separately enumerated factual topics, many with numerous subparts (Schedule A), and 54 separately enumerated topics related to electronic discovery (Schedule B). The Notice provided April 5, 2012 as the date for the deposition and New York as the place for the deposition.

On March 19, the business day after it received the Notice, Studio Capital wrote to Plaintiff, stating that it would be willing to provide a 30(b)(6) witness to testify to a number of topics set forth in the Notice that touch on the Painting at issue in this case, but stating that the other topics "are grossly overbroad, well beyond any bounds of relevance (or reason), and would subject Studio Capital to 'annoyance, embarrassment, oppression, or undue burden or expense.'" Letter from H. Zelbo to R. Netzer (the "Objection Letter"), dated March 19, 2012, App., Ex. C, p. 25 (quoting Fed. R. Civ. P. 26(c)(1)). The Objection Letter further noted that "many of the other topics . . . are subject to Plaintiff's pending Sealed Motions to Compel" regarding, e.g., Studio Capital's objections to discovery regarding the irrelevant subjects of the identities of Studio Capital's beneficial owners, capital structure, etc.; that many other topics relating to "all art transactions Studio Capital may have *ever* engaged in" were overbroad and irrelevant; and that yet other topics, such as inquiries "about Studio Capital's past, present, and future relationships with its lawyers" were entirely inappropriate in any context. Id. at 1-2. Although Studio Capital's Objection Letter asked when Plaintiff would be available to meet and confer about these issues, it went unanswered for over a week. On March 27, Plaintiff's counsel stated

---

[4] Plaintiff had previously served a 30(b)(6) Notice on Studio Capital on September 30, 2011, seeking a deposition solely regarding electronic discovery. App., Ex. D, p. 29. Studio Capital responded that the individual it would designate to testify on those matters would also be a fact witness, and that producing the individual twice would serve no purpose. Letter from J. Blackman to R. Netzer, dated October 20, 2011, App., Ex. E, p. 37. Plaintiff never took issue with that position.

3

that they were available for a meet and confer later that week. Email from S. Vogel to Counsel, dated March 27, 2012, App., Ex. F, p. 39.

After exchanging emails regarding scheduling, counsel agreed to meet and confer about the 30(b)(6) Notice in person at the hearing on other matters before Magistrate Judge Stickney on April 2, 2012 (the "April 2 Hearing"). At the hearing, the parties decided to meet and confer by telephone the next day, although Plaintiff's counsel mentioned that he would be sending Studio Capital's counsel several cases supporting Plaintiff's alleged "concern" about taking depositions in Switzerland. He also stated that he would be willing to take the deposition anywhere *other* than Switzerland.[5]

Shortly before the meet and confer, Plaintiff sent Studio Capital cases regarding "deposition location," purportedly supporting counsel's statement the day before that Plaintiff did not want to take the deposition in Switzerland. Email from S. Vogel to E. Tambay, dated April 3, 2012, App., Ex. G, p. 42. The parties then met and conferred by telephone on the

---

[5] On March 28, 2012, Plaintiff served a notice of deposition for Nathalie Sutter, Studio Capital's relationship partner at Kendris, a Swiss company with its principal place of business in Switzerland and the administrator in charge of Studio Capital's affairs, to appear in New York on April 13, 2012. Previously, on February 1, 2012, Plaintiff had informed Studio Capital that she was "interested in deposing" Ms. Sutter. Email from S. Vogel to Counsel, dated Feb. 1, 2012, App., Ex. H, p. 47. Studio Capital responded that Ms. Sutter, who is a Swiss national who lives and works in Switzerland, would appear voluntarily for a deposition pursuant to Article 16 of the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters (the "Hague Convention") at a U.S. embassy or consulate in Switzerland. Defendants offered to cooperate with Plaintiff in making arrangements for the deposition. Email from E. Tambay to S. Vogel, dated Feb. 21, 2012, App., Ex. I, p. 49. Several weeks later, Plaintiff asked for additional details about Ms. Sutter's willingness to appear voluntarily pursuant to the Hague Convention. Email from M. Eaton to E. Tambay, dated March 6, 2012, App., Ex. J, p. 52. Studio Capital provided clarification and reiterated its offer to make arrangements for the deposition jointly with Plaintiff. Email from E. Tambay to M. Eaton, dated March 8, 2012, App., Ex. K, p. 56. Plaintiff never responded.

In connection with the March 28 Notice directed to Ms. Sutter, Studio Capital reminded Plaintiff that Ms. Sutter had agreed to appear for deposition in Switzerland pursuant to the Hague Convention and also suggested that it might be unnecessary to take Ms. Sutter's deposition if Studio Capital provided a 30(b)(6) witness. Email from D. Herrington to R. Netzer, dated April 11, 2012, App., Ex. L, p. 60. Plaintiff indicated that she wished to depose Ms. Sutter in the United States, and if Studio Capital disagreed, it could "take that issue up with the Court." Email from M. Eaton to D. Herrington, dated April 12, 2012, App., Ex. B, p. 21. Studio Capital responded that Plaintiff's attempt to notice Ms. Sutter's deposition in New York was a "nullity" and reiterated that she would not be appearing in New York. Email from D. Herrington to M. Eaton, dated April 12, 2012. App., Ex. M, p. 62.

4

afternoon of April 3. During that meet and confer, counsel for Studio Capital suggested that the parties should first agree on the scope of the 30(b)(6) deposition. Counsel stated that after the issues regarding the scope are resolved, Studio Capital would be able to identify the appropriate witness to testify about those topics, and the parties could then discuss the date and location of the deposition. In discussing the scope of the deposition, the parties identified several issues that required further consideration and agreed to continue the meet and confer.

On April 11, Studio Capital's counsel suggested resuming the meet and confer on April 13. See Email from D. Herrington to R. Netzer, dated April 11, 2012, App., Ex. L, p. 60. On April 12, Plaintiff's counsel sent Studio Capital a proposed list of topics on which Plaintiff would accept a 30(b)(6) witness, which included nearly *all* the topics to which Studio Capital had already objected in its Objection Letter. See Email from M. Eaton to D. Herrington, dated April 12, 2012, App., Ex. B, p. 21.[6]

The parties met and conferred again on April 13, and discussed the Notice topic by topic. Studio Capital agreed to several additional topics to the extent they relate to the Painting (Topics 10, 16, 18, and 21).[7] Studio Capital once again made clear that the 30(b)(6) witness would testify about anything related to the Painting, including any communications with anyone about the Painting and the identity of individuals with whom Studio Capital may have had such a communication, but maintained its objection to revealing the status or affiliation, as beneficial

---

[6] The only topics which Plaintiff was willing to forgo were Topics 15 (Studio Capital's financial performance), 20 (history of *all* art transactions), 12 and 25 (a)-(b) and (q)-(u) (Studio Capital's past, present, and future relationship with Sotheby's, Tobias Meyer, other art dealers, and its lawyers). Plaintiff's suggestion that forgoing a handful of topics out of the 83 topics that are listed in the Notice is a "compromise" is difficult to take seriously.

[7] Studio Capital also took several additional topics under advisement (Topics 11, 19, and 24). Topic 11 relates to Plaintiff, her 2007 sale of the Painting, and "the allegations made against Plaintiff in the present litigation concerning her alleged gift of the Painting to the Dallas Museum of Art." Topic 19 relates to "customs, practices, usages, guidelines, policies and/or internal controls concerning decisions about buying and selling art." Topic 24 relates to Studio Capital's knowledge of the Rothko market. Studio Capital's 30(b)(6) Witness will testify about each of these topics to the extent they relate to the Painting.

owner or otherwise, of any such individual with respect to Studio Capital.[8] As regards topics related to other artworks by Mark Rothko (Topics 22, 23, 26-28), Studio Capital reiterated that the witness would testify about the value of Rothko artworks acquired or sold from 2006-2010 but would not otherwise testify about other Rothko works, as those topics are subject to Plaintiff's now-pending Third Motion to Compel (Dkt. No. 203).

Regarding the topics of Schedule B, Plaintiff first insisted that Studio Capital's October 2011 letter objecting to providing a witness at that time had "waived" Studio Capital's objections to the scope of those topics. Studio Capital explained that the October letter had obviously not been addressed to the scope of the topics, but only to the timing of the deposition, and Studio Capital had never agreed to prepare a witness to speak to all 54 of Plaintiff's proposed topics. Plaintiff responded that these topics are "standard" and insisted that Studio Capital provide a "counter-proposal." Studio Capital responded that it had already provided the Declaration of Nathalie Sutter on these topics (Dkt. No. 191-2), and would be prepared to provide a witness to testify about its document collection and retention efforts for this case, but would not otherwise pick from among Plaintiff's 54 topics, and invited Plaintiff to identify which of them were of particular importance to her. Plaintiff declined to do so.

Following the discussion of scope, Studio Capital stated that it was prepared to make a witness available in London on May 1, as a reasonable compromise intended to address Plaintiff's concerns about taking a deposition in Switzerland, Studio Capital's principal place of business. Plaintiff flatly rejected this compromise and said she would not accept anything short of a deposition in the United States, failing to explain why she would not be amenable to a

---

[8] Studio Capital believes the issue of its beneficial owners is utterly irrelevant to this litigation, because the only issue to which it was arguably relevant – Plaintiff's veil-piercing claim that Mr. Martinez is Studio Capital's alter ego – has been mooted by Mr. Martinez's undertaking to stand behind any judgment against Studio Capital. Plaintiff has already deposed Mr. Martinez himself, and the Studio Capital 30(b)(6) witness will testify about any communications Studio Capital had with *any* person regarding the Painting.

6

deposition in London, even though she had previously objected specifically only to Switzerland, and not to *any* location outside the United States. Moreover, Plaintiff has already moved twice for the Issuance of Requests for International Judicial Assistance (Dkt. Nos. 181 and 193) in order to facilitate the deposition of two witnesses – one in London and one in Switzerland.

Because the parties could not reach agreement on the scope or location of the deposition, Studio Capital was forced to file this motion seeking an order limiting the scope of Plaintiff's 30(b)(6) Notice, and ordering that it be taken in London.

## ARGUMENT

It is well-settled that courts may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Here, Studio Capital has demonstrated good cause for an order protecting it from Plaintiff's overbroad 30(b)(6) notice by limiting the scope of the 30(b)(6) deposition and ordering that it take place in London.

### I. Defendant Studio Capital Is Entitled To A Protective Order Limiting The Scope Of Plaintiff's 30(b)(6) Deposition.

This Court has the power to issue protective orders "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). In particular, it is entirely appropriate for a Court to limit the scope of topics on which a party will examine a 30(b)(6) witness. See, e.g., Prewitt v. Miss. State Univ., No. 06 CV 338, 2008 WL 4224919, at *2 (N.D. Miss. Sept. 11, 2008) (limiting scope of a 30(b)(6) deposition where the "initial request was overbroad and impossible to comply with").

Rule 30(b)(6) permits a party to direct a deposition notice or subpoena to an organization. In response, the organization must designate one or more witnesses "to testify on its behalf." Id. The organization's "duty to present and prepare a Rule 30(b)(6) designee goes beyond matters

7

personally known to that designee or to matters in which that designee was personally involved." Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 433 (5th Cir. 2006). Instead, the organization is required to "prepare the designee to the extent matters are reasonably available." Id.; see also Function Media L.L.C. v. Google Inc., No. 2:07-CV-279-CE, 2010 WL 276093, at *1 (E.D. Tex. Jan. 15, 2010).

In order to allow the organization to comply with its obligations to prepare the witness, the notice must "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The description must provide enough detail so that the organization can identify and prepare a witness, and must not be so broad as to render it impossible to prepare a witness or witnesses to testify as to all of the topics. See, e.g., In re Katrina Canal Breaches Consol. Litig., Civ. A. No. 05-4182, 2008 WL 4936734, at *2 (E.D. La. Aug. 11, 2008) (even in "high stakes" litigation where the deponent was the United States, and thus had "substantial resources," list of 168 separate 30(b)(6) deposition topics was overly broad, and deponent could not reasonably comply); Gulf Prod. Co., Inc. v. Hoover Oilfield Supply, Inc., Civ. A. Nos. 08-5016, 09-2779, 09-0104, 2011 WL 2669294, at *4 (E.D. La. July 7, 2011) (noting that "the Court is not persuaded that [the party] 'took great care' to narrow their topics. A review of the various 62 requests demonstrates that many of the requests are duplicative and do nothing more than reword a previous request. This cannot be construed as narrowly tailoring the subjects and instead is quite the contrary.").

Plaintiff's Notice here contains 83 separate topics, many of which have multiple subparts. As in the Katrina suit (which was a much larger case in which the party subject to the notice – the United States government – had vast if not essentially limitless resources), the topics in Plaintiff's notice are "paradoxically both *too* particular when considered individually and overly

8

broad and numerous when considered as a whole." 2008 WL 4936734, at *2. Studio Capital, while willing to provide a 30(b)(6) witness to testify on its behalf about the Painting, Studio Capital's 2007 purchase of it from Plaintiff and 2010 sale of it through Sotheby's, and other topics relevant to this litigation, cannot possibly prepare a witness on each of Plaintiff's 83 enumerated topics.

Indeed, the topics in the Notice are far broader even than the relief Plaintiff seeks in her First Motion to Compel (Dkt. No. 110), despite Plaintiff's claim to the contrary. See Email from M. Eaton to D. Herrington, dated April 12, 2012, App., Ex. B, p. 21 (claiming that topics 12(h)-(p), (v)-(aa); 13, 14, 24, and 25(h)-(p), (v)-(aa) are subject to that motion). For example, topics 12 and 25 of the Notice ask for all information about the relationships and "ongoing, or anticipated future relationships or business dealings between" Studio Capital and a number of different individuals and entities, whereas that motion only covers the relationships between Martinez and Studio Capital and between Martinez and L&M and Studio Capital and L&M. As set forth in Defendants' opposition to that motion, other dealings between Studio Capital and L&M that are not related to the Painting are simply not relevant to this case; *a fortiori*, neither is the relationship or dealings between Studio Capital and these other numerous persons that are unrelated to the Painting.

As to Schedule B, Plaintiff's statement that these 54 ESI topics are "standard" is preposterous, particularly in a litigation of this scale between individuals and small private companies, where the parties do not have a substantial volume of electronic documents, and Plaintiff has not seriously suggested that Studio Capital has withheld anything relating to the Painting. Many of Plaintiff's 54 topics are egregiously overbroad on their face; others would require Studio Capital to engage a consultant just to understand what is being asked. Studio

Capital has already provided a sworn declaration detailing the ways in which it maintained information relevant to this case and the searches that were performed in response to Plaintiff's document requests. See Declaration of Nathalie Sutter, dated Feb. 1, 2012 (Dkt. No. 191-2). It has offered to have the 30(b)(6) witness testify about these topics. Studio Capital also stated that it would be willing to consider having the witness testify as to a small subset of the 54 topics if Plaintiff would identify them. Plaintiff refused to do so.

Accordingly, Studio Capital seeks an order limiting the scope of the 30(b)(6) Notice as follows. Studio Capital would provide a witness to testify as to the following topics on Schedule A: (1) topics included in paragraph 2 of the Objection Letter (Topics 1-10, 17, 29) to the extent they relate to the Painting but not to the extent they seek disclosure of individuals' status as beneficial owners of Studio Capital; (2) topics related to Studio Capital's acquisition or sale of other works by Mark Rothko (Topics 22-23 and 26-28) for the period of 2006 until 2010, to the extent that such topics relate to the sale and purchase prices of such works; and (3) topics 10, 11 16, 18, 19, 21, and 24, to the extent they relate to the Painting. As to Schedule B, Studio Capital requests that the Court limit the scope of Studio Capital's testimony to Studio Capital's document retention and collection efforts for this case, and the general structure of its email systems, of the type appropriate for a case like this that does not involve complex ESI issues.

## II. The Court Should Order That The Deposition Of Studio Capital's 30(b)(6) Witness Take Place In London

This Court has the power to issue a protective order "specifying terms, including time and place, for the disclosure of discovery." Fed. R. Civ. P. 26(c)(1)(B). Studio Capital is entitled to have a deposition of its 30(b)(6) representative take place at its principal place of business. Indeed, "[i]t is well settled that '(t)he deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business,' especially when, as in this

case, the corporation is the *defendant*." Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979) (emphasis added); Tailift USA, Inc. v. Tailift Co., Ltd., No. 03-CV-0196-M, 2004 WL 722244, at *1 (N.D. Tex. March 26, 2004) (presumption that deposition of corporation should be taken at its principal place of business "satisfies the Rule 26(c) requirement of good cause") (citing Chris-Craft Indust. Prods., Inc. v. Kuraray Co., Ltd., 184 F.R.D. 605, 607 (N.D. Ill. 1999) ("The purposes underlying the general rule that the depositions should proceed at the corporation's principal place of business create a presumption that the corporation has good cause for a protective order.")). Although Studio Capital is incorporated in Belize, its principal place of business is Switzerland, as it is entirely administered there and a majority of its art collection is warehoused there. Thus, the presumption is that Studio Capital's deposition should be taken in Switzerland.

Plaintiff has raised concerns about conducting a deposition in Switzerland (although she herself has filed a request for international judicial assistance seeking to take a non-party deposition in Switzerland, Dkt. No. 193, relating to Peter Haas). See Email from S. Vogel to E. Tambay, dated April 3, 2012, App., Ex. G, p. 42 (citing cases, although providing no reasons why these concerns apply here). Although Studio Capital does not believe these concerns are well-founded, it has agreed to make a 30(b)(6) witness available in London rather than Switzerland. Studio Capital believed that this would be an acceptable compromise given the initial indication by Plaintiff's counsel that they would be willing to conduct the deposition anywhere except Switzerland, and particularly in light of the fact that Plaintiff has also filed a request for international judicial assistance seeking to take a non-party deposition in London. See Dkt. 181 (relating to Lavinia Calza).

Plaintiff now insists that the deposition occur in the United States, but, given her willingness to conduct non-party depositions (of persons with extremely limited knowledge of anything relevant to this case) in both Switzerland and London, this insistence is unreasonable. Indeed, Studio Capital would be willing to work with Plaintiff to schedule the deposition around the same time as the Calza deposition in London so that only one trip to London would be necessary for both depositions. In light of these circumstances, and Plaintiff's demonstrated willingness to take other depositions in London, Plaintiff cannot overcome the general presumption in favor of taking a corporate defendant's deposition at its principal place of business (or, here, in a reasonable compromise location acceptable to the defendant).

### III.  Plaintiff Should Be Ordered To Pay Studio Capital's Costs In Bringing This Motion

Plaintiff's 30(b)(6) Notice, with its 83 separate topics (not including subparts) is plainly unreasonable and could have no purpose other than harassing Studio Capital. Studio Capital has repeatedly made clear that it would provide a 30(b)(6) witness to testify about all topics relevant to this case and the Painting at issue here. Plaintiff's refusal to cooperate and accept a witness to testify only about issues relevant to this case runs afoul of the standards of professional conduct this Court set forth in Dondi Properties Corporation v. Commerce Savings And Loan Association, 121 F.R.D. 284, 287-88 (N.D. Tex. 1988) (en banc) (adopting standards of practice, including that lawyers owe opposing counsel "a duty of courtesy and cooperation" and should not "unreasonably withhold consent" to "a just request for cooperation" or "scheduling accommodation"). As the Court held in Dondi, counsel who do not abide by these rules are subject to "the range of sanctions the Fifth Circuit suggest in the Rule 11 context," including monetary sanctions. Id. at 288 (citing Thomas v. Capital Security Servs., Inc., 836 F.2d 866,

878) (5th Cir. 1988) (en banc). Plaintiff should therefore be ordered to pay Studio Capital's costs, including attorneys' fees, incurred in bringing this motion.

## CONCLUSION

For the foregoing reasons, the Court should grant Studio Capital's motion for a protective order: (1) limiting the scope of topics to be examined by Plaintiff's counsel during the deposition of Studio Capital's 30(b)(6) witness as set forth above and (2) ordering that the deposition of Studio Capital's 30(b)(6) witness take place in London, England.

Dated: April 23, 2012

Respectfully submitted,

JACKSON WALKER L.L.P.

_____
Gordon M. Shapiro
Texas Bar No. 18110600
Kurt Schwarz
Texas Bar No. 17871550
Stephanie C. Sparks
Texas Bar No. 24042900
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Jonathan I. Blackman (*pro hac vice*)
Howard S. Zelbo (*pro hac vice*)
David H. Herrington (*pro hac vice*)
Melissa K. Marler (*pro hac vice*)
Jamie L. Rietema (*pro hac vice*)
Esti T. Tambay (*pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

ATTORNEYS FOR DEFENDANT
STUDIO CAPITAL, INC.

## CERTIFICATE OF SERVICE

The undersigned certifies that copies of the foregoing Motion were served on the attorneys of record for all parties via the Court's ECF system.

_____
Kurt Schwarz

## CERTIFICATE OF CONFERENCE

This is to certify that on April 3 and 13, 2012, counsel for Studio Capital conferred regarding the merits of the instant Motion with counsel for Plaintiff Marguerite Hoffman. Counsel could not agree as to either the scope or the location of the 30(b)(6) deposition. Therefore, the Motion is effectively opposed and is being presented to the Court for its determination.

_____
Kurt Schwarz

14