IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARGUERITE HOFFMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:10-CV-0953-D |
| VS. | § | |
| | § | |
| L&M ARTS, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this lawsuit arising from the sale at public auction of the 1961 Mark Rothko oil painting, Untitled (the "Rothko painting"), defendant L&M Arts ("L&M") moves for summary judgment on plaintiff Marguerite Hoffman's ("Hoffman's") fraudulent inducement claim, and defendants L&M, Studio Capital, Inc. ("Studio Capital"), and David Martinez ("Martinez") move for summary judgment on Hoffman's auction-premium theory of damages for breach of contract. For the reasons that follow, the court grants L&M's motion and dismisses Hoffman's fraudulent inducement claim with prejudice. The court denies defendants' motion addressed to Hoffman's auction-premium theory of damages for breach of contract.

I

Because this case is the subject of several prior opinions,[1] the court will not recount the background facts generally, but will instead address specific background facts and procedural history in the context of the rulings below.

Because at trial Hoffman will have the burden of proof on her fraudulent inducement and breach of contract claims, L&M can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, Hoffman must go beyond her pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Hoffman's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Hoffman's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory as to a claim if she fails to meet this burden. *See Little*, 37 F.3d at 1076.

II

L&M moves for summary judgment on Hoffman's fraudulent inducement claim, contending that she cannot raise a genuine issue of material fact on all of the elements of the

---

[1]*See, e.g.*, *Hoffman v. L&M Arts*, 2013 WL 432771 (N.D. Tex. Feb. 5, 2013) (Fitzwater, C.J.).

claim.

A

Under Texas law,[2] the elements of fraud are: (1) the defendant made a material representation, (2) it was false when made, (3) the defendant knew the representation was false, or made it recklessly, without knowledge of its truth and as a positive assertion, (4) the defendant made the representation with the intent that the plaintiff should act upon it, and (5) the plaintiff acted in reliance upon it and suffered injury as a result. *Beijing Metals & Minerals Import/Export Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993) (Texas law). "Fraudulent inducement . . . is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). In her response brief, Hoffman states that she is basing her fraudulent inducement claim on three alleged misrepresentations: first, L&M misrepresented that it possessed authority to sign the April 2007 letter agreement (the "Letter Agreement") on behalf of Studio Capital; second, L&M misrepresented that the buyer of the Rothko painting was an individual; and, third, L&M misrepresented that the Rothko painting would "disappear" into the undisclosed buyer's "very private" "European collection."

_____

[2]In her brief, Hoffman primarily cites Texas law. L&M argues that New York law applies to Hoffman's fraudulent inducement claim because any purported representations by L&M occurred in New York. But it also maintains that the court need not decide at this stage whether New York or Texas law applies to this claim. Accordingly, the court will assume that Texas law governs Hoffman's fraudulent inducement claim and will apply Texas law in addressing the issues presented in L&M's motion.

B

Hoffman's contention in her response brief that L&M fraudulently induced her to enter into the Letter Agreement by misrepresenting that it possessed the authority to sign the Letter Agreement on behalf of the buyer is an unpleaded claim and is therefore insufficient to avoid summary judgment.  In her third amended complaint, Hoffman alleges that

> L&M fraudulently induced Plaintiff to enter into the February Agreement and the [Letter Agreement] by misrepresenting and concealing material facts, including that L&M had made the undisclosed buyer aware of her concerns and of the terms of both contracts, that the undisclosed buyer was an individual and not an institution, and that the [Rothko painting] would "disappear" into that individual's very private European collection.

3d Am. Compl. ¶ 135.  She nowhere alleges that L&M misrepresented that it possessed authority to sign the Letter Agreement on behalf of Studio Capital.  "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."  *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citation omitted); *see also Ellis v. Crawford*, 2007 WL 1624773, at *11 (N.D. Tex. June 6, 2007) (Fitzwater, J.) (holding that plaintiffs could not rely on unpleaded hostile work environment claim raised for the first time in summary judgment response) (citing *Cutrera*, 429 F.3d at 113).  "A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'"  *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. Appx. 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009)).  "Accordingly, district courts do not abuse

their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment." *Id.*

The court therefore grants L&M's motion for summary judgment dismissing the first ground of Hoffman's fraudulent inducement claim.

## C

Hoffman's second ground for her fraudulent inducement claim is the contention that L&M misrepresented that the buyer of the Rothko painting was an individual.

## 1

L&M contends that it is entitled to summary judgment because, *inter alia*, Hoffman has failed to produce evidence that this alleged misrepresentation caused her injury. Hoffman responds that the misrepresentation caused her injury because, instead of selling the Rothko painting to an individual into whose collection it would disappear, she unknowingly sold it to Studio Capital, "a company with multiple stakeholders, managers, and other interested parties, whose interests lay in maximizing profit, rather than respecting [Hoffman's] confidentiality." P. 5/8/13 Br. 30.  Hoffman posits that "had L&M not deceived [Hoffman,] Studio Capital would not have purchased the [Rothko painting] and subsequently sold it at public auction—to [her] detriment." *Id.*

## 2

Under Texas law, there are two measures of direct damages in a fraud case: out-of-pocket damages and benefit-of-the-bargain damages.  *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998) (citing *Arthur Andersen*

- 5 -

& *Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997)). Out-of-pocket damages measure the difference between the amount the buyer paid and the value of the property the buyer received. *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex. 1984). Benefit-of-the-bargain damages measure the difference between the value of the property as represented and the actual value of the property. *Id*. "Both measures of damages are determined at the time of sale." *Arthur Andersen*, 945 S.W.2d at 817(citing *Leyendecker*, 683 S.W.2d at 373).

A reasonable jury could not find, however, that Hoffman was injured at the time of the sale by the fact that the Rothko painting was sold to an entity rather than an individual. In fact, Hoffman does not allege that the injury from the misrepresentation that the buyer was an individual occurred at the time of the sale. Her alleged injury is from the public sale of the Rothko painting. Had Studio Capital not sold the painting publicly, in breach of the Letter Agreement (assuming *arguendo* that the public sale did breach the agreement), Hoffman presumably would not have been injured by the fact that the purchaser was not an individual. The sale at public auction did not occur until 2010, three years after Hoffman sold the painting.

Accordingly, because any injury from the alleged misrepresentation that the buyer was an individual did not occur until after Hoffman sold the Rothko painting, it appears that Texas law limits her recovery to consequential damages rather than direct damages. *See, e.g., Fazio v. Cypress/GR Hous. I, L.P.*, ___ S.W.3d ___, 2013 WL 1416558, at *3 (Tex. App. Apr. 5, 2013, pet. denied) (en banc) ("Losses that arise after the time of sale may be

recoverable as consequential damages in appropriate cases." (citing *Formosa Plastics*, 960 S.W.2d at 49 n.1)).[3]  "Consequential damages must be foreseeable and directly traceable to the misrepresentation and result from it." *Id.* (citing *Arthur Andersen*, 945 S.W.2d at 816); *see also Formosa Plastics*, 960 S.W.2d at 49 n.1 ("When properly pleaded and proved, consequential damages that are foreseeable and directly traceable to the fraud and result from it might be recoverable." (citing *Arthur Andersen*, 945 S.W.2d at 817)).  "Without this limitation, an investor could shift the entire risk of an investment to a defendant who made a misrepresentation, even if the loss were unrelated to the misrepresentation." *Arthur Andersen*, 945 S.W.2d at 817; *Fazio*, 2013 WL 1416558, at *3 ("An investor may not 'shift

---

[3]In this diversity case, absent a binding decision of the Supreme Court of Texas on an issue of Texas substantive law, this court must make an "*Erie*-guess," i.e., a prediction under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), of how that court would resolve the issue if presented with the same case. *See, e.g., Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)).  In doing so, this court is not required to be prescient.  Instead, "[w]hen confronted with an unsettled issue of state law, a federal court sitting in diversity must make its best effort to predict how the state courts would decide the issue." *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 750 (5th Cir. 1995) (citing *DeWeerth v. Baldinger*, 38 F.3d 1266, 1273 (2d Cir. 1994)).  *Erie* and its progeny require no more of a federal court than that it conscientiously satisfy its duty to predict how the state court will decide a question. *Id.*

The Supreme Court of Texas has clearly held that direct damages for misrepresentation are measured at the time of sale. *Arthur Andersen*, 945 S.W.2d at 817. The parties do not cite, and the court has not found, any authority from the Supreme Court of Texas that addresses whether damages of the type Hoffman seeks are recoverable for fraudulent inducement when the injury occurs as a result of an event that takes place after the contract is entered into.  Accordingly, making an *Erie*-guess, the court relies on *Fazio*, an *en banc* decision of a Texas Court of Appeals, to conclude that the Supreme Court of Texas would hold that only consequential damages are recoverable, and only when such damages are reasonably foreseeable and directly traceable to a misrepresentation that fraudulently induced the plaintiff to enter into the contract.

- 7 -

the entire risk of an investment to a defendant who made a misrepresentation' if the loss is

unrelated to the misrepresentation and due to market fluctuations or the chances of business."

(quoting *Arthur Andersen*, 945 S.W.2d at 817)). "Jury instructions on consequential damages

must be explicitly premised on findings that the losses were foreseeable and directly

traceable to the misrepresentation." *Fazio*, 2013 WL 1416558, at *3 (citing *Turner v. PV

Int'l Corp.*, 765 S.W.2d 455, 464 (Tex. App. 1988, writ denied); *El Paso Dev. Co. v. Ravel*,

339 S.W.2d 360, 366-67 (Tex. App. 1960, writ ref'd n.r.e.)).

3

A reasonable jury could only find that any injury that Hoffman suffered from the

public sale of the Rothko painting in 2010 is directly traceable to the buyer's failure to

comply with the requirement of the Letter Agreement that it make "every reasonable effort

to keep all aspects of the 2007 transaction confidential, measured according to what an

average, prudent, and comparable person would or would not have done, under the same or

similar circumstances, to make every reasonable effort when exercising due diligence and

in the absence of neglect," *Hoffman v. L&M Arts,* 774 F.Supp.2d 826, 834 (N.D. Tex. 2011)

(Fitzwater, C.J.), not to the misrepresentation that the buyer was an individual.  And a

reasonable jury could not find from the summary judgment evidence that the ability or

inclination of an *entity* to comply with this contractual standard was materially different from

that of an *individual*.  In particular, a reasonable jury could not find that there is anything

about the confidentiality provision that makes compliance more difficult, or less likely, for

an entity, even one interested in maximizing profits.  Nor has Hoffman adduced sufficient

evidence for a reasonable jury to find that the alleged breach was attributable to Studio Capital's status as an entity.  In sum, a reasonable jury could not find that Hoffman's "injury" (i.e., the breach of the confidentiality provision and resulting public auction in 2010) was foreseeable and directly traceable to the alleged misrepresentation that the buyer was an individual.

Accordingly, because Hoffman cannot satisfy the essential injury element of this ground of her fraudulent inducement claim, and because her failure to raise a fact issue on this essential element renders all other facts immaterial, the court grants L&M's motion for summary judgment dismissing the fraudulent inducement claim on this basis.[4]

---

[4]Although Hoffman seeks other remedies in connection with her fraudulent inducement claim—specifically, mental anguish damages, restitution, and disgorgement—and responds to L&M's factual challenges to her ability to obtain these remedies, she does not argue that the availability of these remedies enables her to establish that she was injured by the misrepresentation that the buyer was an individual.  Instead, except for distinguishing *Blue Gordon, C.V. v. Quicksilver Jet Sales, Inc.*, 444 Fed. Appx. 1 (5th Cir. 2011), a case on which L&M relies, Hoffman's response to L&M's argument that she cannot prove that she was injured by the alleged misrepresentation that the buyer was a "very private individual" is this:

> And, contrary to L&M's claim that the misrepresentation did not cause Plaintiff's damages, those misrepresentations directly led to Plaintiff's injuries.  Instead of selling the [Rothko painting] to an individual into whose collection the [Rothko painting] would disappear, Plaintiff unknowingly sold it to Studio Capital—a company with multiple stakeholders, managers, and other interested parties, whose interests lay in maximizing profit, rather than respecting Plaintiff's confidentiality.  Had L&M not deceived Plaintiff, Studio Capital would not have purchased the [Rothko painting] and subsequently sold it at public auction—to the detriment of Plaintiff.

D

Hoffman's third basis for her fraudulent inducement claim is the contention that L&M misrepresented that the Rothko painting would "disappear" into the undisclosed buyer's "very private" "European collection."

1

L&M moves for summary judgment on this ground, contending, *inter alia*, that a reasonable jury could not find that Hoffman justifiably relied on the representation that the Rothko painting would "disappear" forever because Hoffman admitted that she did not actually believe that the painting would "disappear" forever, and because Hoffman always intended to eventually disclose the sale of the painting to the Dallas Museum of Art.

2

A reasonable jury could not find that Hoffman justifiably relied on the statement that the Rothko painting would "disappear" into the undisclosed buyer's "very private" "European collection."  In fact, Hoffman does not even address the element of justifiable

---

\*   \*   \*

> Had L&M not deceived Plaintiff, Plaintiff would not have sold the work to an art fund, which subsequently sacrificed Plaintiff's confidentiality to the highest bidder.

P. 5/8/13 Br. 30-31 (citations omitted).

Moreover, even had Hoffman advanced such an argument, it would fail because she has not presented any evidence (nor does she argue) that she suffered mental anguish or any other type of damages *because of the misrepresentation itself*, as opposed to the alleged breach of the Letter Agreement in connection with the public auction in 2010.

- 10 -

reliance in her opposition brief. Because her failure to raise a fact issue on this essential element of her fraudulent inducement claim renders all other facts immaterial, the court grants L&M's motion for summary judgment on this basis as well.

For the reasons stated, Hoffman's fraudulent inducement claim is dismissed with prejudice.

III

L&M, Studio Capital, and Martinez move for summary judgment on Hoffman's auction-premium theory of contractual damages.[5]

A

In *Hoffman v. L&M Arts*, 2013 WL 432771 (N.D. Tex. Feb. 5, 2013) (Fitzwater, C.J.) ("*Hoffman IV*"),[6] the court addressed defendants' *factual* challenge to Hoffman's theory of damages. Defendants argued that Hoffman's breach of contract claim failed because there was no "triable fact issue on damages." *Id.* at *10. They maintained that she could not prove that the $17.6 million sale price was discounted or that the actual value of the painting was any higher than the agreed-upon price. *Id.* The court concluded that "[t]he question whether Hoffman can raise a genuine issue of material fact on damages depends largely on whether she can prove that the Rothko painting would have sold for more than $17.6 million had it

---

[5]Because Studio Capital and Martinez have joined L&M's motion and briefing, the court will refer to L&M's contentions as if made collectively by all three defendants.

[6]*Hoffman IV* was filed under seal on January 28, 2013. The publicly-available version was filed on February 5, 2013.

been offered at public auction in April 2007." *Id.* at *10.  It rejected defendants' argument that Hoffman's evidence failed to raise a genuine issue of material fact, holding that "[a] reasonable jury could find . . . that if Hoffman had sold the Rothko painting at a public auction on April 24, 2007, she would have obtained more than $17.6 million for the painting." *Id.* at *14.  In a footnote, the court observed that "[d]efendants do not argue that Hoffman's damages theory is *legally* defective, i.e., that this measure of damages is unavailable as a matter of law in an action for breach of contract.  They maintain instead that the theory is *factually* deficient." *Id.* at *10 n.7.  Defendants now bring a legal challenge, contending that Hoffman's "auction-premium" theory of contract damages is deficient as a matter of law and that they are entitled to summary judgment holding that Hoffman cannot recover under this measure of damages.

B

Defendants maintain that Hoffman cannot recover under an "auction-premium" theory of damages because consequential damages are the only available measure of damages.  But the federal and Texas cases[7] that defendants cite do not stand for the proposition that the damages Hoffman seeks are categorically unavailable as a matter of law.  Instead, in each case, the party seeking lost profits or other damages failed to prove damages that were not entirely speculative or that were the foreseeable result of the defendant's breach.  *See, e.g.,*

---

[7]Concerning Hoffman's breach of contract claim, defendants maintain that New York law controls, although they acknowledge that the elements of the claim are the same under Texas or New York law.  Hoffman posits that Texas law governs, although she agrees that the court need not resolve this conflict-of-law issue.

*CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 278 (5th Cir. 2009) (affirming exclusion of evidence of hypothetical royalties that plaintiff would have earned had defendant not breached confidentiality agreement); *Alliantgroup, L.P. v. Feingold*, 803 F.Supp.2d 610, 622-23 (S.D. Tex. 2011) (granting summary judgment on breach of nondisclosure agreement claim because there was no evidence that breach of agreement caused the plaintiff to lose business with a certain customer); *Medinol Ltd. v. Bos. Scientific Corp.*, 346 F.Supp.2d 575, 619 (S.D.N.Y. 2004) (granting summary judgment on breach of contract claim where plaintiff failed to show any damages stemming from defendant's misuse of plaintiff's confidential information); *Clearview Props., L.P. v. Prop. Tex. SC One Corp.*, 287 S.W.3d 132, 139-40 (Tex. App. 2009, pet. denied) (affirming summary judgment on claim for breach of nondisclosure agreement because there was no evidence that defendant's disclosure of information caused plaintiff to lose deal with another defendant); *John Wood Grp. USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 22-23 (Tex. App. 2000, pet. denied) (holding that lost profits could not be recovered as benefit-of-the-bargain damages where there was no evidence that breach of confidentiality provision caused these damages).[8]   The court therefore holds that defendants have failed to demonstrate that Hoffman's theory of damages for breach of contract is legally deficient.

---

[8]The New York case that defendants cite is distinguishable for the same reason. *See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F.Supp.2d 489, 519-20 (S.D.N.Y. 2011) (finding, after bench trial, that plaintiff was not entitled to recover lost profits because it failed to prove that lost profits were caused by defendant's breach of non-disclosure provision).

Additionally, so far as the court can determine, Hoffman's damages theory is legally viable.[9]  Under Texas law, "[t]he goal in measuring damages for a breach-of-contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach."  *Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 607 (Tex. App. 2012, no pet.) (citations omitted).  "The normal measure of damages in a breach of contract case is the benefit-of-the-bargain measure" which "seeks to restore the injured party to the economic position it would have been in had the contract been performed." *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 317 n.6 (Tex. App. 2004, no pet.).  The benefit-of-the-bargain measure of damages "is not based upon the facts as they actually occurred but instead is focused on what the injured party's economic position would have been if the contract had been fully performed." *Parkway Dental Assocs.*, 391 S.W.3d at 608.  Benefit-of-the-bargain damages are calculated by subtracting the value received by the non-breaching party from the value the party expected to receive when the contract was made.  *Arthur Andersen*, 945 S.W.2d at 817; *see also DaimlerChrysler Motors Co. v. Manuel*, 362 S.W.3d 160, 180 (Tex. App. 2012, no pet.) ("the 'benefit of the bargain' measure . . . utilizes an expectancy theory and evaluates the difference between the value as represented and the value received." (citations omitted)).

---

[9]As explained *supra* at note 3, this court is attempting to conscientiously satisfy its duty under *Erie* to predict how the Supreme Court of Texas would decide this question.  The court has not found any case that suggests that what Hoffman seeks to recover is unavailable under Texas law as a matter of law.  If necessary, the court can revisit this issue after the verdict.

In *Hoffman IV* the court stated:

> A reasonable jury could find, based on the evidence discussed above, that if Hoffman had sold the Rothko painting at a public auction on April 24, 2007, she would have obtained more than $17.6 million for the painting. That she had no actual intention to sell the Rothko painting at public auction is immaterial. This method is simply a way of quantifying what she paid for strict confidentiality, i.e., the benefit of the bargain under the terms of the Letter Agreement. If Hoffman establishes at trial that she could have sold the Rothko painting at auction and received a higher price than at a private sale, a reasonable jury could find that this proves the value of the confidentiality provision of the Letter Agreement, and it supports an award of damages for breach of contract.

*Hoffman IV*, 2013 WL 432771, at *14. This analysis was written in the context of a *factual* challenge to Hoffman's theory of damages. In the more precise context of a *legal* challenge, the court refines its explanation and holds as a matter of law that the benefit of the bargain under the terms of the Letter Agreement can be measured by the reduction in monetary consideration that Hoffman was willing to accept when combined with other, non-monetary consideration[10]—here, the promise of strict confidentiality—in exchange for the Rothko painting. In other words, Hoffman can attempt to persuade the jury that she accepted lower monetary compensation in connection with her requirement of privacy, and to prove what

---

[10]L&M recognizes in its motion for summary judgment addressed to Hoffman's fraudulent inducement claim that the agreement to keep "all aspects" of the transaction confidential indefinitely constituted "other valuable consideration under the [Letter] Agreement." L&M 4/15/13 Br. 34 (emphasis omitted); *see also id.* ("Nor is there any dispute that [L&M's and the buyer's maximum efforts to keep 'all aspects' of the transaction confidential indefinitely] had value—in fact, the evidence conclusively establishes that [it] did.").

the monetary compensation would have been had she sold the Rothko painting publicly or without the same or a comparable requirement of confidentiality.  Whether this amount is equal to the so-called "auction-premium" is a question of fact for the jury to decide.

Although Hoffman does not cite, and the court has not found, a case that is factually similar to this one,[11] the court has located Texas authority that appears to support the premise that the damages Hoffman seeks are legally available.  In *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000), one of the issues the Supreme Court of Texas addressed was whether the plaintiffs, who were producers of natural gas, could recover as benefit-of-the-bargain damages the price they could have obtained under a contract with the defendant for their residue gas had they known that most of the gas was going to be resold under a preexisting contract between the defendant and Lone Star Gas Company ("Lone Star"), as opposed to being sold on the spot market at a much lower rate.[12]  *Fortune Production*, 52 S.W.3d at 673-75.  The court concluded that, because there was evidence that the defendant

---

[11]The law on the recovery of benefit-of-the-bargain damages involving non-monetary consideration is scant.  Hoffman cites *Texas A&M University-Kingsville v. Lawson*, 28 S.W.3d 211, 215-16 (Tex. App. 2000, no pet.), for the proposition that a party can recover benefit-of-the-bargain damages when there is a failure of a non-monetary form of consideration.  But although the *Texas A&M* court characterized a university's promise to represent that a former employee had been an assistant professor as "what [the employee] bargained for," the court did not reach the merits of the damages question; instead, it remanded the case after affirming the district court's ruling that the defendant waived its immunity from suit.  *Id.* at 215-16.

[12]Although the court was considering a claim for fraud in the inducement, it is instructive nevertheless, because "the benefit of the bargain measure of damages is available for both fraudulent inducement and breach of contract claims."  *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 798 (Tex. App. 2007, pet. denied).

- 16 -

had agreed to pay at least one producer the Lone Star contract rate for a fraction of its residue gas, there was some evidence of benefit-of-the-bargain damages, i.e., the difference between the contract price to which the plaintiffs agreed and the price they would otherwise have accepted had they known the truth. *Id.* at 681. The court explained that, "if there is evidence of the bargain that would have been struck had the defrauded party known the truth, there can be a recovery for benefit-of-the-bargain damages." *Id.* at 682. Although not precisely on point factually, *Fortune Production* suggests that it is permissible to measure benefit-of-the-bargain damages by considering what Hoffman could have sold the Rothko painting for had she not agreed to a reduced price in exchange for non-monetary consideration in the form of the strict confidentiality provision.

Accordingly, the court denies defendants' motion to the extent based on the argument that the "auction-premium" theory of contractual damages is legally defective.

## C

Defendants argue that they are entitled to summary judgment on Hoffman's breach of contract claim because her only consequential damages are legally-defective "mental anguish" damages. To the extent defendants challenge the viability of mental anguish damages as an available remedy for the alleged breach of contract, this challenge is beyond the scope of the motion that the court permitted defendants to file. Moreover, "[i]t is enough that a jury could return a damages verdict for Hoffman on at least one of her damages

theories." *Hoffman IV*, 2013 WL 432771, at *14.[13]

To the extent defendants argue that the auction-premium is a "proxy" for the value of Hoffman's claimed embarrassment, they have mischaracterized what she seeks. Hoffman does not argue that the auction-premium should be used to measure her mental anguish damages. Rather, in seeking the so-called auction-premium, she is attempting to recover benefit-of-the-bargain damages.

Defendants also maintain that Hoffman's auction-premium theory is not a reasonably foreseeable measure of actual, consequential loss. Unlike consequential damages, however, benefit-of-the-bargain damages "compensate a plaintiff for a loss that is conclusively presumed to have been foreseen by the defendant as a usual and necessary consequence of the defendant's act." *DaimlerChrysler Motors*, 362 S.W.3d at 179 (citation omitted). Accordingly, Hoffman is not required to prove that her benefit-of-the-bargain damages (measured by the so-called auction-premium) were reasonably foreseeable.

\*   \*   \*

For the reasons explained, the court grants L&M's April 15, 2013 motion for partial summary judgment on fraudulent inducement, and it denies defendants' May 2, 2013 motion

---

[13]Defendants contend that Hoffman cannot obtain the remedy of rescission. The court need not address their arguments because, regardless whether rescission damages are available, Hoffman can recover benefit-of-the-bargain damages.

for partial summary judgment on plaintiff's legally deficient auction-premium theory of contractual damages.

**SO ORDERED**.

August 26, 2013.

SIDNEY A. FITZWATER
CHIEF JUDGE