IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARGUERITE HOFFMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:10-CV-0953-D |
| VS. | § | |
| | § | |
| L&M ARTS, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Marguerite Hoffman ("Hoffman") moves for an award of $294,525.45 in attorney's fees and expenses, and prejudgment interest, under the court's memorandum opinion and order granting in part her motion for sanctions against defendant L&M Arts ("L&M"). *See Hoffman v. L&M Arts*, 2015 WL 1000864, at *4-7 (N.D. Tex. Mar. 6, 2015) (Fitzwater, J.) ("*Hoffman IX*"). For the reasons that follow, the court awards Hoffman the sum of $202,477 in attorney's fees and $13,766.25 in expenses, and it declines to award prejudgment interest.[1]

I

In *Hoffman IX* the court held that Hoffman is entitled to recover under Fed. R. Civ. P. 37(a)(5) the attorney's fees and expenses she reasonably incurred in connection with her June 18, 2013 motion to compel L&M to provide further testimony, and her June 18, 2013

---

[1]Although the parties have made sealed filings concerning Hoffman's fee request, the court concludes that this memorandum opinion and order need not be sealed.

second motion to compel L&M to comply with its discovery obligations and for sanctions, *Hoffman IX*, 2015 WL 1000864, at \*4, and to recover under Rule 37(b)(2)(C) the attorney's fees and related costs that she incurred in preparing for and taking the April 12, 2013 deposition of Dominique Lévy ("Lévy"), *id.* at \*5.  Because the court could not determine the attorney's fees and expenses that Hoffman had reasonably incurred, it directed that she submit additional supporting evidence and briefing.  Hoffman now requests attorney's fees in the sum of $294,525.45, consisting of $7,999.20 in fees for work performed by Bart Wulff, Esq. ("Wulff"), $272,760 in fees for work performed by six attorneys with the law firm of Wilkie Farr & Gallagher LLP ("Wilkie Farr"), and $13,766.25 in expenses.  She also requests an award of an unspecified amount of prejudgment interest.

## II

This court generally follows a two-step process when determining the amount of an attorney's fee award:[2]

> First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work.  The court should exclude all time that is excessive, duplicative, or inadequately documented.  Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

---

[2]Both parties rely on this paradigm in litigating Hoffman's fee application; neither party contends that it is inapposite when determining a fee award under Rule 37.

- 2 -

*Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010) (some citations omitted).[3] The fee applicant bears the burden of substantiating both the requested hours and the hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### III

The court begins by determining what are the reasonable hourly rates for the attorneys who provided the services included in Hoffman's fee request.

### A

Hoffman moves for an award of fees for the services of seven attorneys: Wulff, who practices with the law firm of Koning Rubarts LLP, in Dallas, and Roger Netzer, Esq. ("Netzer"), Mary Eaton, Esq. ("Eaton"), Ian Hochman, Esq. ("Hochman"), Dan Kozusko, Esq. ("Kozusko"), Ian Christy, Esq. ("Christy"), and Hayley Tozeski, Esq. ("Tozeski"), who practice with the Wilkie Farr law firm, in New York City. Hoffman requests that Wulff's services be compensated at the hourly rate of $460, which she maintains represents as much

---

[3]The *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The Supreme Court has barred any use of the sixth factor. *Merrick v. Scott*, 2011 WL 1938188, at *1 n.3 (N.D. Tex. May 20, 2011) (Fitzwater, C.J.) (quoting *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 193 (5th Cir. 1999)). And the second factor generally cannot be used as a ground for enhancing the award. *Perdue v. Kenny A.*, 559 U.S. 542, 553 (2010).

as a 16.5% reduction from his standard hourly rate of $500 to $550.  She requests that the court award fees for the Wilkie Farr attorneys at hourly rates based on what they charged in 2013 ($1,130 for Netzer, $935 for Eaton, $780 for Hochman, $770 for Kozusko, $645 for Christy, and $605 for Tozeski), discounted by 20% (e.g., Netzer's hourly rate of $1,130 would become $904).  Hoffman contends that these undiscounted rates are consistent with those customarily charged in the Dallas Division of the Northern District of Texas for similar legal services; that experienced trial attorneys who handle high-stakes complex litigation in Texas increasingly charge $1,000 or more per hour, and that her counsels' hourly rates are consistent with those charged by L&M's attorneys.  Hoffman posits that the maximum hourly rate that she seeks—$904 for Netzer, a senior partner with 30 years' experience—is significantly lower than the rate that has been approved in this district for equally experienced counsel.  Accordingly, Hoffman contends that the discounted hourly rates that she seeks for attorney's fees incurred in connection with her motions to compel and the Lévy deposition are reasonable.

L&M argues on several grounds that the hourly rates that Hoffman seeks for the Wilkie Farr attorneys are excessive.

B

"The hourly rates to be used in the lodestar calculation are determined by 'the prevailing market rates in the relevant community.'"  *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 2013 WL 598390, at *5 (N.D. Tex. Feb. 15, 2013) (Fitzwater, C.J.) (quoting *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 6789456, at *15

(N.D. Tex. Dec. 20, 2005) (Fitzwater, J.)), *rev'd on other grounds*, 747 F.3d 275 (5th Cir. 2014), *aff'd*, ___ S.Ct. ___ (2015). "The prevailing market rate is the rate charged 'for *similar services* by lawyers of reasonably comparable skill, experience, and reputation.'" *Barrow*, 2005 WL 6789456, at *16 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).

Because the prevailing market rate is that charged for "similar services," the court considers the type of representation and the subject matter of the litigation. "[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (citation and internal quotation marks omitted); *see also McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381-83 (5th Cir. 2011) (stating that, except in certain limited circumstances, district courts must "consider the customary fee for similar work 'in the community,'" not rate charged in out-of-district attorney's home community).

As the fee applicant, Hoffman bears the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (applying federal law); *Wachovia Bank, Nat'l Ass'n v. Schlegel*, 2010 WL 4275277, at *2 n.4 (N.D.

- 5 -

Tex. Oct. 29, 2010) (Fitzwater, C.J.) (same).

C

The court concludes that the hourly rate of $460 that Hoffman requests for Wulff's services is reasonable.  L&M does not object to this hourly rate.  In fact, L&M argues that "[p]robably the best evidence of the prevailing rate in Dallas for a lawyer like Netzer in a case like this is the hourly rate of Mr. Netzer's co-counsel Bart Wulff, who now charges $500-550 per hour, but charged Hoffman only $460 during the time in question."  D. Br. 14.

Netzer and Wulff are both attorneys who had more than 25 years' experience in 2013. They therefore fall within the same experience category in the State Bar of Texas 2013 Hourly Rate Fact Sheet, State Bar of Texas, Department of Research & Analysis ("Fact Sheet").  *See, e.g.,* D. App. 73 (reflecting median hourly rates by years of experience and region).[4]  But Wulff practices with a law firm of 2 to 5 attorneys, and Netzer practices with a law firm of over 400 attorneys.  The Fact Sheet reflects that the median hourly rate in 2013 for attorneys in a firm of 2 to 5 attorneys in the Dallas-Fort Worth-Arlington MSA was $239, and the median hourly rate for attorneys in a firm of over 400 attorneys was $420, meaning that the median hourly rate for lawyers in the Dallas-Fort Worth-Arlington MSA at firms of

---

[4]The court may properly consider the Fact Sheet as a basis for determining a reasonable hourly rate.  *See, e.g., Jiwani v. United Cellular, Inc.*, 2014 WL 4805781, at *5 (N.D. Tex. Sept. 29, 2014) (Toliver, J.) (taking judicial notice of State Bar of Texas, Department of Research & Analysis' 2011 Hourly Fact Sheet as a starting point for ascertaining an appropriate hourly market rate for plaintiff's counsel).  In fact, L&M relies on the 2013 Fact Sheet and includes it in its appendix in opposition to Hoffman's sanctions request.

over 400 attorneys was 176% of the median hourly rate for lawyers with law firms of 2 to 5 lawyers.  Based on the Fact Sheet and the court's own expertise, it deems it reasonable to start with Wulff's hourly rate of $460, which L&M does not contest, use that rate as the starting point to apply to Netzer as a lawyer who, like Wulff, had more than 25 years' experience in 2013, and apply a 176% multiplier based on the size of the Wilkie Farr law firm, resulting in a reasonable hourly rate for Netzer's services in this case of $810 in 2013.

The Fact Sheet also reflects the reasonable median hourly rates for less senior lawyers practicing in the Dallas-Fort Worth-Arlington MSA.  Based on the Fact Sheet and the court's own expertise, it is able to determine a reasonable hourly rate for less senior attorneys by comparing their median rates to those of lawyers with more than 25 years' experience.  The Fact Sheet reflects that in the Dallas-Fort Worth-Arlington MSA in 2013, the median hourly rate of a lawyer with 16 to 20 years' experience was 94.6% of the hourly rate of a lawyer with over 25 years' experience; the median hourly rate of a lawyer with 7 to 10 years' experience was 81.9% of the hourly rate of a lawyer with over 25 years' experience; and the median hourly rate of a lawyer with 3 to 6 years' experience was 74.2% of the hourly rate of a lawyer with over 25 years' experience.  Accordingly, applied to Netzer's reasonable hourly rate of $810 and his over 25 years' experience, a fee calculated at 94.6% results in a reasonable hourly rate of $766 for Eaton and Hochman; a fee calculated at 81.9% results in an hourly rate of $663 for Kozusko; and a fee calculated at 74.2% results in a reasonable hourly rate of $601 for Christy and Tozeski.  *See* D. App. 73.  Accordingly, the court finds that the reasonable hourly rates for similar services by lawyers of reasonably comparable

skill, experience, and reputation in the community in which this court sits are as follows: Wulff, $460; Netzer, $810; Eaton, $766; Hochman, $766; Kozusko, $663; Christy, $601; and Tozeski, $601.

The court recognizes that the median hourly rate for Dallas-Fort Worth-Arlington MSA attorneys with over 25 years' experience was $299 in 2013, with 16 to 20 years' experience was $283, with 7 to 10 years' experience was $245, and with 3 to 6 years' experience was $222; that the median hourly rate for Dallas-Fort Worth-Arlington MSA attorneys at firms of over 400 attorneys was $420 in 2013; and that the median hourly rate for attorneys practicing commercial litigation was $265 in 2013. But these are median rates for all attorneys within these categories, and the geographical categories include Fort Worth and Arlington, where rates are often lower than are charged in Dallas. Moreover, the nature and complexity of this litigation warrant compensating the services of the Wilkie Farr attorneys at higher levels than are represented by the median rates reflected in the Fact Sheet.

IV

Having determined the reasonable hourly rates for Hoffman's attorneys, the court next considers L&M's objections to the time expended.

A

Hoffman requests that the court award her fees for 19.3 hours expended by Wulff and 721.7 hours (less discounts) expended by the Wilkie Farr attorneys. She begins by contending that her attorneys incurred 170.3 hours in connection with the Lévy deposition and 681.4 hours in connection with the motions to compel. She maintains that she has

- 8 -

reduced these hours for any time spent on purely clerical tasks.  Although the court cannot find where she has explicitly quantified the time that she has eliminated on this basis, her attorney's declaration and a supporting exhibit identify 832.4 hours of attorney and legal assistant time in total, which she then reduces to 721.7 hours of attorney time (she excludes all legal assistant time) as the starting point for her other deductions.  In her appendix, Hoffman breaks down these 721.7 hours according to each attorney and the attorney's pre-discounted hourly rate, Netzer opines that the value of these 721.7 hours is $568,250.  Hoffman then discounts the hourly rate of each Wilkie Farr attorney by 20%, resulting in a net value of recoverable fees of $454,600.

Hoffman then further reduces the sum of $454,600 by 30% (i.e., $136,380) to account for block billing.  And she further reduces the sum of $454,600 by another 10% (i.e., $45,460) in order to exercise billing judgment, thereby eliminating time that may have been duplicative, was not incurred in connection with the Lévy deposition or the motions to compel, or that is otherwise unrecoverable.  This results in a net fee request of $272,760 for the services of the Wilkie Farr attorneys.

L&M responds that Hoffman should recover for no more than 164.52 hours of time expended by Wilkie Farr attorneys.  It agrees that a 30% discount to account for block billing is appropriate, but it contends that an additional 30% discount is also justified because Hoffman's proposed additional 10% reduction is insufficient to account for duplicative, excessive, and vaguely recorded time.  L&M also requests that the court exclude certain specific time entries and further reduce by an additional 10% the time expended by all of

Hoffman's attorneys to account for time spent on the parts of the motions to compel that the court denied. L&M posits that Hoffman should not be permitted to recover the costs incurred in preparing for and taking Lévy's deposition, and that even if she is permitted to recover these fees, certain time should be excluded as unnecessary or duplicative, a 30% deduction should be made to account for block billing, and an additional 15% deduction should be made to account for excessive or duplicative work.

B

The court begins with the requested discount for block-billed hours.[5] Because Hoffman and L&M appear to agree that a 30% discount in Wilkie Farr's hours attributable to the motions to compel and Lévy deposition would adequately account for Wilkie Farr's practice of block billing, the court discounts the requested time by 30%.

C

The court next considers whether Wilkie Farr's hours attributable to the motions to compel should be discounted more than Hoffman's proposed 10% to account for time that

---

[5]The term "block billing" refers to the disfavored "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011) (Fitzwater, C.J.) (citation omitted). Block billing is disfavored because it prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended. *Id.* "For example, a person engaging in block billing would record the total amount of time spent on a case that day, and then group several tasks under that single entry, leaving the court unable to determine how much time was devoted to a given task." *Inclusive Cmtys. Project, Inc.*, 2013 WL 598390, at *4 (citation omitted).

is duplicative, excessive, or vaguely recorded.

1

L&M contends that Wilkie Farr's time records reflect excessive and duplicative time, with Christy spending 259.4 hours (more than six weeks' time) on the motions to compel, and Netzer, Eaton, and Kozusko spending an additional 79.7 hours, 82.4 hours, and 103.4 hours, respectively; that Wilkie Farr's time records contain impermissibly vague time entries that fail to reveal what the attorneys were doing in connection with the billed time and therefore fail to demonstrate that the time spent was reasonable; and that the manner in which the Wilkie Farr lawyers prepared their excerpted billing records places the accuracy of the records in doubt, because the lawyers altered their contemporaneous block-billed entries and then estimated (more than two years later) the percentage of a day's total hours that were spent on the tasks related to the motions to compel and Lévy's deposition.

Hoffman replies that L&M has failed to make any particularized challenges to Wilkie Farr's time entries, instead simply listing the hours billed by each attorney and declaring them "excessive," and that the court should reject L&M's broad challenge to the hours billed in connection with the motions because Hoffman has explained why it was necessary for Wilkie Farr to devote the hours it did to the motions, much of which was the product of L&M's own conduct. She next contends that L&M has failed to show why the reductions already applied—30% for block billing and 10% for billing judgment, including time that may be unrecoverable—are insufficient, and that attorneys frequently must review their billing records years after the fact and use their best professional judgment to determine what

work was performed in connection with certain motions.

2

L&M is requesting a 60% reduction in Hoffman's attorneys' hours to account for time entries that it maintains are duplicative, excessive, vaguely recorded, or block-billed. But other than challenging 46.4 of Netzer's hours based on his use of vague descriptions[6] and generally contesting the amount of time Wilkie Farr attorneys spent on the motions to compel and the methodology by which the firm prepared its billing records, L&M does not point to any specific time entries that are duplicative, excessive, or vaguely recorded.

If a party does not object to particular billing entries as inadequately documented, the

---

[6]The party seeking reimbursement of attorney's fees meets its burden of establishing the number of hours expended by "presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 2010 WL 3294248, at *2 (N.D. Tex. Aug. 20, 2010) (Fitzwater, C.J.) (quoting *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990)). "Exceptionally terse descriptions of activities do not constitute sufficient documentation." *Id.* (citing *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997) (disallowing fees for "research and review of cases" because entry was impermissibly vague); *Cookston v. Freeman, Inc.*, 1999 WL 714760, at *2 (N.D. Tex. Sept. 14, 1999) (Fitzwater, J.) (collecting cases)). "Litigants take their chances when submitting such fee applications, as they provide little information from which to determine the 'reasonableness' of the hours expended on tasks vaguely referred to as 'pleadings,' 'documents,' or 'correspondence' without stating what was done with greater precision." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995). Billing entries must explain the subject matter of the task enough to allow the court to determine whether the time was reasonably expended. *See Fralick*, 2011 WL 487754, at *7.

The court agrees that Netzer's billing entries stating "Move to compel," "Reply on motion to compel," "Mtc reply" and "Reply compel," D. App. 52, are vague and should be reduced. D. App. 52; *see Fralick*, 2011 WL 487754, at *7 (applying 10% reduction to vague entries). But because the court is otherwise imposing a sufficient reduction in the fees that Hoffman requests, it concludes that it need not make a further reduction based on vague time entries.

court is not obligated *sua sponte* to sift through fee records searching for vague entries or

block billing. *See generally La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir.

1995) (holding that district court erred in failing to conduct full analysis of billing records

"[a]s to the specific items of which [opposing party] complains"). It is a common practice

for courts to address only those potentially inadequate entries brought to the court's attention.

*See, e.g., Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 2009 WL 361956, at *4 (N.D.

Tex. Feb. 13, 2009) (O'Connor, J.) (analyzing "specific entries identified by [opposing

party]"), *vacated on other grounds*, 612 F.3d 800 (5th Cir. 2010); *Rabo Agrifinance, Inc. v.*

*Veigel Farm Partners*, 2008 WL 3992060, at *4 (N.D. Tex. Aug. 20, 2008) (Robinson, J.)

("Defendants refer to only 7 billing entries that they contend are 'vague.' Of those entries

referenced by the Defendants, the Court finds that the following billing entries are too

vague[.]"); *Barrow*, 2005 WL 6789456, at *12 ("examining the individual entries to which

[the opposing party] objects").

  Hoffman has already discounted Wilkie Farr's requested hours by an additional 10%

in the exercise of billing judgment to account for time that was duplicative, not incurred in

connection with the Lévy deposition or the motions to compel, or otherwise unrecoverable.

And as the court explains below, it is applying a 20% threshold reduction, followed by a 30%

reduction for block billing and 10% billing judgment reduction to the 721.7 hours for which

Hoffman is seeking compensation. L&M has failed to show that percentage reductions of

this magnitude are insufficient to account for any time entries that are duplicative, excessive,

or vaguely recorded. *See, e.g., Hancock v. Chi. Title Ins. Co.*, 2013 WL 2391500, at *9

(N.D. Tex. June 3, 2013) (Fitzwater, C.J.) (refusing to reduce fees further because the "reduction that Chicago Title is taking on its own," i.e., 8.77% for "billing judgment" was "comparable" to the "10% reduction" that "the court has imposed in prior cases where evidence of billing judgment was absent.").

## D

L&M contends that the Wilkie Farr time records reflect many entries that should be excluded as unrecoverable, including 5.3 hours incurred in connection with L&M's motion to strike Hoffman's reply appendix and 29.2 hours incurred in connection with L&M's motion to disregard new arguments and materials, or, in the alternative, for leave to file a surreply. Hoffman responds that her attorneys' work in responding to these requests was "in connection" with the motions because both applications sought either to strike papers filed by Hoffman in support of the motions or to grant L&M leave to submit surreplies in opposition. The court agrees with Hoffman, and it declines to exclude completely Hoffman's request for fees for time incurred in connection with L&M's motion to strike or L&M's motion for leave to file a surreply. Both of L&M's motions relate to Hoffman's motions to compel, and any work Hoffman's attorney's performed in connection with to L&M's motions would fairly be considered related to her motions to compel.

L&M also contends that Hoffman should not be permitted to recover .5 hours that Kozusko attributed to "team meeting" and "case management tasks" or 1.8 hours that Netzer attributed to "Meeting with team" and "Meeting with Ian Christy and Eli Rubin," because these entries do not reflect work performed in connection with the motions to compel. D. Br.

21.  Hoffman responds that she has provided sworn testimony that, in her counsel's "best professional judgment," all entries on the "Recoverable Time Records" were "incurred in connection with either the Lévy Deposition or the Motions," P. Reply 8; that L&M does not challenge the credibility of this testimony; and that, in any event, Hoffman's counsel's 10% billing judgment reduction expressly accounts for entries such as these and L&M has failed to show why that is insufficient.  The court agrees, and it therefore declines to eliminate these fees, apart from the percentage reductions taken below.

E

L&M posits that because Hoffman was only partially successful on her motions to compel (both motions were granted in part and denied in part) and because it is impossible to distinguish between time spent on successful and unsuccessful parts of these motions, the court should further discount Hoffman's total time (including time billed by Wulff) by at least an additional 10%.  The court declines to do so.  Rule 37(a)(5)(C), on which L&M relies, provides that a court "*may*, after giving an opportunity to be heard, apportion the reasonable expenses for [a] motion [to compel that is granted in part and denied in part]." Rule 37(a)(5)(C) (emphasis added).  In *Hoffman IX* the court did not conclude that Hoffman's fees should be apportioned on this basis.  It held that Hoffman is entitled to recover the attorney's fees that she incurred in connection with her June 18, 2013 motions to compel. *Hoffman IX,* 2015 WL 1000864, at *4.  Moreover, in the court's October 2, 2013 memorandum opinion and order, it granted Hoffman substantially all the relief she

- 15 -

requested.[7]  The court thus declines (especially given the other reductions being applied already) to further reduce Hoffman's recoverable hours for time attributable to unsuccessful grounds of her motions.

F

The court now considers the fees that Hoffman requests for preparing for and taking Lévy's April 12, 2013 deposition.

1

L&M argues that Hoffman should not be awarded any fees or costs related to the Lévy deposition because they were not incurred by reason of L&M's failure to comply with discovery.  It contends that the fees and costs would have been incurred no matter how Lévy answered the deposition questions, so these fees are not assessable under Rule 37, and that the only expenses caused by Lévy's failure to answer questions at her Rule 30(b)(6) deposition that Hoffman is properly requesting are fees and costs associated with filing the resulting motion to compel, which the court has already granted.  The court disagrees.

In *Hoffman IX* the court held that "Lévy's refusal and/or inability to answer questions within the scope of Hoffman's noticed Rule 30(b)(6) topics, which had already been approved by Judge Stickney, constituted a failure to comply with a court order regarding discovery," *Hoffman IX*, 2015 WL 1000864, at *5, and it awarded Hoffman her reasonable

---

[7]The only relief that the court did not grant was Hoffman's request for deposition testimony regarding L&M's net worth and regarding the September 2012 separation of L&M's two principals, to the extent this testimony would be beyond the scope of Hoffman's noticed deposition topics.

expenses, including attorney's fees and related costs incurred in connection with the April 2013 deposition of Lévy.  The court declines to revisit that decision.

2

L&M challenges various specific time entries.  It contends that Hoffman should not be awarded any fees associated with the continuation of Lévy's individual deposition, which also took place on April 12, 2013, because such fees are in no way connected to Judge Stickney's order regarding L&M's Rule 30(b)(6) deposition.  L&M seeks a deduction of 13 hours that Netzer attributes solely to "Lévy prep," 7.6 hours that Eaton attributes to various tasks regarding the "Lévy deposition," and 8.5 hours Christy attributes to "Prep for Lévy deposition," on the basis that both Eaton and Christy appear to separately identify time related to the Rule 30(b)(6) deposition.  L&M also requests that the court exclude 2 hours of Netzer's and Eaton's time spent on Lévy's individual deposition; the 11 hours Christy spent attending the deposition, on the ground that he did not ask any questions and that there were three other Wilkie Farr lawyers present; and the 5 hours that Kozusko billed for work related to the deposition, on the grounds that the work was "unnecessary and duplicative" and that Kozusko was not among the four Wilkie Farr attorneys who attended Lévy's deposition.

Hoffman responds that L&M has failed to establish that her counsel segregated time entries as L&M describes, and that, to the contrary, she has already discounted Wilkie Farr's fees to reflect the use of "block billing."  Hoffman also contends she has already excluded entirely the time spent by one attorney (Eli Rubin, Esq.) in preparing for the Lévy deposition,

and L&M has not demonstrated why this exclusion, combined with the aggregate 40% reduction that she has already applied, is insufficient to eliminate any preparation for the deposition of Lévy individually.  Regarding the 2 hours of Netzer's and Eaton's time spent on the individual portion of Lévy's deposition, Hoffman contends that L&M has disregarded that she has already reduced each attorney's hours on that date by half, and L&M has offered no reason why an additional 2-hour reduction is warranted.

Having reviewed Hoffman's original fee application and her current fee application, the court concludes that, aside from the across-the-board percentage reductions that the court is applying, no further reductions in the time Eaton and Netzer spent preparing for and taking Lévy's deposition are warranted.  Regarding the time billed by Christy and Kozusko in connection with Lévy's deposition, the fact that Christy did not ask any questions during the deposition and the fact that Kozusko did not attend the deposition are insufficient of themselves to warrant excluding time that these attorneys spent in connection with preparing for or taking the deposition.  And, as noted, the court is making percentage cuts that adequately address L&M's challenges.

3

L&M next contends that Wilkie Farr's time should be further discounted to reflect block billing, inclusion of unrecoverable time, and excessive and duplicative billing.  In addition to the 30% discount for block billing, L&M requests a further 15% reduction "to counteract Wilkie [Farr]'s excessive and duplicative billing."  D. Br. 24.  It cites as an example that Christy attributes 22.6 hours to preparing for Lévy's deposition (even though

he did not take the deposition), in addition to Eaton's billing almost a full 40-hour work week to the deposition and Netzer billing an additional 16.8 hours himself.  The court holds, however, that the percentage reductions being taken, and the reduced hourly rates being awarded, are sufficient to address L&M's arguments.

G

Accounting for the reductions in the requested hourly rates for the Wilkie Farr attorneys and the number of compensable hours, the court calculates the lodestar fee as follows.

The sum of $7,990.20 represents the lodestar amount for the services of Wulff, calculated on the basis of 19.3 hours at $460 per hour, discounted by 10%.[8]

The sum of $194,486.80 represents the lodestar amount for the services of the Wilkie Farr attorneys, calculated as follows.  The court begins with 109.5 hours for Netzer, at the hourly rate of $810; 128.6 hours for Eaton, at the hourly rate of $766; 10 hours for Hochman, at the hourly rate of $766; 108.4 hours for Kozusko, at the hourly rate of $663; 301.5 hours for Christy, at the hourly rate of $601; and 63.7 hours for Tozeski, at the hourly rate of $601.  This results in an initial lodestar sum of $486,217.  But this sum is *greater* than what even Hoffman requests for these 721.7 hours.  After she discounts by 20% the fees of the Wilkie Farr attorneys, she obtains a net value of $454,600 for these hours.  The court concludes that

---

[8]Hoffman requests the sum of $7,999.20 for Wulff's services, but this appears to be the result of a mathematical error.  When the initial sum of $8,878 is reduced by 10%, the result is $7,990.20.

it would be incongruous to award the Wilkie Farr attorneys hourly rates that are *lower* than what Hoffman requests, but then make a fee award that in the aggregate is *higher*.  Instead, for consistency, and to account for L&M's other challenges that the court has addressed above, the court will apply a similar 20% threshold reduction to the subtotal of $486,217 (i.e., $97,243.40).   The court will then reduce the $486,217 subtotal by 30% (i.e., $145,865.10) to account for block billing, and by an additional 10% (i.e., $48,621.70) to adjust for billing judgment.  These reductions result in a net lodestar fee of $194,486.80 for the work of the Wilkie Farr attorneys.  Adding together the sums of $7,990.20 for the services of Wulff and $194,486.80 for the services of the Wilkie Farr attorneys, the court calculates the lodestar as $202,477.

V

The court now considers whether the lodestar fee should be adjusted downward under *Johnson*.

There is a strong presumption that lodestar amount represents a reasonable fee.  *See Perdue*, 559 U.S. at 553-54; *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565(1986).  Although the court can adjust the lodestar upward or downward after assessing the properly-considered *Johnson* factors, the party seeking the adjustment must establish that an adjustment is warranted.  *See La. Power & Light Co.*, 50 F.3d at 329 (citing *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413 (2d Cir. 1989)).  Many of the *Johnson* factors are "presumably fully reflected in the lodestar amount," so such modifications are proper only in certain "'rare' and 'exceptional' cases, supported by both

'specific evidence' on the record and detailed findings." *Del. Valley Citizens' Council*, 478 U.S. at 565 (quoting *Blum*, 465 U.S. at 898-901).

Hoffman contends that several of the *Johnson* factors support her lodestar calculation, but she does not argue for an upward or downward adjustment based on the *Johnson* factors. L&M does not address the *Johnson* factors in its brief. The court concludes that, because neither party has attempted to prove that the lodestar amount should be adjusted under the *Johnson* factors, such an adjustment is unnecessary. *See, e.g., Fabela v. City of Farmers Branch, Tex.*, 2013 WL 2655071, at *9 (N.D. Tex. June 13, 2013) (Fitzwater, C.J.) (finding no reason to adjust the lodestar based on the *Johnson* factors where the parties did not argue or offer evidence supporting an adjustment based on the *Johnson* factors).

VI

Hoffman also requests expenses totaling $13,766.25 in connection with the Lévy deposition and the motions to compel. L&M responds that Hoffman should recover no more than $3,335.44 in costs incurred in connection with the motions to compel, and that the court should award "no fees or costs incurred in preparing for or taking Lévy's Rule 30(b)(6) deposition because such fees and costs could not have been 'caused by' the conduct for which Rule 37 sanctions were granted." D. Br. 25. L&M does not offer any further specific objections to the amount of costs Hoffman seeks.

The court concludes that $13,766.25 constitutes a reasonable amount of expenses. Hoffman has documented these expenses, and, other than broadly objecting to Hoffman's request for expenses, L&M provides no basis for further reducing the requested amount.

VII

Hoffman requests that, as with other litigants sanctioned in this district under Rule 37, L&M should be ordered to pay the reasonable attorney's fees and expenses awarded as sanctions within no more than 21 days of the court's entry of such an award. L&M does not object to this request. To ensure, however, that L&M is able to preserve its appellate rights, the court will impose a 30-day deadline.

Hoffman also requests prejudgment interest. In her opening brief, she merely makes the request in a parenthetical. In her reply brief, she points to L&M's failure to object to her request for prejudgment interest, and she cites *Dodge v. Hunt Petroleum Corp.*, 174 F.Supp.2d 505, 511-12 (N.D. Tex. 2001) (Lindsay, J.). But *Dodge* does not support her request. In *Dodge* Judge Lindsay awarded prejudgment interest on attorney's fees that the plaintiff had recovered in prosecuting retaliation claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and a corollary Texas statute. *Dodge*, 174 F.Supp.2d at 507. Hoffman essentially seeks prejudgment interest as a component of a sanction imposed under Rule 37(a)(5) or Rule 37(b)(2)(C). But she has not demonstrated that the court has the authority to order the payment of prejudgment interest in such circumstances. The handful of decisions that the court has located indicate that such an award is not permitted. *See, e.g., Remington Prods., Inc. v. N. Am. Philips, Corp.*, 763 F. Supp. 683, 686 (D. Conn. 1991) ("[T]he Court concludes that its discretion does not include supplementing Rule 37 sanctions with prejudgment interest."). Accordingly, the court declines to award prejudgment interest, either because such an award is not available or in

the exercise of its discretion.[9]

* * *

Accordingly, for the reasons explained, the court awards Hoffman the sum of $202,477 in attorney's fees and $13,766.25 in expenses.  It is ordered that L&M pay this sum to Hoffman within 30 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

July 1, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[9]Even under *Dodge*, the running of interest would commence on March 6, 2015, the date the court awarded Hoffman sanctions in an amount to be determined, not on the date Hoffman's attorneys rendered the services.  *Dodge*, 174 F.Supp.2d at 511 (awarding prejudgment interest "[b]ecause Plaintiff was entitled to attorney's fees at the time the court entered judgment on the merits").